UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MAINSTAY HIGH YIELD CORPORATE BOND FUND, | No. 07-10542 |
| Plaintiff, | District Judge Gerald E. Rosen |
| v. | Magistrate Judge R. Steven Whalen |
| HEARTLAND INDUSTRIAL PARTNERS, L.P., ET.AL., | |
| Defendants. | |

| | |
|---|---|
| HANNAH KLEINPETER-FLECK, ET AL., | |
| Plaintiffs, | No. 06-13555 |
| v. | District Judge Gerald E. Rosen |
| COLLINS AND AIKMAN CORPORATION, ET AL., | Magistrate Judge R. Steven Whalen |
| Defendants. / | |

**OPINION AND ORDER**

Before the Court is Lead Plaintiffs' Joint Motion to Compel Testimony and Production of Documents from Defendant Elkin McCallum [Doc. #201 in case no. 06-13555, and Doc. #276 in case no. 07-10542]. For the reasons discussed below, the motion will be GRANTED IN PART.

### I.   BACKGROUND

These two companion cases were filed in 2006 and 2007, respectively. On August 8, 2006, Plaintiff Craig Epstein and other Plaintiffs filed their Complaint against Collins & Aikman Corporation, David Stockman and others. On February 5, 2007, Plaintiff

-1-

Mainstay High Yield Corporate Bond fund ("Mainstay") filed its Complaint against Heartland Industrial Partners, L.P. and others, including Defendant McCallum. Plaintiffs brought these actions as class actions, alleging Defendants' perpetration of a fraudulent scheme in violation of sec. 10(b) of the Securities and Exchange Act.

Part of the alleged scheme involves the claim that Defendant McCallum, through a series of fraudulent transactions, artificially inflated the financial value of Collins & Aikman, culminating in the collapse of Collins & Aikman, but a financial windfall to McCallum. Following the failure of Collins & Aikman, the United States Attorney for the Southern District of New York commenced a criminal investigation in which Defendant McCallum was a target. Mr. McCallum retained Massachusetts attorney Denis King, from the law firm Gouston & Storrs. On or about December 29, 2006, Mr. King produced to the U.S. Attorney a 23-page document entitled "A Case for the Non-Prosecution of Elkin McCallum." The parties have referred to this document as the "White Paper." Attached to the document were 16 exhibits. The White Paper, along with the exhibits, is appended to Plaintiffs' motion as Exhibit A.

The White Paper is, as its more formal title suggests, an advocacy piece aimed at convincing the U.S. Attorney not to seek an indictment against Mr. McCallum. It describes Mr. McCallum as "a good man who has risen above incredibly difficult personal circumstances to become a role model for economically disadvantaged inhabitants of the Merrimack Valley Region of Massachusetts," and goes on to describe his rags-to-riches rise from an impoverished childhood in Lowell, Massachusetts, to a job loading docks at Joan Fabrics, to the presidency and ownership of that company. The White Paper recounts Mr. McCallum's generosity and his many philanthropic contributions to his community.

More pertinent to this case, however, the White Paper contains admissions of criminal (and hence civil) liability, as well as statements regarding Defendant David Stockman's role in fraudulently inflating the value of Collins and Aikman. Indeed, the paper portrays Mr. McCallum as essentially a dupe of Mr. Stockman.

The Plaintiffs obtained a copy of the White Paper in discovery. However, when Mr. McCallum was deposed on August 13, 2009[1], his attorney instructed him not to answer questions regarding the source of information in the White Paper, or any communications with Mr. King regarding the information in the White Paper, on the grounds of attorney-client privilege. *McCallum Deposition*, 179-194. When Plaintiffs' counsel argued that the submission of the White Paper to the U.S. Attorney waived the privilege, Mr. McCallum's attorney responded:

> "And let me state for the record, there is nothing in this document that suggests that Mr. McCallum submitted the document. There is nothing in the record that suggests that Mr. McCallum either authorized or adopted the document." *Id.*, 182-83.

Plaintiffs now seek an order compelling the following discovery:

(1) a continuation of Mr. McCallum's deposition, at which he will be required "to answer all questions concerning the White Paper, including concerning communications between Mr. McCallum and his attorney relating to the White Paper;"

(2) production of documents relating to the drafting of the White Paper (*See* Plaintiffs' Exhibit F, Third Request for Production of Documents); and

(3) the deposition of attorney King, at which he will be required to answer "all questions concerning the White Paper, including concerning his communications with Mr. McCallum relating to the White Paper."

---

[1] Portions of the deposition transcript are appended to Plaintiffs' motion as Exhibit B.

## II. LEGAL PRINCIPLES REGARDING WAIVER OF PRIVILEGE

The federal common law governs privilege issues in this federal question action. *Reed v. Baxter,* 134 F.3d 351, 355 (6th Cir.1998). The elements of the privilege are: (1) where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) unless the protection is waived. *Id.* at 355-56.

In general, the attorney-client privilege is narrowly construed, because it "reduces the amount of information discoverable during the course of a lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997); *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir. 1996). Furthermore, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 188 F.3d 663, 667 (6th Cir. 1999). As a general rule, the attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. *In re Grand Jury Proceedings, supra*, at 254. The burden of showing that the privilege has not been waived also falls upon the person claiming the privilege. *United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir.1997).

In *Fort James v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed.Cir.2005), the Federal Circuit, citing *In re Grand Jury Proceedings* as well as numerous other cases, stated, "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *See also United States v. Collis, supra*, 128 F.3d at 320 ("The scope of the waiver turns on the scope of the client's disclosure, and the inquiry is whether the client's disclosure involves the same 'subject matter' as the desired testimony"); *Edwards*

*v. Whitaker,* 868 F.Supp. 226, 229 (M.D.Tenn.1994)(citing *In re Grand Jury Proceedings*) ("[I]t is well-established that 'voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject'").[2]

In *In re Columbia/HCA Healthcare Corporation Billing Practices Litigation*, 293 F.3d 289, 302 (6th Cir. 2002), the Sixth Circuit rejected the concept of "selective waiver," holding that when a party releases otherwise privileged information to a government agency, that party cannot then claim attorney-client privilege as to other parties. The court found that the defendant's release of privileged information to the Department of Justice in a separate investigation effected a waiver of the privilege as to the plaintiffs in a subsequent civil case, notwithstanding a confidentiality agreement between the defendant and the Department of Justice providing that the disclosure would *not* be considered a waiver. The court stated:

> "[A]ny form of selective waiver, even that which stems from a confidentiality agreement, transforms the attorney-client privilege into 'merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage.'" *Id.* at 302-303 (*Citing In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993)).

*Columbia/HCA* also cited with approval *Permian Corporation v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981), where the D.C. Circuit, rejecting the concept of selective waiver, observed, "The client cannot be permitted to pick and choose among his

---

[2] Effective September 19, 2008, Fed.R.Ev. 502(a), subject matter waiver of otherwise privileged and undisclosed information occurs when (1) there is an intentional waiver of the disclosed material; (2) the disclosed and undisclosed information concern the same subject matter; and (3) the disclosed and undisclosed information "ought in fairness to be considered together." The explanatory notes to Rule 502 state that subject matter waiver is applicable in circumstances where "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."

opponents, waiving the privilege for some and resurrecting the claim of confidentiality as to others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit."

### III. DISCUSSION

Insofar as Mr. McCallum authorized his attorney, Mr. King, to disclose otherwise confidential information to the United States Attorney regarding his and Mr. Stockman's role in Collins & Aikman, this case is controlled by *In re Columbia/HCA*, and the privilege as to not only the White Paper, but as to undisclosed communications between Mr. McCallum and his attorneys regarding the same subject matter, is waived.[3] Assuming that Mr. McCallum authorized, consented to or acquiesced in Mr. King's submission of the White Paper to the U.S. Attorney, it is of no import that the disclosure was made by Mr. King rather than by Mr. McCallum, or that Mr. McCallum did not review the final draft of the document. The voluntary disclosure of privileged information by an individual, or by an attorney acting on behalf of that individual, waives the privilege as to all communications involving the same subject matter. *See Bittaker v. Woodford*, 331

---

[3] The Plaintiffs also argue that Mr. McCallum has waived the privilege by claiming that Mr. King made an unauthorized disclosure of privileged information, thereby placing the adequacy of his attorney in issue. It is true that "[t]he privilege may be implicitly waived by claiming ineffective assistance of counsel or by otherwise raising issues regarding counsel's performance." *In re Lott*, 424 F.3d 446, 452-53 (6th Cir. 2005). However, this type of implicit waiver generally involves a party relying on privileged material to support a claim or defense, for example, a Sixth Amendment claim of ineffective assistance of counsel in a criminal case, or an advice-of-counsel defense in a civil case. "These allegations have one thing in common: the pleading places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail." *Id.* at 453. The present case does not fall directly within that framework, at least as to the substantive communications regarding Mr. McCallum's liability. It more closely implicates the theory of waiver by voluntary disclosure, as discussed in *Columbia/HCA*.

F.3d 715, 719, n.4 (9th Cir. 2004) (waiver by voluntary disclosure "need not be effectuated by words or accompanied by the litigant's subjective intent...Rather, the privilege may be waived by the client's, and in some cases the attorney's actions..."). In *United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979), the court held that "[e]ven if the privilege exists it is waived when the client voluntarily reveals the information to another *or his attorney does so with his consent*." (Emphasis added). Finding waiver based on the attorney's disclosure of information, the *Bump* court stated:

> "In this case Bump's attorney gave information acquired from his client to the government. Bump makes no showing that the lawyer's disclosures were without his consent, or that he communicated the information to the attorney with the intention it be kept secret. The burden of proving a communication is privileged is upon the person asserting the privilege." *Id.*

Mr. McCallum provided a privilege log showing that he himself attended two proffer sessions with the U.S. Attorney, one on May 16, 2006 and the second on December 1, 2006.[4] He also testified as such at his deposition. *McCallum Dep.* at 180, 186-188. Mr. King, he said, was the "primary man" dealing with the U.S. Attorney's Office on his behalf. *Id.* at 180. The privilege log also shows three telephone conferences between Mr. King and Mr. McCallum–one on December 18, 2006 and two on December 27, 2006–just days before the White Paper was submitted to the U.S. Attorney. Mr. McCallum also testified that he "was aware that Mr. King was preparing a document on [his] behalf sometime during the fourth quarter of '06." *McCallum Dep.* at 193. He further testified that neither he nor his subsequent attorneys provided anything to the government in writing indicating that the contents of the White Paper were inaccurate.

---

[4] The Plaintiff would be entitled to production of Mr. McCallum's statements to the U.S. Attorney's Office in the proffer sessions. Statements to a third party are not protected by attorney-client privilege. Likewise, if Mr. McCallum testified before a grand jury, that testimony might be discoverable subject to the strictures of Fed.R.Crim.P. 6(e)(3)(C).

*Id.* at 194-95.

The facts before this Court have all the earmarks of a waiver. The focus of Mr. King's representation was apparently to prevent Mr. McCallum from being indicted, and toward that end, he presented his client for two proffer sessions before the White Paper was submitted. Proffer sessions with the government are generally (although not always) covered by use immunity, and are subject to protections under *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The government's grant of use immunity is in turn generally subject to the individual's agreement to provide complete and truthful information, including a full statement of his or her role in the matter being investigated. Indeed, the White Paper itself, at p.16, references Mr. McCallum's own prior statements to the government regarding his discussions with Collins and Aikman. The White Paper was clearly prepared for Mr. McCallum's benefit in the criminal investigation, and was submitted only days after three post-proffer telephone conferences with Mr. King.[5] These facts strongly suggest that the White Paper was prepared and submitted with Mr. McCallum's knowledge and approval, and that the disclosure was solidly within the scope of Mr. King's representation. "[A] client may waive the privilege by conduct which implies...a consent to disclosure." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

Yet, Mr. McCallum now denies that he authorized the disclosure of the information in the White Paper, and claims privilege as to any communications related to

---

[5] Ultimately, Mr. McCallum was not prosecuted. The parties disagree as to whether the White Paper played into the government's decision not to prosecute, given that Mr. McCallum changed lawyers twice after Mr. King was discharged. However, whether the White Paper in fact did the trick for Mr. McCallum is unimportant to the issue of waiver. The more salient point is that it was prepared for the purpose of obtaining an advantage for Mr. McCallum.

the White Paper.  He also takes a position in this litigation that is inconsistent with the statements contained in the White Paper.

The question of whether Mr. McCallum either expressly or impliedly consented to his attorney's submission of the White Paper to the U.S. Attorney is critical to the determination of whether he waived the attorney-client privilege as to all matters contained in the White Paper.  If he did consent, then the privilege is waived, and Plaintiff is entitled to information from Mr. McCallum and Mr. King touching on the subject matter of the White Paper.  If he did not consent or acquiesce, then the privilege remains intact.

Again, the burden of showing that the privilege was not waived is on Mr. McCallum, and given the strong circumstantial evidence that he at least implicitly authorized the disclosure of privileged information, his burden of showing otherwise appears daunting. Nevertheless, he will be given that opportunity.

I will therefore grant the Plaintiff's motion in part.  Both Mr. McCallum and his former attorney, Mr. King, may be deposed on the issue of whether Mr. McCallum consented to or authorized, expressly or by implication, the disclosure of otherwise privileged information to the U.S. Attorney.  They may be questioned as to attorney-client discussions regarding whether Mr. McCallum was informed that an advocacy piece was to be submitted to the government, whether he was shown any drafts, whether the contents were discussed, whether Mr. McCallum explicitly placed any limitations on what would be contained in the White Paper, whether the submission of the White Paper was understood to be within the scope of Mr. King's representation, whether it was understood that the White Paper would include a discussion of Mr. McCallum's and Mr. Stockman's roles with regard to Collins and Aikman, whether it was understood that the

White Paper would be a follow-up to Mr. McCallum's two proffer sessions with the U.S. Attorney[6], whether Mr. McCallum requested to review the paper before it was submitted, whether he voiced any objections or asked that the White Paper be withdrawn after he saw it, and any other matter related to the issue of whether Mr. McCallum consented to the disclosure of the White Paper, by implication or otherwise.

Plaintiffs are also entitled to written communications, including emails, between Mr. King and Mr. McCallum regarding Mr. McCallum's knowledge of and consent to submit the White Paper. They are also entitled to any of Mr. King's notes or memoranda memorializing discussions with Mr. McCallum regarding disclosure. If any such documents contain material not specifically related to Mr. McCallum's consent to produce the White Paper, or his knowledge that it would be provided to the government, they may be appropriately redacted.

In permitting this limited line of inquiry, I necessarily find at least a partial waiver of the attorney-client privilege as to issues regarding Mr. McCallums knowledge of, or consent or acquiescence to the production of the White Paper. I find this partial waiver based on (1) the strong circumstantial evidence that Mr. McCallum in fact consented to the disclosure, (2) his otherwise uncorroborated denial that he authorized the disclosure, and (3) his disavowal of the facts contained in the White Paper. Under these circumstances, to not permit inquiry at least into the question of whether Mr. McCallum authorized disclosure would be manifestly unfair to the Plaintiffs. A claim of privilege should not be permitted to operate "as a sword rather than a shield." *In re*

---

[6] Statements that Mr. McCallum himself made to the U.S. Attorney's Office during the proffer sessions could well be relevant to whether he at least implicitly agreed to the disclosures in the White Paper, and are fair game for inquiry. At this point, Mr. King's mental impressions, legal analyses and opinions regarding his client's proffer are off limits.

*Columbia/HCA, supra*, 293 F.3d at 307.  *See also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (privilege may not be asserted "to disclose some selected communications for self-serving purposes," and that it "may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications.").  In the face of numerous facts showing that he authorized or consented to disclosure for his own benefit in the criminal investigation (the sword), Mr. McCallum now makes a claim to the contrary in order to limit his liability in the present case (the shield).  Fairness requires an examination of the disclosure issue, including attorney-client communications on that issue.

At this point, I am not ordering full disclosure of information that Mr. McCallum provided to his attorney regarding his or Mr. Stockman's role in Collins and Aikmen or his relationship with Mr. Stockman.  The inquiry will be limited to the question of whether the White Paper was submitted to the government with Mr. McCallum's express or implied authorization.

If, following this inquiry, Mr. McCallum fails to meet his burden of showing that he did not waive the privilege, then the Plaintiffs shall be entitled to full discovery of what would otherwise have been privileged communication involving the same subject matter discussed in the White Paper.

## IV. CONCLUSION

For the reasons and under the terms set forth above, Lead Plaintiffs' Joint Motion to Compel Testimony and Production of Documents from Defendant Elkin McCallum [Doc. #201 in case no. 06-13555, and Doc. #276 in case no. 07-10542] is GRANTED IN PART.

IT IS SO ORDERED.

                                                S/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: October 28, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 28, 2009.

                                                S/Gina Wilson
                                                Judicial Assistant