### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN

K.J. EGLESTON, individually and on behalf of all
others similarly situated,

                 Plaintiff,

           v.                          Case No. 2:06-cv-13555-GER-RSW

HEARTLAND INDUSTRIAL PARTNERS, L.P., a    Honorable Gerald E. Rosen
Delaware limited liability partnership, HEARTLAND
INDUSTRIAL ASSOCIATES, L.L.C., a Delaware
limited company, DAVID A. STOCKMAN, J.
MICHAEL STEPP, and BRYCE M. KOTH,

                 Defendants.

### LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
### OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS
### <u>AND APPROVAL OF NOTICE TO THE MAINSTAY CLASS</u>

Lead Plaintiff Craig D. Epstein, through his undersigned counsel, respectfully requests

that this Honorable Court enter an Order granting its motion for (a) preliminary approval of a

proposed settlement; (b) certification of the Class for settlement purposes; (c) approval to

disseminate notice of the proposed settlement to the Class; and (d) scheduling of a hearing to

consider final approval of the settlement.  In support of his Motion, Lead Plaintiff submits and

incorporates the attached Brief and exhibits thereto, including the Stipulation of Settlement.

Dated:  February 17, 2010

Respectfully submitted,

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
/s/ Thomas H. Burt
Daniel W. Krasner, Esq.
Thomas H. Burt, Esq.
Kate M. McGuire, Esq.
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

*Lead Counsel for the Plaintiffs*


**THE MILLER LAW FIRM, PC**

  /s/  Courtney B. Ciullo
E. Powell Miller, Esq. (P39487)
Marc L. Newman, Esq. (P51393)
Courtney B. Ciullo (P71949)
The Miller Law Firm, P.C.
950 West University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852

*Liaison Counsel for Plaintiffs*


**GAINEY & McKENNA**
Thomas J. McKenna
295 Madison Avenue,
4th Floor
New York, New York 10017


*Additional Counsel for Plaintiff Craig D. Epstein*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

K.J. EGLESTON, individually and on behalf of all
others similarly situated,

                Plaintiff,

v.

HEARTLAND INDUSTRIAL PARTNERS, L.P.,
a Delaware limited liability partnership,
HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C.,
a Delaware limited company, DAVID A. STOCKMAN,
J. MICHAEL STEPP, and BRYCE M. KOTH,

                Defendants

Case No. 2:06-cv-13555-GER-SDP

Honorable Gerald E. Rosen

| THE MILLER LAW FIRM, P.C. | WOLF HALDENSTEIN ADLER |
|---|---|
| E. Powell Miller (P39487) | FREEMAN & HERZ LLP |
| Marc L. Newman (P51393) | Daniel W. Krasner |
| Courtney B. Ciullo (P71949) | Thomas H. Burt |
| The Miller Law Firm, PC | Kate M. McGuire |
| 950 West University Drive, Suite 300 | 270 Madison Avenue |
| Rochester, Michigan 48307 | New York, NY 10016 |
| Telephone: (248) 841-2200 | Telephone: (212) 545-4600 |
| Facsimile: (248) 652-2852 | Facsimile: (212) 545-4653 |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR
## PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page(s)**

STATEMENT OF ISSUES PRESENTED ...................................................................i

TABLE OF CONTROLLING OR MOST RELEVANT AUTHORITIES ...............................iii

I.    INTRODUCTION .................................................................................. 1

II.   HISTORY OF THE LITIGATION .............................................................. 2

III.  THE MEDIATIONS AND SETTLEMENT .................................................... 6

IV.   TERMS OF THE SETTLEMENT ............................................................... 7

V.    ARGUMENT .......................................................................................... 9

        A.    Consideration of Final Approval Criteria Supports Preliminary Approval ..................................................................................... 10

                1.    The Likelihood of Plaintiffs' Success on the Merits, Weighed Against the Amount and Form of the Relief Offered in Settlement, Favors Approval ...................................................... 11

                2.    The Clear Absence of Fraud or Collusion Favors the Settlement  14

                3.    The Complexity, Expenses, and Delay of Continued Litigation Favor Approval ........................................................ 15

                4.    The Amount and Character of Discovery and Evidence Uncovered Weighs in Favor of Approval .................................... 17

                5.    The Judgment of Experienced Counsel Who Have Competently Evaluated the Strength of Their Proof Weighs in Favor of Approval ................................................................................ 17

                6.    Few Objections Are Anticipated .................................................. 18

                7.    The Settlement Is Consistent with the Public Interest ................. 19

        B.    Class Treatment is the Best Means of According Relief to Class Members ............................................................................. 19

        C.    Publication of the Notice to C&A Shareholders is Appropriate ............... 26

VI.   PROPOSED SCHEDULE OF EVENTS ...................................................... 27

VII.  CONCLUSION ...................................................................................... 28

## STATEMENT OF ISSUES PRESENTED

1.      Should the Settlement be preliminarily approved?

         Plaintiff's Response: Yes
         Defendants' Response: Yes

2.      Should the Notice be published to potential Class members?

         Plaintiff's Response: Yes
         Defendants' Response: Yes

3.      Should a hearing be set for this Court to determine if the Settlement should be finally approved?

         Plaintiff's Response: Yes
         Defendants' Response: Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591, 625 (1997)

*All Bromine Antitrust Pltfs. v. All Bromine Antitrust Defts.*,
    203 F.R.D. 403 (S.D. Ind. 2001)

*Bautista v. Twin Lakes Farms*,
    1:04-cv-483, 2007 WL 329162 (W.D. Mich., Jan. 31, 2007)

*Beattie v. CenturyTel, Inc.*,
    511 F.3d 554 (6th Cir. 2007)

*Bobbitt v. Academy of Court Reporting, Inc.*,
    No. 07-10742, 2009 WL 2168833 (E.D. Mich. July 22, 2009)

*Franks v. Kroger Co.*,
    649 F.2d 1216 (6th Cir. 1981)

*French v. Essentially Yours Indus.*,
    No. 07-CV-817, 2008 U.S. Dist. LEXIS 54550 (W.D. Mich. July 16, 2008)

*In re Cardizem CD Antitrust Sec. Litig.*,
    200 F.R.D. 297, 303 (E.D. Mich. 2001)

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 3:08-MD-01998, 2009
    WL 5184352, at *1 (W.D. Ky. Dec. 22, 2009)

*In re Delphi Corp. Sec. Derivative, and ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008)

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. General
    Motors Corp.*, 497 F.3d 615 (6th Cir.2007)

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008).

*Lessard v. City of Allen Park*,
    372 F. Supp. 2d 1007 (E.D. Mich. 2005)

*Rankin v. Rots*,
    No. 02-CV-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2006)

*Telectronics Pacing Sys., Inc.*,
        137 F. Supp. 2d 985 (S.D. Ohio 2001)

*Witmer v. Acument Global Techs., Inc.*,
        No. 08-12795, 2009 U.S. Dist. LEXIS 5143 (E.D. Mich. Jan. 26, 2009)

**Rules and Statutes**

Federal Rule of Civil Procedure 23

## I.    **INTRODUCTION**

Lead Plaintiff Craig D. Epstein ("Plaintiff") has reached a settlement agreement (the "Settlement") with defendants Heartland Industrial Partners, L.P., Heartland Industrial Associates L.L.C. (collectively "Heartland"), David A. Stockman, J. Michael Stepp and Bryce Koth (collectively, the "Individual Defendants," and, collectively with Heartland, "Defendants")[1] providing for a payment in the amount of $12,262,500 (the "Settlement Amount"), of which $6,762,500 shall be paid in cash (the "Cash Consideration") and the remaining $5,500,000 shall be contributed in the form of a note (the "Note") payable to the Class (defined below), in exchange for a release of all claims and the dismissal of this action with prejudice.[2]  Plaintiff seeks an Order (the "Preliminary Approval Order," submitted as Exhibit B to the Stipulation of Settlement which is filed herewith as Exhibit 1): (1) conditionally certifying a class (the "Class"), for purposes of the Settlement, consisting of all individuals and entities who purchased or otherwise acquired the securities of C&A during the period between August 6, 2002 and May

---

[1] C&A itself is not a defendant to this action because, as a result of the events alleged in the Complaint, on May 17, 2005, it filed for protection under the United States Bankruptcy Code.  C&A subsequently liquidated and no longer exists as an operating business.  C&A has no assets from which it could contribute to any settlement in this Action.  Further, all of the applicable insurance that C&A carried has been exhausted.  No insurance policy exists held by C&A that could provide a contribution to a settlement in this Action.

[2] The Settlement stipulation also calls for the payment of $12,362,500 in the form of cash and a note as settlement compensation in an action titled *MainStay High Yield Corporate Bond Fund v. Heartland Industrial Partners, L.P., et al.*, (the "MainStay Action").  The MainStay Action arises from the same facts as this Action, is against the same Defendants as those in this Action and certain additional defendants, and is brought on behalf of persons and entities who purchased C&A 10.75% Notes and 12.875% Notes through their duly authorized investment advisor, MacKay Shields LLC.  The total amount which Defendants will be paying in settlement of the two litigations is thus $24,625,000.  (The MainStay class will be receiving $100,000 more than the Egleston Class, as due to the presence of a defendant in that case who is not a Defendant to this Action.)  The consummation of the Settlement in this, the Egleston Action, is contingent upon the Court's approval of the settlement in the MainStay Action.

17, 2005, inclusive (the "Class Period"), and who suffered damages[3]; (2) scheduling a final settlement hearing to determine whether final approval shall be given to the Settlement, whether Plaintiff's counsel's application for attorneys' fees and expenses shall be approved, and whether reimbursement of expenses for those who have served as Lead Plaintiff from the Settlement Fund shall be granted; (3) preliminarily approving the Settlement and directing that notice of the Settlement be given to the Class in the proposed form and manner; and (4) granting certain other relief necessary to effectuating the Settlement.

The Settlement will provide significant benefits to Class members, while removing the risk and delay associated with further litigation. The Settlement is an excellent result, and Plaintiff therefore requests preliminary approval thereof by the Court.

## II.    **HISTORY OF THE LITIGATION**

The history of this Action is well known to the Court and need not be repeated at length herein. In summary, on April 13, 2005, the original complaint in the Action was filed in the Southern District of New York as a putative securities class action.

On May 17, 2005, C&A filed for bankruptcy protection. C&A subsequently liquidated and no longer exists as an operating business.

---

[3] Excluded from the proposed Class are the Defendants, past or present directors and officers of C&A, members of their immediate families, parents, subsidiaries and affiliates of C&A, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or has had a controlling interest, any Released Parties, and, to the extent of their claims in the MainStay Action, MainStay Class Members. Also excluded from the Egleston Class are any putative Egleston Class Members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

Following C&A's bankruptcy filing, the original Lead Plaintiff herein was forced to litigate in the bankruptcy court to prevent a stay of this Action. This hurdle, though not of Plaintiff's making, was, inevitably, a cause of delay and expense to the proposed class.

On January 15, 2006, a Consolidated Class Action Complaint was filed in the Action. This complaint alleged securities fraud and control person claims against the Defendants.

On July 10, 2006, Plaintiff K.J. Egleston was appointed Lead Plaintiff for the proposed class and Wolf Haldenstein Adler Freeman & Herz, LLP was appointed as Lead Counsel for the proposed class. On that date, the action brought by Mr. Egleston was also consolidated with a number of other actions pending in the Southern District of New York, and became the lead case of those actions.

In the following months, Defendants brought a set of motions to dismiss in the Southern District of New York. The briefing concerning these motions raised a host of purported flaws in the First Amended Complaint. Plaintiff forcefully countered Defendants' arguments concerning those purported flaws. Respected and experienced counsel on each side were willing to give no ground with respect to any aspect of the pleadings.

On August 8, 2006, this action was transferred, on the motion of Defendants, to the Eastern District of Michigan.

On March 23, 2007, before any ruling was issued on the motions to dismiss, both the Securities and Exchange Commission ("SEC") and the United States Attorney's Office for the Southern District of New York announced actions against several persons in connection with the demise of C&A. Four individuals entered pleas of guilty to felonies in the action pursued by the Attorney General, while four other individuals, including Defendants Stockman and Stepp, were

indicted. For its part, the SEC filed civil charges against Defendants Stockman and Stepp, among other persons.

These potentially game-changing developments necessitated the filing of a Second Amended Consolidated Class Action Complaint. This, the operative complaint (the "Complaint") in this Action, was filed on May 4, 2007. It alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.[4] It alleges, among other things, that Defendants engaged in, and/or controlled entities and persons engaged in, a fraudulent scheme to artificially inflate the price of C&A securities and to deceive Class Members by making misrepresentations and nondisclosures of material fact concerning C&A's financial status and prospects. In support of these claims, the Complaint alleges that Defendants Stockman, Stepp and Koth engaged in a scheme to conceal and falsely report the true financial condition of C&A throughout the Class Period, through among other things: (i) sham transactions between C&A and related parties; (ii) false reporting of transactions involving vendor rebates; and (iii) improperly borrowing from one of C&A's lenders, G.E. Capital Corp., against receivables that, under the contract between C&A and G.E. Capital, were not approved to be included in the borrowing base. Heartland and the Individual Defendants are also alleged to be liable as "control persons" of C&A under the federal securities laws.

On July 31, 2007, Defendants filed new motions to dismiss, which were drafted to address the Second Amended Complaint in this action as well as the complaint the MainStay Action. Plaintiffs in both actions vehemently opposed this second round of motions to dismiss,

---

[4] On the same day, a consolidated complaint was filed in the MainStay Action.

and Defendants filed multiple replies.  After oral argument on March 18, 2008, the Court issued a Memorandum of Decision and Order dated March 19, 2008, denying the motion to dismiss as to all claims against all Defendants in this Action, with the sole exception that the control person claim was dismissed against Defendant Koth (although the claim for primary liability against Defendant Koth was not dismissed).

Once the Court denied Defendants' motion to dismiss the Amended Complaint, the parties embarked on extensive and heavily litigated discovery.  Plaintiff's discovery, coordinated with discovery in the MainStay action, has included, but not been limited to: (i) review of more than 16 million pages of documents produced by Defendants and third-parties, (ii) conduct of more than 25 depositions (some of which extended for two days) of C&A-affiliated personnel, relevant third-parties, and expert witnesses; (iii) review of more than 100 proffers and notes of more than 80 witness interviews given in connection with the internal investigation and government actions against various defendants arising from the events relevant to the case at bar; and (iv) extensive consultation with experts concerning liability and damage issues.

On January 9, 2009, the United States Attorney for the Southern District of New York dropped his criminal charges against all defendants, and those individuals who had entered pleas of guilty were subsequently allowed to withdraw those pleas.  At that time, the SEC action continued.  Despite these settlements, fees for the attorneys for the several defendants and witnesses in the criminal proceedings, the SEC action, and other matters have entirely exhausted all available insurance proceeds.  That fact, combined with C&A's bankruptcy, means that there are very few sources of funds from which the Class could recover in this action.

On January 21, 2009, after the death of lead plaintiff K.J. Egleston, his brother, Scott Egleston took over his role as Lead Plaintiff in the Action. On July 8, 2009, Craig D. Epstein replaced Scott Egleston as Lead Plaintiff.

On November 23, 2009, following the conclusion of all discovery except a handful of issues subject to motion, practice and extension, this Court stayed this litigation as against the Heartland Defendants, in light of then present settlement activity. Thereafter, the parties engaged in two additional mediation sessions, and ultimately arrived at a settlement involving all Defendants.

## III.    THE MEDIATIONS AND SETTLEMENT

Lead Plaintiff, by his counsel, has conducted discussions and arm's length negotiations with counsel for the Defendants with respect to a compromise and settlement of the Actions with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Classes. Mediation sessions were ordered by the Court and conducted by the court-appointed mediator, Judge Layn Phillips. They were held on January 12, 2009, March 16, 2009, December 12, 2009, and January 5, 2010. At each of these sessions, Judge Phillips closely supervised the settlement discussions. Lead plaintiff Scott Egleston personally attended the mediation session on March 16, 2009, and Lead Plaintiff Craig D. Epstein personally attended the final mediation session on January 5, 2010.

Prior to and during the mediation process, C&A and various third parties made available for inspection more than 16 million pages of documents. These were reviewed by Plaintiff's Counsel, with the assistance of experts working under their direction. Plaintiff's Counsel also took and defended more than 25 depositions, and reviewed a significant body of material that the government compiled in connection with its investigation of events at C&A. Based on their investigation of the matter Plaintiff's Counsel had sufficient information to fully evaluate the

strengths and weaknesses of the case and participate on a thoroughly informed basis in the mediation sessions.

In the four full day mediation sessions and other negotiations between counsel and through the mediator, counsel advocated vigorously for their clients' positions.  They also had the opportunity to receive the mediator's candid assessments of their respective stances which allowed counsel and the parties to still further assess the strengths and weaknesses of the actions. As a result of these settlement discussions, and with the substantial assistance of Judge Phillips, the parties have agreed to settle the Actions on the terms set forth in the Stipulation.

## IV.    **TERMS OF THE SETTLEMENT**

Under the terms of the Settlement, Defendants agreed to provide a recovery of $12,262,500 to members of the Class in this action.[5]  $6,700,000 of this is to be paid in cash into an escrow account within thirty days of the Court's preliminary approval of the Settlement Agreement and $62,500 is to be paid in cash into an escrow account thirty days prior to the date set by the Court for final approval of the Settlement.   The remaining $5,500,000 is to be contributed by Heartland within thirty days of the Court's preliminary approval of the Settlement Agreement, in the form of a note payable to the Class, care of the escrow account.  The Note will be payable eight months from the effective date of the Settlement (which shall be the first date after the date on which approval of the Settlement is made final, whether on appeal or review, expiration of the time for reargue appeal or review, or otherwise). The Class will also receive interest on the Settlement Amount.  The Settlement Amount plus interest is referred to herein as

---

[5] Again, the Settlement stipulation also provides for settlement of the MainStay litigation on substantially identical terms, bringing the amount which Defendants will be paying in settlement of the two litigations a total of $24,625,000.

the "Gross Settlement Fund." The Gross Settlement Fund, less any award of attorneys' fees, reimbursement of litigation expenses and other Court-approved costs (the "Net Settlement Fund"), will be distributed solely to Class Members who timely submit acceptable Proofs of Claim.

The Settlement, if approved, will result in the dismissal of the Complaint against all Defendants and the release by all Class Members (which does not include persons who opt out of the Class) of all Settled Claims against the Released Parties.

Lead Counsel estimates that the average recovery under the Settlement will be $0.28 per share of C&A common stock, $ 3.99 per each 10.75% Note and $ 1.20 per each 12.875% Note. The actual recovery of any particular Class Member will depend on the following: (1) the number of claims filed; (2) when that Class Member purchased or acquired C&A securities during the Class Period; (3) whether that Class Member sold or retained their C&A securities during the Class Period and if sold, when that transaction took place; (4) taxes and administrative costs, including the costs of Notice to potential Class members; (5) the amount awarded by the Court for attorneys' fees and expenses and compensation to those who have served as lead plaintiff; and (6) whether any Defendant exercises a conditional option to terminate their participation in the Settlement.[6]

---

[6] The Settlement Stipulation contains a provision granting certain Defendants an option to terminate their participation in the Settlement in the event that members of the Class who purchased in the aggregate, more than a certain total face amount of C&A stock or C&A Notes during the Class Period, or certain members of the class in the MainStay Action, or members of the class in the MainStay Action who purchased Notes in excess of a specified amount, timely and validly request exclusion in accordance with the requirements set forth in this Notice or the Notice in the MainStay Action, which could result in a partial or full termination of the Settlement.

## V.   ARGUMENT

In determining whether to grant preliminary approval to a Settlement, the Court does not make a determination whether the settlement should be finally approved: instead, it "reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing [and] [i]f so, the final decision on approval is made after the hearing."  Federal Judicial Center, *Manual for Complex Litigation* § 13.14, at 171 (4th ed. 1995).  Essentially, "[a]ll that is required at the preliminary hearing in order to progress to the fairness hearing is that the proposed settlement be within the range of possible approval ... This bar is low ...."  *All Bromine Antitrust Pltfs. v. All Bromine Antitrust Defts.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (internal citation and quotation marks omitted).  The preliminary review allows the court to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Berry v. Sch. Dist. of Benton Harbor,* 184 F.R.D. 93, 97 (W.D. Mich. 1998). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement."  *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (quoting *Manual for Complex Litig. (Second)* § 30.44 (1985)).

In determining whether a proposed settlement falls within the range of possible approval, warranting notice, the Court must consider that in weighing the settlement for final approval, its inquiry will be ultimately limited to whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909,

921-23 (6th Cir. 1983)); *see also Bobbitt v. Academy of Court Reporting, Inc.*, No. 07-10742, 2009 WL 2168833, at *2 (E.D. Mich. July 22, 2009) ("In deciding whether to approve a class action settlement, the 'ultimate issue' for the Court is whether the proposed settlement 'is fair, adequate and reasonable.'").  In other words, "[i]t is neither required nor is it possible for a district court to determine that the proposed settlement is the fairest possible resolution of the claims of every individual class member; rather, the court need only determine whether the settlement taken as a whole, is fair, adequate and reasonable." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008).

The Settlement before the Court is well within the range appropriate for final approval.  It contains substantial financial compensation which will significantly benefit Class members. Therefore, the proposed Settlement easily falls within the range of reasonableness warranting preliminary approval, and the Court should permit notice to be provided to potential members of the Class.

### A.    Consideration of Final Approval Criteria Supports Preliminary Approval

As noted above, at this stage, the Court is not required to determine whether it will ultimately approve the Settlement. *See*, *e.g.*, *Smith v. Ajax Magnathermic Corp.*, 4:02CV0980, 2007 WL 3355080, at *7 (N.D. Ohio Nov. 7, 2007).  ("At this stage of the litigation, the Court makes no determination regarding final approval of the proposed settlement.")  *See also* Federal Judicial Center, *Manual for Complex Litigation* § 21.63 (4th ed. 2009).  However, to provide a useful guide and expedite the approval process, counsel sets forth below many of the reasons why this Court should ultimately approve the Settlement.

Courts in the Sixth Circuit have found the following factors relevant in determining whether a settlement should be approved:

(1) the likelihood of success on the merits;

(2) the risk of fraud or collusion;

(2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties;

(5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and

(7) the public interest.

*Leonhardt*, 581 F. Supp. 2d at 832 (quoting *UAW v. General Motors*, 497 F.3d at 631, citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983)). *See also Bobbitt v. Academy of Court Reporting, Inc.*, 2009 WL 2168833, at *2 (listing substantially similar set of factors, citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007)); *Rankin v. Rots*, 2006 WL 1876538, *9-10 (E.D. Mich. June 27, 2006); *citing and collecting holdings of Granada Invs., Inc. v. DWG Corp.*, 962 F.2d at 1205, *Williams v. Vukovich*, 720 F.2d at 922-23 (6th Cir. 1983), *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501-02 (E.D. Mich. 2000), *Steiner v. Freuhauf Corp.*, 121 F.R.D. 304, 305-06 (E.D. Mich. 1988), and listing substantially similar set of factors).

When examined under these criteria, it is apparent that this Settlement represents an excellent result for C&A and its security holders. The consideration to be provided to the Settlement Class, $12,262,500 (before deduction of fees and expenses), is fair, reasonable and adequate, and thus well within the range of possible approval.

### 1. The Likelihood of Plaintiffs' Success on the Merits, Weighed Against the Amount and Form of the Relief Offered in Settlement, Favors Approval

"[T]he Sixth Circuit has determined that a court cannot properly evaluate the fairness of a proposed compromise without 'weighing the plaintiff's likelihood of success on the merits

against the form and relief offered in the settlement.'" *Wade v. Kroger Co.*, 01-CV-699-R, 2008 U.S. Dist. LEXIS 97200, at **16-17 (W.D. Ky. Nov. 20, 2008), *quoting Int'l Union*, 497 F.3d at 631-32. "Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (quoting *Vukovich*, 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523.

Although Plaintiff strongly believes in the merits of the legal claims asserted, as in every complex case of this kind, Plaintiff recognizes that he faces formidable obstacles to recovery on the motions for summary judgment, exclusion of expert testimony, at trial and on appeal.

The first and foremost obstacle to recovery in this Action is that Defendants possess extremely limited resources to put toward compensating the class. C&A itself was not available as a Defendant because it is bankrupt and its assets have long since been liquidated. The proceeds of all insurance policies have been exhausted in defending civil and criminal actions brought by the United States Attorney and SEC and other proceedings. Thus, the primary sources of funds normally used in securities class actions to compensate shareholders hurt by corporations are simply nonexistent here. The proposed Settlement is clearly an excellent recovery when measured against the reality that Plaintiffs could only pursue individuals as primary violators, and the Heartland entities as control persons.

Plaintiff also faces numerous other obstacles to recovery. Success on summary judgment, at trial and through any appeal is by no means assured. Defendants deny each of the claims by Plaintiff and assert that they acted properly at all times, performed or caused to be performed accurate financial accounting, exercised sound business judgment, acted in a manner

they believed to be in the best interests of C&A, and made true and correct statements at all times to the public and to entities with which C&A did business.

In this litigation, a number of major issues remain open that might go against Plaintiff before trial is even reached: class certification, summary judgment, and *Daubert* motions for exclusion of expert testimony are all pending on the presently extended schedule. If litigation were to go forward, it is possible that Defendants could win any of these.

Then, at trial, the risks of establishing liability under the claims at issue and posed by the conflicting evidence would be exacerbated by the risks inherent in this type of litigation: the unpredictability of a lengthy and complex trial; witnesses could suddenly become unavailable; or the trier of fact could react to the evidence in unforeseen ways. Settlements of shareholder securities actions, such as this, are generally welcome because their litigation is "notoriously difficult and unpredictable." *Granada*, 962 F.2d at 1205, *citing to Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).

Even if Plaintiff and the proposed Class were successful in establishing liability at trial, they would face substantial risks in proving damages. Defendants' damages expert has opined that there were no legally cognizable damages to the class because any damages could not be measured. Defendants' expert supported that opinion with a lengthy and detailed written report. Defendants might succeed in persuading the finder of fact to that position. Plaintiff has avoided this uncertainty through the Settlement, which provides for substantial financial recovery to the Class, while providing Defendants with an opportunity for resolution of the litigation.

Moreover, even if Plaintiff and the proposed Class were successful proving their claims at trial, risks would remain. "The class would also be faced with the possibility of appellate litigation, which would further increase the costs and extend the uncertainty this action."

*Bautista v. Twin Lakes Farms*, 1:04-cv-483, 2007 WL 329162, at *5 (W.D. Mich., Jan. 31, 2007). For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), following trial, plaintiffs were rendered a jury verdict for damages that may have exceeded $100 million. However, the trial court later overturned the verdict and entered judgment *non obstante veredicto* for the individual defendants. In *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) significant damages were awarded by a jury, but on appeal the judgment was reversed and the case dismissed. As the court noted in *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *See also Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145 million judgment after years of appeals).

While Plaintiff is confident with respect to the strengths of his claims, he recognizes the significant risks that he faces with further litigation and the possibility that the outcome will not be as hoped, particularly in a complex action such as this, where insurance proceeds have already been exhausted, and a company at issue has been liquidated in bankruptcy. With this in mind, and with the possibility of no compensation for C&A's security holders, the Stipulation of Settlement represents an excellent result. This weighs strongly in favor of the Settlement.

### 2.   The Clear Absence of Fraud or Collusion Favors the Settlement

Unless faced with evidence suggesting collusion, it is presumed that negotiations were undertaken in good faith. *See*, *e.g.*, *Telectronics,* 137 F. Supp. 2d at 1018 (citing Herbert Newberg & Alba Conte, *Newberg On Class Actions* § 11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement,

unless evidence to the contrary is offered.")  Further, "if the settlement agreement itself is fair, reasonable and adequate, then the court may assume that the negotiations were proper and free of collusion."  *Leonhardt v. Arvin Menitor, Inc.*, 581 F. Supp. 2d 818, *838 (E.D. Mich. 2008).

Here, counsel for the several parties were vociferous proponents of their clients' positions.  Each pressed fiercely to obtain the greatest possible advantage for those they represent.  The mediation sessions were not just arm's length but, indeed, strongly adversarial. The skilled and respected mediator, Judge Phillips, oversaw the mediations with close attention, and actively assisted in the resolution of this matter.  It took four full day negotiation sessions, conducted over a period of a year, as well as a number of telephonic conferences, to reach the Settlement that is now before the Court.  It is clear that, far from being collusive, these settlement negotiations were conducted with the utmost zealous advocacy.

Plaintiff's and Defendants' attorneys are, moreover, well-respected, not only for their skill and success in prosecuting complex actions, but also for their professional integrity.  These counsel are well-aware of the strengths and weaknesses of their claims and defenses and engaged in arms-length negotiations based on that knowledge.

There is not even the hint of a suggestion that collusion has occurred in this case.  Thus, this factor, too, supports preliminary approval of the Settlement.

### 3.    The Complexity, Expenses, and Delay of Continued Litigation Favor Approval

"Courts generally favor settlement of lawsuits because settlements replace the expense and uncertainties of trial with a mutually agreeable outcome."  *Bautista,* 2007 WL 329162, at *4 "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them." *Telectronics*, 137 F. Supp. 2d at 613.  *See also In re Delphi Corp. Sec. Derivative, and ERISA Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) (approving settlement, in part, because it provided an

immediate benefit without the further expenses, delay, risk and uncertainty of further litigation); *Smith*, 2007 WL 3355080, at *6 (same). Therefore, this factor is designed to capture 'the probable costs, in both time and money, of continued litigation." *In re Cendant Corp., Derivative Action Litigation*, 264 F.3d 201, 233 (3d Cir. 2001).

Here, the case has been pending for five years. Due to C&A's bankruptcy filing and the resultant need to litigate in bankruptcy court to prevent this action from being stayed, as well as other intervening developments, such as the indictment and government investigation of several of the Defendants, Class members have already had to wait for an extensive period of time before even having the potential to receive any recovery.

Should the Action proceed without settlement, any recovery will be significantly further off. Hard fought and necessarily time-consuming litigation would be extremely likely on, first, the significant remaining pre-trial motions, then at a complex trial, and subsequently, at the almost inevitable appeal phase.

Specifically, motions for summary judgment have not yet been briefed. Such motions would be zealously litigated and supported by an enormous record. Other pre-trial motions also would be necessary, such as an opposed motion for class certification and various motions to exclude expert testimony. These would necessarily involve significant expenditures of time and financial resources.

Subsequently, because of the complex nature of the claims and evidence, trial would likely consume significant time. It would also probably require significant expenses for the preparation of exhibits, and cause the Class to incur travel and expenses for both counsel and witnesses, including experts.

Should Plaintiff be successful at a trial, Defendants would likely appeal. Appeals in this type of action commonly extend for more than a year, and require additional extensive briefing. Potential appeals would thus significantly increase the cost, in both time and money, to members of the Class.

Thus, this third factor weighs in favor of the Settlement.

### 4. The Amount and Character of Discovery and Evidence Uncovered Weighs in Favor of Approval

When determining the adequacy of a settlement, courts consider the quality and nature of the discovery completed. *Girsh v. Jepson*, 521 F.2d 153, 157. Here, the parties have litigated this action for more than four years. Defendants and third parties have made available for inspection more than 16 million pages of documents. Parties have taken more than 25 depositions, including 7 expert depositions, some of which lasted for multiple days. The Parties also reviewed notes from over 100 proffer sessions, and notes of interviews with approximately 80 witnesses, given in connection with internal and government investigations of the events giving rise to this Action. With the assistance of accounting and damages experts working under their direction, Plaintiff's attorneys have conducted an extensive review and analysis of these materials. Based on the review of evidence and their investigation of the matter, Plaintiff's Counsel were able to obtain a very complete picture of the relevant occurrences during the Class Period, and of the strengths and weaknesses of Plaintiff's case. They garnered more than sufficient knowledge to evaluate the case and conduct informed negotiations. Accordingly, on this factor too, preliminary approval of the Stipulation is unquestionably warranted.

### 5. The Judgment of Experienced Counsel Who Have Competently Evaluated the Strength of Their Proof Weighs in Favor of Approval

In determining whether to approve a proposed settlement, a court should give the judgment of experienced counsel "substantial weight." *Smith*, 2007 WL 3355080, at *6; *Lake v.*

*First Nationalwide*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (citation and internal quotation marks omitted)).  *See also Rankin*, 2006 WL 1876538, at *3 ("[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties.")

Plaintiff's Lead Counsel have extensive experience in handling shareholder securities cases and other complex litigation.  Wolf Haldenstein Adler Freeman & Herz LLP, founded in 1888, is a New York based law firm, with more than 60 attorneys, that has been a leader in the field of securities and derivative actions for more than 30 years. The firm has handled hundreds of class and derivative actions and recovered billions of dollars in damages.

In addition to the judgment of experienced trial counsel, the mediator, Judge Phillips, also had substantial participation in the settlement process.  Judge Phillips has significant expertise with respect to mediations of this type.

Likewise, the Lead Plaintiff favors this Settlement.  Mr. Epstein was well aware of developments and personally participated in the mediation.  He believes that the Settlement is fair and in the best interests of the Class.

The opinions of these experienced counsel and others should weigh heavily in favor of both preliminary and final approval of the Stipulation.

### 6.    Few Objections Are Anticipated

While the Court cannot fully assess whether there will be objections until the Settlement Hearing has taken place, it can be expected, as with any class action, that a certain number of objections may be filed.  *See e.g. Cardizem*, 218 F.R.D. at 527.  However, this number is likely to be small, as the Settlement is clearly an excellent result given that even if Plaintiff were successful at trial, a much larger recovery is unlikely because, due to bankruptcy, C&A no longer

exists, and because all of the insurance proceeds have already been used up in defending the host

of actions brought by various entities -- most particularly the United States Attorney and SEC.

Moreover, the Settlement is fair to all Class members, as Class members will benefit from the

financial compensation on a pro rata basis using a Plan of Allocation that takes into account the

damages that they suffered due to the actions alleged in the Complaint, based on the timing of

their purchases and sales of C&A securities.  Because it is unlikely that a large number of

objections will be filed, the sixth factor supports approval of the Stipulation.

### 7.  The Settlement Is Consistent with the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and

class action suits because they are 'notoriously difficult and unpredictable' and settlement

conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc. v. DWG

Corp.*, 962 F.2d at 1205 (6th Cir. 1992)).  *See also Wade*, 2008 U.S. Dist. LEXIS 97200 at 21

("Lastly, the Court notes that there is a federal policy favoring settlement of class actions …and

the Court can find no principled basis for not adhering to that policy in this matter" (citing Int'l

Union, 497 F.3d at 632)).  Plaintiff avers that there is no countervailing public interest present in

this litigation which would militate against the strong public interest in settlement of this

complex action.

### B.  Class Treatment is the Best Means of According Relief to Class Members

In this motion, Plaintiff also seeks certification of a settlement class.  The Settlement

provides relief to the Class as a whole, and in this case, relief is best accorded on a class-wide

basis.

A class may be certified if it satisfies all of the requirements of Rule 23(a) and one of the

three subparagraphs of Rule 23(b).  *See In re Countrywide Fin. Corp. Customer Data Sec.

Breach Litig.*, 3:08-MD-01998, 2009 WL 5184352, at *1 (W.D. Ky. Dec. 22, 2009) (applying

Rule 23 at preliminary approval stage); *Bautista*, 2007 WL 329162 at *1-4 (W.D. Mich. Jan. 31, 2007) (same).  Under Rule 23(a), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Under Rule 23(b)(3), class actions that satisfy all the requirements of Rule 23(a), and are such that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," are appropriate for class certification.  These prerequisites are easily met here.

There can be no serious dispute that the Class satisfies the numerosity requirement of Rule 23(a)(1).  Numerosity does not depend on "a strict numerical test."  *Witmer v. Acument Global Techs., Inc.*, No. 08-12795, 2009 U.S. Dist. LEXIS 5143, at *10 (E.D. Mich. Jan. 26, 2009) (certifying class with 64 members) (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976)).  "While not an absolute rule, it is generally accepted that a class of 40 or more members is sufficient to establish numerosity."  *French v. Essentially Yours Indus.*, No. 07-CV-817, 2008 U.S. Dist. LEXIS 54550, at *8 (W.D. Mich. July 16, 2008).  *See also In re Cardizem CD Antitrust Sec. Litig.*, 200 F.R.D. 297, 303 (E.D. Mich. 2001) (80 members is sufficient).  "In addition to the number of proposed members, … courts commonly consider such factors as the ability of the members to bring individual law suits and whether class certification would promote judicial economy."  *Witmer*, 2009 U.S. Dist. LEXIS 5143, at *10.  The numerosity requirement "is generally assumed to have been met in class action suits involving

nationally traded securities." *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 479 (W.D. Mich. 1994) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981)). Here, although the exact size of the Settlement Class cannot be determined at this time, it is estimated to include thousands or tens of thousands of geographically dispersed shareholders (based on the fact that during the Class Period approximately 84 million shares of C&A common stock were outstanding as were tens or hundreds of millions in fixed income securities). Thus, joinder of all class members would be impracticable.

The class claims also satisfy the commonality requirement of Rule 23(a)(2). "[C]ommonality is satisfied by a general policy of the defendant that has allegedly affected all members of the class and that general policy is the focus of the litigation." *Bantista v. Twin Lakes Farms Inc.*, 04-CV-483, 2007 WL 329162, at *3 (W.D. Mich. Jan. 31, 2007). The "commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Int'l Union, United Auto., Aero., and Agri. Implement Workers of Am. v. Chrysler, LLC*, 07-CV-14310, 2008 WL 2980046, at *18 (E.D. Mich. July 31, 2008).

Here, all members of the proposed Settlement Class share common interests in a host of issues. These include whether Defendants properly accounted for transactions with related parties, whether Defendants created false documentation to misleadingly increase the apparent benefit of rebate transactions, whether Defendants were permitted, under their credit agreement with G.E. Capital Corp., to include certain collateral in the borrowing base, and whether Defendants made public misrepresentations that were material.

In addition, the claims of the proposed class representative, Craig D. Epstein, are typical of the Class, satisfying Rule 23(a)(3). "A claim is typical if 'it arises from the same event or

practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (*quoting In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996); *see also In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 602 (E.D. Mich. 1985); *Bovee v. Coopers and Lybrand*, 216 F.R.D. 596, 609. "[F]or the district court to conclude that the typicality requirement is satisfied, 'a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.'" *Beattie*, 511 F.3d at 561. "[T]he test for typicality is not demanding and the interests and claims of the various plaintiffs need not be identical." *Witmer*, 2009 U.S. Dist. LEXIS 5143, at *13.[7] Here, Plaintiff's claims are typical of those of other Class members, as all claims arise out of the same alleged conduct and are based on the same legal theory. *See In re Dynegy Inc. Sec. Litig.*, H-02-1571, 2004 U.S. Dist. LEXIS 26492, at **85-86 (finding that typicality requirement was met in § 10(b) case alleging disclosure violations concerning Dynegy's round trip trades with CMS); *In re Consumers Powe*r, 105 F.R.D., at *602 (typicality satisfied where plaintiffs and class members would have to prove that defendants' disclosures were "false or misleading," and "the misrepresentations and omissions artificially inflated the value of their stock"). Accordingly, Rule 23(a)(3) is satisfied. Mr. Epstein's claims, like those of the rest of the Class center on Defendants' alleged fraudulent scheme to artificially inflate the price of C&A's stock and misrepresent its financial condition.

---

[7] Mr. Epstein purchased publicly traded securities of C&A during the Class Period and experienced a financial loss therefrom. He thus, like the rest of the Class, claims to have been damaged by Defendants' alleged misrepresentations.

Finally, Mr. Epstein satisfies the adequacy requirement of Rule 23(a)(4). Under Rule 23(a)(4), the Court "reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Beattie*, 511 F.3d at 562-63 (internal quotation omitted). *See also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Beattie*, 511 F.3d at 562. "'Class representatives are adequate when it appear[s] that [they] will vigorously prosecute the interests of the class through qualified counsel, which will usually be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members.'" *French*, 2008 U.S. Dist. LEXIS 54550, at *14 (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007)).

Here, Plaintiff's interests are co-extensive with those of the absent Class members. Like all Class members, Plaintiff seeks to prove that Defendants made material misrepresentations and omissions that artificially inflated C&A's securities prices during the Class Period. Moreover, it cannot be disputed that Plaintiff, through his qualified counsel, has vigorously and effectively prosecuted this case. There is no question that during the more than four year history of this case, past and current Lead Plaintiff and Lead Counsel have aggressively prosecuted the litigation by pressing numerous legal and procedural issues, engaging in extensive discovery, and employing a substantial amount of time and resources toward the prosecution of the action for the benefit of the Class.

In addition to satisfying Rule 23(a), Plaintiffs have satisfied the requirements of Rule 23(b)(3), as shown below. There is a predominance of common questions and class action is the superior means to resolve the matter.

"To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (internal quotation omitted). *See also French*, 2008 U.S. Dist. LEXIS 54550, at *17 ("[t]his requirement is satisfied if the issues that are subject to generalized proof, and thus applicable to the class as a whole, predominate over issues that are only subject to individualized proof."). Further, "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Beattie*, 511 F.3d at 564 (internal quotation omitted). Lastly, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* (internal quotation omitted).

The Supreme Court has noted that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud . . . ." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997). In a fraud-on-the-market securities case like this case, the predominance requirement is easily met. *See Bovee*, 216 F.R.D. at 607 ("[w]hen the fraud on the market theory is invoked, courts agree that the legal and factual issues common to all members of the class will predominate over individual issues.") (citations omitted); *see In re Mut. Sav. Bank Sec. Litig.*, 166 F.R.D. 377, 385 (E.D. Mich. 1996); *see also In re Dynegy*, 2004 U.S. Dist. LEXIS 26492, at **90-91 (predominance met in § 10(b) case alleging round-trip trades, where plaintiffs were "entitled to rely on the fraud-on-the-market theory to show reliance ...").

Here, the common issues concerning whether or not Defendants committed fraud and the extent of the effect of any such fraud on the price of C&A's stock and notes during the Class Period, greatly predominate over any individual questions that might exist.

Finally, there can be no dispute that a class action is the superior method (and, for all practicable purposes, the *only* method) for class members to resolve this controversy. *See Bovee*, 216 F.R.D. at 607 ("'It is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions.'") (citation omitted); *Castillo v. Envoy Corp.*, 206 F.R.D. 464, 474 ("Courts have generally considered that class actions are the most favorable means of adjudicating federal securities fraud claims."). It is self-evident that, in the absence of a class action, individual investors "will be effectively barred from seeking legal redress of their claims." *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co*., Case Nos. 1:95-CV-141, 1:95-CV-290, 1996 U.S. Dist. LEXIS 16330, at *37 (W.D. Mich. Sept. 27, 1996); *In re Dynegy*, 2004 U.S. Dist. LEXIS 26492, at **91-92. *See also In re Herley Indus. Secs. Litig.*, 2009 U.S. Dist. LEXIS 91600 (E.D. Pa. Sept. 30, 2009 (predominance and superiority easily met where in straightforward securities action); *In re NetBank, Inc.*, 259 F.R.D. 656, 676 (N.D. Ga. Aug. 7, 2009) ("As a general rule, class action treatment presents a superior method for the fair and efficient resolution of securities fraud cases.") (quoting *In re HealthSouth*, 257 F.R.D. at 284). Indeed, with the exception of the lead plaintiff in the MainStay action, individual investors have *not* come forward to prosecute separate individual actions, as the extraordinary expense of individual suits prohibits such an approach. *See* Rule 23(b)(3)(A, B); *Carroll v. United Compucred Collections, Inc*., 399 F.3d 620, 625-26 (6th Cir. 2005) (citing *Amchem*, 521 U.S. at 617); *French*, 2008 U.S. Dist. LEXIS 54550 (W.D. Mich. July 16, 2008).

For all of the foregoing reasons, the proposed Class satisfies all requirements for certification.

### C.    Publication of the Notice to C&A Shareholders is Appropriate

This Court enjoys "virtually complete discretion" in its determination of what constitutes reasonable notice under Rule 23(e), in form as well as method. *See e.g.  Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981), *modified on other grounds on rehearing*, 670 F.2d 71 (6th Cir. 1982); 7B Charles Alan Wright, et al., *Fed. Prac. & Proc.* § 1797.6 (3d ed. 2009) "All that the notice must do is 'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Carlough v. Amchem Prods.*, 158 F.R.D. 314, 332 (E.D. Pa. 1993) (citations omitted).  *See also In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984).  The method should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Pursuant to the Stipulation, Plaintiff and Defendants recommend approval of the Notice substantially in the form of Exhibit 1 to Exhibit B to the Stipulation, and the Summary Notice substantially in the form of Exhibit 3 to Exhibit B to the Stipulation.  The Notices detail the rights of shareholders, including the right to be heard at the Settlement Hearing.  They also provide the name, address and phone number of Plaintiff's Counsel for inquiries.  The Stipulation provides that the Notice shall be sent by First Class mail to reasonably identifiable likely Class members, and that the Summary Notice shall be published once in *The Wall Street Journal*.  The form and manner of the Notice proposed fulfill all of the requirements of Federal Rule of Civil Procedure 23 and due process.

VI.    **PROPOSED SCHEDULE OF EVENTS**

In connection with preliminary approval of the Stipulation, the parties request that the Court establish a date for publication of the Notice, a date by which stockholders may object to the Stipulation, dates for filing of papers in support of the Stipulation, and a date for the Settlement Hearing. The following schedule is proposed:

1.    On or before 10 business days following entry of the Order preliminarily approving the Settlement and calling for issuance of a Notice and conduct of a fairness hearing thereon, Notice and Proof of Claim to be mailed, by first class mail, postage prepaid, to all Class Members who can be identified with reasonable effort;

2.    Within 10 calendar days of the mailing of the Notice, the publication form of the Notice posted in the national edition of *The Wall Street Journal*;

3.    At or before the Settlement Fairness Hearing, Plaintiff's Counsel to file with the Court proof, by affidavit or declaration, of the publication of the Notice;

4.    No later than 30 calendar days before the Settlement Fairness Hearing, Plaintiff's Lead Counsel to submit its papers in support of final approval of the Settlement, the Plan of Allocation and request for attorneys' fees and expenses.

5.    At least 20 calendar days prior to the Settlement Fairness Hearing, any Class Members objecting to the Settlement or wishing to be excluded therefrom to file and serve their objections or requests for exclusions;

6.    At least 7 calendar days before the Settlement Fairness Hearing any reply papers to be filed in support of the Settlement, the Plan of Allocation and request for attorneys' fees and expenses;

27

7.    On a date to be decided, but not more than 100 calendar days after the Preliminary

Approval Hearing, the Settlement Fairness Hearing is to be held;

8.    Within 100 calendar days after the Notice Date, Proofs of Claims must be filed.

This schedule is similar to those used in other complex shareholder class action settlements and

provides due process to current holders of C&A common stock with respect to their rights

concerning the Settlement.

## VII.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant the

Unopposed Motion for Preliminary Approval of the Settlement Pursuant to Federal Rule of Civil

Procedure 23(e).

DATED: February 17, 2010              .        Respectfully Submitted,

                                        **WOLF HALDENSTEIN ADLER**
                                           **FREEMAN & HERZ LLP**
                                       __/s/ Thomas H. Burt____
                                       Daniel W. Krasner, Esq.
                                       Thomas H. Burt, Esq.
                                       Kate M. McGuire, Esq.
                                       270 Madison Avenue
                                       New York, New York 10016
                                       Telephone: (212) 545-4600
                                       Facsimile: (212) 545-4653

                                       ***Lead Counsel for the Plaintiffs***

                                       **THE MILLER LAW FIRM, PC**

                                     __/s/ Courtney B. Ciullo_____ __
                                       Marc L. Newman (P51393)
                                       The Miller Law Firm, PC
                                       950 West University Drive, Suite 300
                                       Rochester, Michigan 48307
                                       Telephone: (248) 841-2200
                                       Facsimile: (248) 652-2852

                                       ***Liaison Counsel for Plaintiffs***

28

**GAINEY & McKENNA**
Thomas J. McKenna
295 Madison Avenue,
4th Floor
New York, New York 10017

*Additional Counsel for Plaintiff Craig D. Epstein*

569394

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 17, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will send notification to the following ECF attorneys of record:

- **Michael O. Fawaz**
  Mfawaz@howardandhoward.com,gb@h2law.com
- **Jeffrey S. Geier**
  jgeier@skadden.com
- **Timothy R. Graves**
  tgraves@allardfishpc.com
- **Fred K. Herrmann**
  fkh@krwlaw.com,brm@krwlaw.com,ecf@krwlaw.com
- **Simon J. Hill**
  shill@lewis-gellen.com
- **Matthew B. Holmwood**
  Matthew.Holmwood@wilmerhale.com
- **Lea Margaret Haber Kuck**
  lkuck@skadden.com
- **Patrick M. McCarthy**
  PMcCarthy@Howardandhoward.com,CHodge@Howardandhoward.com
- **Thomas G. McNeill**
  TMcNeill@dickinsonwright.com,LMolisee@dickinsonwright.com
- **Peter G. Neiman**
  peter.neiman@wilmerhale.com
- **Nicole R. Rabner - NOT SWORN**
  Nicole.Rabner@wilmerhale.com
- **William A. Sankbeil**
  was@krwlaw.com,cjv@krwlaw.com
- **Kelly S. Shoop - NOT SWORN**
  kelly.shoop@wilmerhale.com
- **James R. Stovall - NOT SWORN**
  jstovall@maglaw.com
- **Joanne G. Swanson**
  jgs@krwlaw.com,cjv@krwlaw.com
- **Andrew B. Weissman**
  Andrew.Weissman@wilmerhale.com
- **Lauren R. Yates**
  lauren.yates@wilmerhale.com

And I certify that I mailed a copy of the foregoing to the non-ECF participants listed below:

**Thomas H. Burt**
Wolf, Haldenstein,
270 Madison Avenue
New York, NY 10016

**Gandolfo V. DiBlasi**
Sullivan & Cromwell
125 Broad Street
New York, NY 10004-2498

**Paulette S. Fox**
Wolf, Haldenstein,
270 Madison Avenue
New York, NY 10016

**Fred T. Isquith - NOT ADMITTED**
Wolf, Haldenstein,
270 Madison Avenue
New York, NY 10016

**Bryce M. Koth**
22196 Beech Street
Dearborn, MI 48124

**Samuel H. Rudman**
Lerach, Coughlin,
58 S. Service Road
Melville, NY 11747

**David E. Swarts**
Sullivan & Cromwell
125 Broad Street
New York, NY 10004-2498

By:    /s/   Courtney B. Ciullo
E. Powell Miller (P39487)
Marc L. Newman (P51393)
Courtney B. Ciullo (P71949)
The Miller Law Firm, PC
Liaison Counsel for Lead Plaintiff Egleston
950 West University Drive, Suite 300
Rochester, Michigan 48307
(248) 841-2200
cbc@millerlawpc.com