UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MAINSTAY HIGH YIELD CORPORATE BOND FUND, on behalf of itself and all others similarly situated, <br>         Plaintiff, <br><br> vs. <br><br> HEARTLAND INDUSTRIAL PARTNERS, L.P., a Delaware limited liability partnership, HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., a Delaware limited company, DAVID A. STOCKMAN, J. MICHAEL STEPP, TIMOTHY D. LEULIETTE, DANIEL P. TREDWELL, W. GERALD MCCONNELL, SAMUEL VALENTI, III, JOHN A. GALANTE, BRYCE M. KOTH, ROBERT A. KRAUSE, GERALD E. JONES, DAVID R. COSGROVE, and ELKIN B. MCCALLUM, <br>         Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 2:07-cv-10542-GER-RSW <br><br> Honorable Gerald E. Rosen |
| CRAIG D. EPSTEIN, individually and on behalf of all others similarly situated, <br>         Plaintiff, <br><br> vs. <br><br> HEARTLAND INDUSTRIAL PARTNERS, L.P., a Delaware limited liability partnership, HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., a Delaware limited company, DAVID A. STOCKMAN, J. MICHAEL STEPP, and BRYCE M. KOTH, <br>         Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 2:06-cv-13555-GER-RSW <br><br> Honorable Gerald E. Rosen |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

    This Stipulation and Agreement of Settlement (the "Stipulation"), dated as of February 17, 2010, and submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure and Rule 408 of the Federal Rules of Evidence, is made and entered into by and among the following

Settling Parties (as defined in ¶ 1(zz)): (i) MainStay (as defined in ¶ 1(aa)), on behalf of itself

and each of the MainStay Class Members (as defined in ¶ 1(dd)), by and through MainStay's

Lead Counsel (as defined in ¶ 1(ff)), (ii) Craig D. Epstein ("Epstein"), on behalf of himself and

each of the Egleston Class Members (as defined in ¶ 1(l)), by and through Epstein's Lead

Counsel (as defined in ¶ 1(r)), and (iii) the Settling Defendants (as defined in ¶ 1(yy)),  by and

through Defendants' Counsel (as defined in ¶ 1(h)).

The Settling Parties intend this Stipulation to fully, finally, and forever resolve,

discharge, and settle the Released Claims (as defined in ¶ 1(rr)), subject to the terms and

conditions stated herein.

WHEREAS:

A.    There are now actions pending in the United States District Court for the Eastern

District of Michigan (the "Court") styled *MainStay High Yield Corporate Bond Fund v.

Heartland Industrial Partners, L.P., et al.*, Case No. 2:07-cv-10542-GER-RSW (E.D. Mich.)

(the "MainStay Action") and *Egleston v. Heartland Industrial Partners, L.P., et al.*, Case No.

2:06-cv-13555-GER-RSW (E.D. Mich.) (a.k.a., *Epstein v. Heartland Industrial Partners, L.P., et

al.*, Case No. 2:06-13555-GER-RSW (E.D. Mich.)) (the "Egleston Action," together with the

MainStay Action, the "Actions");

B.    An action captioned *MacKay Shields LLC v. Heartland Industrial Partners, L.P.,*

No. 05-520229-CZ was filed on or about July 8, 2005 in the Circuit Court for the County of

Wayne Michigan, and was removed to Federal Court by defendants, where it was dismissed

pursuant to the Securities Litigation Uniform Standards Act on or about October 19, 2006.  The

MainStay Action was filed on or about February 5, 2007, on behalf of all persons and entities

who, as investment advisory or sub-advisory clients of MacKay Shields LLC, purchased or

2

otherwise acquired C&A Notes (as defined in ¶ 1(c)) through MacKay Shields LLC, during the period between August 11, 2004 through and including May 17, 2005;

      C.      By Order dated April 27, 2007, the Court appointed MainStay High Yield Corporate Bond Fund as lead plaintiff and appointed Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as lead counsel in the MainStay Action;

      D.      On May 4, 2007, an Amended Complaint was filed in the MainStay Action (the "MainStay Complaint"). The MainStay Complaint asserts claims against Heartland (as defined in ¶ 1(u)) and the Individual Defendants (as defined in ¶ 1(x)). These claims generally allege, among other things, that Section 10(b) and/or Section 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, was violated by the alleged issuance of materially false and misleading press releases and other statements regarding the financial condition of C&A during the putative class period by C&A;

      E.      On March 19, 2008, the Court entered an Order denying in whole or in part the motions to dismiss filed by certain parties, and granting the motions to dismiss filed by other parties;

      F.      On December 17, 2008, Heartland, the Outside Director Defendants (as defined in ¶ 1(pp)), Stockman (as defined in ¶ 1(x)) and Stepp (as defined in ¶ 1(x)) filed Answers to the MainStay Complaint, and on March 20, 2009, McCallum (as defined in ¶ 1(x)) filed an Answer to the MainStay Complaint;

      G.      Several putative class actions alleging violations of the federal securities laws were filed in the Southern District of New York on behalf of holders of securities issued by C&A (as defined in ¶ 1(b)) or the C&A Notes and were subsequently consolidated into the Egleston Action;

H.      On or about January 13, 2006, K.J. Egleston filed a Consolidated Class Action Complaint naming, for the first time, Heartland as a defendant;

I.      By Order dated July 10, 2006, the Court appointed K.J. Egleston lead plaintiff and Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as lead counsel in the Egleston Action;

J.      By Order dated July 11, 2006, the Court transferred the Egleston Action to the Eastern District of Michigan;

K.      On May 4, 2007, a Second Amended Complaint was filed in the Egleston Action (the "Egleston Complaint"). In the Egleston Complaint, Egleston asserted claims against Heartland, Stockman, Stepp and Koth (as defined in ¶ 1(x)). The Egleston Complaint was filed as a putative class action on behalf of individuals and entities who purchased or otherwise acquired the securities of C&A during the period between August 6, 2002 and May 17, 2005, inclusive. These claims generally allege, among other things, that Section 10(b) and/or Section 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, was violated by the alleged issuance of materially false and misleading press releases and other statements regarding the financial condition of C&A during the putative class period by C&A;

L.      On March 19, 2008, the Court entered an Order denying in whole or in part the motions to dismiss filed in the Egleston Action;

M.      On December 17, 2008, Heartland, Stockman and Stepp filed Answers to the Egleston Complaint;

N.      On January 21, 2009, Scott Egleston was appointed lead plaintiff in the Egleston Action in place of K.J. Egleston;

4

O.    On July 8, 2009, Craig D. Epstein ("Epstein") was appointed lead plaintiff in the Egleston Action in place of Scott Egleston;

P.    The Settling Parties have conducted extensive discovery in the Actions which has included, among other things: (i) more than thirty depositions; (ii) the exchange of millions of pages of documents; (iii) the exchange of expert reports; and (iv) extensive written discovery.

Q.    Based upon, *inter alia*, the extensive discovery and investigation described above, Lead Plaintiffs (as defined in ¶ 1(y)) and Lead Plaintiffs' Counsel (as defined in ¶ 1(z)) were fully aware of the strengths and weaknesses of their claims at the time the settlement described herein was reached and do not require any additional information, including any representations by the Settling Defendants, to reach an informed judgment as to whether to enter into the Settlement.

R.    The Settling Parties acknowledge that the litigation has been filed and defended in good faith, that the Actions are being voluntarily settled upon advice of counsel, and that the terms of the Settlement are fair, adequate and reasonable;

S.    The Settling Defendants deny any and all allegations of wrongdoing, fault, liability or damage to the Lead Plaintiffs or the Classes (as defined in ¶ 1(f)), deny that they engaged in any wrongdoing, deny that they committed any violation of law, deny that they acted improperly in any way, believe that they acted properly at all times, and believe that the Actions have no merit.  The Settling Defendants, however, recognize the potential difficulties and substantial expense and length of time necessary to defend this proceeding through the conclusion of class certification motions, summary judgment motions, a possible trial, possible post-trial motions, and possible appeals, and the uncertainty and risk of the outcome of any litigation, especially complex securities litigation.  To eliminate the burden and uncertainty of

5

further litigation, the Settling Defendants wish to settle the Actions on the terms and conditions stated in this Stipulation, and to put the Released Claims to rest finally and forever, without in any way acknowledging any wrongdoing, fault, liability or damage to the Lead Plaintiffs, the other members of the Classes or to any other person or entity. Lead Plaintiffs' Counsel have conducted investigations relating to the claims and the underlying events and transactions alleged in the Actions and have researched the applicable law with respect to the claims of Lead Plaintiffs and the Classes against the Defendants and the potential defenses thereto. In agreeing to this Settlement, Lead Plaintiffs do not concede that any infirmities exist in their claims, nor do the Settling Defendants concede any infirmities in their defenses to such claims, or that the claims are valid or have merit;

T.    Lead Plaintiffs, by their counsel, have conducted discussions and arm's length negotiations with counsel for the Settling Defendants with respect to a compromise and settlement of the Actions with a view to settling the issues in dispute and achieving the best relief possible consistent with the interests of the Classes. Lead Plaintiffs (or their predecessors) personally appeared at mediation sessions ordered by the Court, and conducted by the court-appointed special master, and the United States District Court in Detroit, Michigan on January 12, 2009; March 16, 2009; and January 5, 2010. At each of these sessions, the Court closely supervised the settlement discussions. Counsel for the parties further held a full-day settlement conference on Saturday, December 12, 2009 with the special master. In the four full day mediation sessions and other negotiations between counsel and through the special master, the counsel for the parties advocated vigorously for their clients' positions and had the opportunity to hear candid assessments of their respective positions which allowed counsel and the parties to fully and completely assess the strengths and weaknesses of the Actions; and

6

U.    Based upon their investigation as set forth above, Lead Plaintiffs' Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Lead Plaintiffs and the Classes, and in their best interests, and have agreed to settle the claims raised in the Actions pursuant to the terms and provisions of this Stipulation, after considering (a) the substantial benefits that Lead Plaintiffs and the members of the Classes will receive from settlement of the Actions, (b) the costs and attendant risks of litigation, and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the parties to this Stipulation, through their respective attorneys, subject to approval of the Court pursuant to Rule 23(c) of the Federal Rules of Civil Procedure, and in consideration of the benefits flowing to the parties hereto from the Settlement, that the Actions and all Released Claims as against the Released Parties (as defined in ¶ 1(ss)), and all Settled Defendants' Claims (as defined in ¶ 1(uu)) as against the Releasors (as defined in ¶ 1(tt)), shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## SELECT DEFINITIONS

1.    As used in this Stipulation, the following terms have the following meanings.

a.    "Authorized Claimants" shall mean the Egleston Authorized Claimants and the MainStay Authorized Claimants.

b.    "C&A" shall mean Collins & Aikman Corporation and each of its subsidiaries and affiliates.

c.    "C&A Notes" shall mean the 12.875% notes issued by C&A and the 10.75% notes issued by C&A.

7

d.       "Claims" shall mean any and all claims (including, but not limited to, Unknown Claims), demands, debts, liabilities, losses, rights, and causes of action of any nature and description whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses, or liability whatsoever), whether known or unknown, whether suspected or unsuspected, whether concealed or hidden, whether based on federal, state, local, statutory or common law, or any other law, rule, or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, material or immaterial, whether class or individual in nature.

e.       "Claims Administrator" shall mean, subject to Court approval, the firm of The Garden City Group, Inc., or such other firm as the Court shall approve, which shall administer the Settlement.

f.       "Classes" shall mean, for purposes of this Settlement only, the MainStay Class and the Egleston Class.

g.       "Defendants" shall mean Heartland and the Individual Defendants.

h.       "Defendants' Counsel" shall mean the counsel for each and all of the Settling Defendants as indicated in the signature lines below.

i.       "Effective Date" shall mean the first date by which all of the events and conditions specified in ¶ 50 of this Stipulation have occurred and have been met.

j.       "Egleston Authorized Claimant" shall mean any Egleston Class Member who files a valid Proof of Claim and Release demonstrating a right to recover under the Egleston Plan of Allocation, and in such form and manner, and within the time limitation, set forth in the appropriate Proof of Claim and Release form attached to the Egleston Notice.

k.      "Egleston Class" shall mean, for purposes of this Settlement only, all individuals and entities who purchased or otherwise acquired the securities of C&A and who suffered damages, including without limitation the common stock of C&A and the C&A Notes, during the period between August 6, 2002 and May 17, 2005, inclusive. Excluded from the Egleston Class are the Defendants, past or present directors and officers of C&A, members of their immediate families, parents, subsidiaries and affiliates of C&A, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or has had a controlling interest, and, to the extent of their claims in the MainStay Action, MainStay Class Members. Also excluded from the Egleston Class are any putative Egleston Class Members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Egleston Notice.

l.      "Egleston Class Member" shall mean a member of the Egleston Class.

m.      "Egleston Notice" shall mean the notice to be provided to the Egleston Class substantially identical to the forms attached hereto as Exhibit 1 to Exhibit B hereto.

n.      "Egleston Order for Notice and Hearing" shall mean the proposed order preliminarily approving the Settlement and directing notice thereof to the Egleston Class substantially in the form attached hereto as Exhibit B.

o.      "Egleston Publication Notice" shall mean the summary notice of proposed Settlement and hearing for publication substantially in the form attached hereto as Exhibit 3 to Exhibit B hereto.

p.      "Egleston Settlement Fund" shall mean 50% of the Heartland Cash Settlement Amount, 50% of the amounts due under the Heartland Note, 50% of the Stockman Cash Settlement Amount and 50% of the Stepp Cash Settlement Amount.

9

q.    "Epstein's Counsel" shall mean Epstein's Lead Counsel, the Miller Law Firm, PC, Gainey & McKenna LLP, and any other counsel representing Epstein in the Egleston Action.

r.    "Epstein's Lead Counsel" shall mean Wolf Haldenstein.

s.    "Escrow Agent" shall mean the escrow agent, or its successor, as designated by Lead Plaintiffs' Counsel.

t.    "Final" shall mean the later of (i) the date of entry of any appellate decision affirming the Order and Final Judgment, and the expiration of the time for filing a petition for a writ of certiorari to review the Order and Final Judgment if no petition is filed, or a denial of such writ if such petition is timely filed and denied, and, if a petition for certiorari is timely filed and is granted, the date of entry of the decision affirming the Order and Final Judgment following review pursuant to that grant; (ii) the date of entry of the final dismissal of any appeal from the Order and Final Judgment or the final dismissal of any proceeding to review the Order and Final Judgment, by reconsideration or certiorari or otherwise; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the Court's Order and Final Judgment approving the Stipulation substantially in the form of Exhibit C hereto, such that the Order and Final Judgment represent final and binding judgments.  Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any Plan of Allocation and/or application for attorneys' fees, costs or expenses, shall not in any way delay or preclude the Order and Final Judgment from becoming Final.

u.    "Heartland" shall mean Heartland Industrial Partners, L.P. and Heartland Industrial Associates, L.L.C.

10

v. "Heartland Cash Settlement Amount" shall mean nine million dollars ($9,000,000) to be paid by Heartland as set forth below.

w. "Heartland Note" shall mean a secured note issued by Heartland in the amount of eleven million dollars ($11,000,000) in the form attached hereto as Exhibit E.

x. "Individual Defendants" shall mean the collective of the Outside Director Defendants, David Stockman ("Stockman"), J. Michael Stepp ("Stepp"), Elkin McCallum ("McCallum"), David Cosgrove ("Cosgrove"), Gerald Jones ("Jones"), John Galante ("Galante"), Bryce Koth ("Koth"), Robert Krause ("Krause"), Timothy Leuliette ("Leuliette"), Paul Barnaba ("Barnaba"), Thomas Gougherty ("Gougherty") and Christopher Williams ("Williams").

y. "Lead Plaintiffs" shall mean MainStay and Epstein.

z. "Lead Plaintiffs' Counsel" shall mean MainStay's Lead Counsel and Epstein's Lead Counsel together.

aa. "MainStay" shall mean MainStay High Yield Corporate Bond Fund.

bb. "MainStay Authorized Claimant" shall mean any MainStay Class Member who files a valid Proof of Claim and Release demonstrating a right to recover under the MainStay Plan of Allocation, and in such form and manner, and within the time limitation, set forth in the appropriate Proof of Claim and Release form attached to the MainStay Notice.

cc. "MainStay Class" shall mean, for purposes of this Settlement only, all persons and entities who, as investment advisory or sub-advisory clients of MacKay Shields LLC, purchased or otherwise acquired C&A Notes through MacKay Shields LLC during the period between August 11, 2004, through and including May 17, 2005. Excluded from the MainStay Class are any putative MainStay Class Members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the MainStay Notice.

11

dd.     "MainStay Class Member" shall mean a member of the MainStay Class.

ee.     "MainStay's Counsel" shall mean MainStay's Lead Counsel, Morganroth & Morganroth PLLC and any other counsel representing MainStay in the MainStay Action.

ff.     "MainStay's Lead Counsel" shall mean Bernstein Litowitz.

gg.     "MainStay Notice" shall mean the notice to be provided to the MainStay Class substantially identical to the form attached hereto as Exhibit 1 to Exhibit A hereto.

hh.     "MainStay Order for Notice and Hearing" shall mean the proposed order preliminarily approving the Settlement and directing notice thereof to the MainStay Class substantially in the form attached hereto as Exhibit A.

ii.     "MainStay Settlement Fund" shall mean 50% of the Heartland Cash Settlement Amount, 50% of the amounts due under the Heartland Note, 50% of the Stockman Cash Settlement Amount, 50% of the Stepp Cash Settlement Amount, and 100% of the McCallum Cash Settlement Amount as discussed below.

jj.     "McCallum Cash Settlement Amount" shall mean one hundred thousand dollars ($100,000) to be paid by McCallum as set forth below.

kk.     "Notices" shall mean the MainStay Notice and the Egleston Notice.

ll.     "Opt-Out Party" shall mean Heartland and the Outside Directors, and each of them, if and only if Heartland and the Outside Directors terminate their participation in the Settlement pursuant to ¶ 47, or Stockman, if and only if Stockman terminates his participation in the Settlement pursuant to ¶ 47.

mm.     "Order Approving Attorneys Fees and Plan of Allocation" shall mean the proposed orders to be entered approving payment of attorneys fees and the plan of allocation substantially in the forms attached hereto as Exhibit D-1 and D-2.

12

nn.    "Orders for Notice and Hearing" shall mean the MainStay Order for Notice and Hearing and the Egleston Order for Notice and Hearing.

oo.    "Order and Final Judgment" shall mean the order approving the Settlement to be entered in the Actions substantially in the form attached hereto as Exhibit C.

pp.    "Outside Director Defendants" shall mean Daniel P. Tredwell, W. Gerald McConnell and Samuel Valenti, III.

qq.    "Plans of Allocation" shall mean one or more plans or formulae of allocating the MainStay Settlement Fund and Egleston Settlement Fund whereby the respective Settlement Fund shall be distributed to MainStay Authorized Claimants and Egleston Authorized Claimants, respectively. Any Plan of Allocation is not part of this Stipulation, and neither the Settling Defendants nor Defendants' Counsel shall have any responsibility therefor or liability with respect thereto.

rr.    "Released Claims" shall mean any and all Claims and Unknown Claims by any Releasor against the Released Parties, which have been or could have been asserted relating to the subject matter of the Actions by any Releasor. Excluded from the definition of "Released Claims" are any Claims arising from or relating to the enforcement of this Settlement. "Released Claims" also does not include claims pending in any other currently pending litigation of which the Settling Defendants have received actual notice prior to the date hereof.

ss.    "Released Parties" shall mean the Defendants, and each of their past or present subsidiaries, parents, general partners, limited partners, members, controlling persons, successors and predecessors, officers, directors, agents, employees, attorneys, advisors, investment advisors, auditors, accountants, insurers, and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has or has had a controlling

interest or which is related to or affiliated with any of the Defendants (including without limitation, Heartland Industrial Group, L.L.C.), the legal representatives, heirs, successors in interest or assigns of the Defendants and the parents, spouses, siblings and children of each of the Defendants.

        tt.     "Releasors" shall mean the collective of Lead Plaintiffs and each of the other members of the Classes, each of whom is a "Releasor," on behalf of themselves, their respective heirs, executors, estates, administrators, predecessors, successors, assigns, and their respective past or present parents, subsidiaries, associates, affiliates, employers, agents, insurers, reinsurers, directors, officers, partners, principals, members, attorneys, financial and other advisors, investment bankers, underwriters, lenders, or other representatives of the foregoing, in their capacities as such.

        uu.     "Settled Defendants' Claims" shall mean any and all Claims and Unknown Claims against Releasors belonging to the Settling Defendants arising from or relating to the institution, prosecution or settlement of the Actions. Excluded from the definition of "Settled Defendants' Claims" are any Claims arising from or relating to the enforcement of this Settlement.

        vv.     "Settlement" means the settlement of the Released Claims as between Lead Plaintiffs and the Classes and the Settling Defendants, in accordance with the terms and conditions of this Stipulation.

        ww.     "Settlement Funds" shall mean the Heartland Cash Settlement Amount, the Heartland Note, the Stepp Cash Settlement Amount, the Stockman Cash Settlement Amount and the McCallum Cash Settlement Amount.

xx.    "Settlement Class Member" shall mean a member of the MainStay Class or the Egleston Class.

yy.    "Settling Defendants" shall mean Heartland, the Outside Director Defendants, Stockman, Stepp and McCallum together.

zz.    "Settling Parties" shall mean Lead Plaintiffs, the Classes and the Settling Defendants.

aaa.    "Stepp Cash Settlement Amount" shall mean one hundred twenty five thousand dollars ($125,000) to be paid by Stepp as set forth below.

bbb.    "Stockman Cash Settlement Amount" shall mean four million four hundred thousand dollars ($4,400,000) to be paid by Stockman as set forth below.

ccc.    "Unknown Claims" means any and all Settled Claims which the Lead Plaintiffs or Settlement Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, and any Settled Defendants' Claims which any Defendant does not know or suspect to exist in his, her or its favor at the time of the release of the Releasors, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement.

## CLASS CERTIFICATION

2.    For purposes of the Settlement only, and subject to ¶¶ 47(e) and 52, the Settling Parties stipulate and agree to: (a) certification of the Actions as class actions pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Classes as defined above; (b) appointment of Lead Plaintiffs as Class Representatives of their respective Class; (c) appointment of Lead Counsel as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure of their respective Class. Lead Plaintiffs will move for entry of the Orders for

Notices and Hearing, which, among other things, will certify the Actions to proceed as class actions solely for purposes of the Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

3.      Upon the Effective Date, the Releasors shall be deemed to have, and by operation of the Order and Final Judgment shall have fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of, each and every Released Claim against the Released Parties.

4.      Upon the Effective Date, each of the Settling Defendants shall be deemed to have, and by operation of the Order and Final Judgment shall have fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of, each and every Settled Defendants' Claims against the Releasors.

5.      The Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs and the Settling Defendants shall have expressly, and each of the Settlement Class Members and Releasors shall be deemed to have by operation of the Order and Final Judgment, waived the provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Lead Plaintiffs, the Settling Defendants, Releasors and the Settlement Class Members understand and acknowledge that they may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the subject matter of the Released

Claims and the Settled Defendants' Claims. Lead Plaintiffs and the Settling Defendants shall

expressly, and each Settlement Class Member and Releasor, upon the Effective Date, shall be

deemed to have, and by operation of the Order and Final Judgment shall have fully, finally, and

forever settled and released any and all Released Claims and Settled Defendants Claims, known

or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed

or hidden, which now exist, or heretofore have existed upon any theory of law or equity now

existing or coming into existence in the future, including, but not limited to, conduct which is

negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without

regard to the subsequent discovery or existence of such different or additional facts. Lead

Plaintiffs and the Settling Defendants acknowledge, and the Settlement Class Members and

Releasors shall be deemed by operation of the Order and Final Judgment to have acknowledged,

that the foregoing waiver was separately bargained for and is a key and fundamental element of

the Settlement of which this release is a part.

## SETTLEMENT CONSIDERATION AND THE SETTLEMENT FUND

### *Establishment and Use of the Settlement Funds*

6.      Heartland shall pay the Heartland Cash Settlement Amount into an escrow account or accounts selected and controlled by Lead Plaintiffs' Counsel (the "Escrow Account") and Heartland shall deposit the Heartland Note with the Escrow Agent.  Heartland shall do so no later than thirty (30) days following the Court's entry of the Orders for Notice and Hearing.  Fifty percent (50%) of the Heartland Cash Settlement Amount and fifty percent (50%) of the amounts due under the Heartland Note shall be for the benefit of the MainStay Class, and fifty percent (50%) of the Heartland Cash Settlement Amount and fifty percent (50%) of the amounts due under the Heartland Note shall be for the benefit of the Egleston Class.

7.      Stockman shall pay the Stockman Cash Settlement Amount into the Escrow Account.  Stockman shall do so no later than thirty (30) days following the Court's entry of the Orders for Notice and Hearing.  Fifty Percent (50%) of the Stockman Cash Settlement Amount shall be for the benefit of the MainStay Class, and fifty percent (50%) of the Stockman Cash Settlement Amount shall be for the benefit of the Egleston Class.

8.      Stepp shall pay the Stepp Cash Settlement Amount into the Escrow Account.  Stepp shall do so no later than thirty (30) days prior to the date set by the Court for the Settlement Fairness Hearing.  Fifty percent (50%) of the Stepp Cash Settlement Amount shall be designated for the benefit of the MainStay Class, and fifty percent (50%) of the Stepp Cash Settlement Amount shall be designated for the benefit of the Egleston Class.  Stepp waives any right to advancement or indemnification from any entity affiliated with Heartland (including without limitation Heartland Industrial Group, L.L.C.) for any amounts paid pursuant to this paragraph.  Nothing herein, however, shall operate to limit any right Stepp may have to

advancement of any amounts incurred or expended other than the one hundred twenty five thousand dollar ($125,000) payment made pursuant to this paragraph.

9.    McCallum shall pay the McCallum Cash Settlement Amount into the Escrow Account. McCallum shall do so no later than thirty (30) days prior to the date set by the Court for the Settlement Fairness Hearing. One-hundred percent (100%) of the McCallum Cash Settlement Amount shall be designated for the benefit of the MainStay Class.

10.    The Escrow Agent shall invest the Settlement Funds in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, or may invest the Settlement Funds in money market mutual funds or savings accounts comprised exclusively of investments fully secured by the United States Government or an agency thereof or an account fully insured by the United States Government Federal Deposit Insurance Corporation. The Escrow Agent shall bear all risks related to investment of the Settlement Funds.

11.    The Settlement Funds shall be used to pay, (i) the notice and administration costs referred to in ¶¶ 13 and 15, (ii) the taxes and expenses referred to in ¶ 20; (iii) the attorneys' fees and expenses referred to in ¶ 43; and (iv) any award to the Lead Plaintiff(s) approved by the Court, provided, however, that all amounts to pay the costs, taxes, expenses and fees referenced herein associated with the MainStay Class shall be paid only from the MainStay Settlement Fund and all such amounts associated with the Egleston Class shall be paid only from the Egleston Settlement Fund. The balance of the Settlement Funds thereafter shall be distributed to Authorized Claimants in accordance with the procedures provided in ¶ 36.

12.     MainStay's Lead Counsel shall cause the mailing of the MainStay Notice to members of the MainStay Class, substantially in the form attached hereto as Exhibit 1 to Exhibit A.

13.     MainStay's Lead Counsel may direct payment from the MainStay Settlement Fund, without further approval from the Settling Defendants or further order of the Court, all reasonable notice and administration costs actually incurred in connection with the settlement of the MainStay Action.  Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the MainStay Notice, the administrative expenses incurred and fees charged in connection with providing the MainStay Notice and processing the submitted claims, and the fees, if any, of the Escrow Agent.  In the event that this Settlement is terminated in whole or in part pursuant to the terms of this Stipulation, all notice and administration costs reasonably paid or reasonably incurred in connection with the Settlement, including any related fees, shall not be returned or repaid and each Settling Defendant shall bear his, her or its proportional share of such notice and administration costs.

14.     Epstein's Lead Counsel shall cause the mailing of the Egleston Notice, substantially in the form attached as Exhibit 1 to Exhibit B hereto, to those members of the Egleston Class who may be identified through reasonable effort.  Epstein's Lead Counsel will cause to be published the Egleston Publication Notice pursuant to the terms of the Egleston Order for Notice and Hearing.

15.     Epstein's Lead Counsel may direct payment from the Egleston Settlement Fund, without further approval from the Settling Defendants or further order of the Court, all reasonable notice and administration costs actually incurred in connection with settlement of the Egleston Action.  Such costs and expenses shall include, without limitation, the actual costs of

20

printing and mailing the Egleston Notice, the administrative expenses incurred and fees charged in connection with providing the Egleston Notice and processing the submitted claims, and the fees, if any, of the Escrow Agent. In the event that this Settlement is terminated in whole or in part pursuant to the terms of this Stipulation, all notice and administration costs reasonably paid or reasonably incurred in connection with the Settlement, including any related fees, shall not be returned or repaid and each Settling Defendant shall bear his, her or its proportional share of such notice and administration costs.

16.    The Escrow Agent shall not disburse the Settlement Funds except as provided in this Stipulation, by an order of the Court, or by the prior joint written agreement of Lead Plaintiffs' Counsel and Defendants' Counsel.

17.    Subject to further order and/or direction as the Court may enter or provide, the Escrow Agent may execute transactions on behalf of the Settlement Class Members consistent with the terms of this Stipulation.

18.    The Settlement Funds shall be deemed and considered to be in the Court's custody, and shall remain subject to the Court's jurisdiction, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

***Tax Treatment of the Settlement Fund***

19.    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund at all times as a "qualified settlement fund" within the meaning of United States Treasury Regulation 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 19, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date. Such elections shall occur in compliance with the procedures and requirements contained in such regulations.

The Escrow Agent shall timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter cause the appropriate filing to occur.

        a.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the elections described in this ¶ 19) in all events shall reflect that all Taxes as defined in ¶ 20 below (including any estimated taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 20 herein.

        20.     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Settling Defendants or Defendants' Counsel with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of ¶¶ 19 and 20 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶¶ 19 and 20) ("Tax Expenses"), shall be paid out of the Settlement Fund. The Settling Defendants and Defendants' Counsel shall not have any liability or responsibility for the Taxes or the Tax Expenses or for payment thereof. The Settlement Fund shall indemnify and hold the Settling Defendants and Defendants' Counsel harmless for all Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification) except to the extent

that such Taxes and Tax Expenses were incurred as a result of the negligence of the Settling

Defendant or Defendants' Counsel seeking indemnification or the failure of that Settling

Defendant to reasonably cooperate in carrying out the provisions of this ¶ 20, including, without

limitation, his, her or its failure to sign documents reasonably required for the relation back

election or to timely provide information required.  Further, Taxes and Tax Expenses shall be

treated as, and considered as, a cost of Settlement Fund administration and shall be timely paid

by the Escrow Agent out of the Settlement Fund without prior order from the Court.  The Escrow

Agent shall, notwithstanding anything herein to the contrary, withhold from distribution to

Authorized Claimants any funds necessary to pay such amounts, including the establishment of

adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required

to be withheld under Treasury Regulation § 1.468B-2(1)(2)).  The Settling Defendants and

Defendants' Counsel are not responsible and shall not have any liability therefor.  The Settling

Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and

accountants to the extent reasonably necessary to carry out the provisions of this ¶ 20.  If

Heartland and the Outside Director or Stockman exercises their Opt-Out right pursuant to ¶ 47,

then they will have the same rights and obligations as a Settling Defendant under the terms of

this Paragraph.

***Termination of Settlement and Settlement Fund Consequences***

21.    In the event that this Stipulation (i) is not approved, (ii) is terminated, canceled, or

fails to become effective for any reason under its terms, including, without limitation, in the

event the Order and Final Judgment are reversed or vacated following any appeal taken

therefrom, or (iii) is successfully collaterally attacked, or if (iv) the Classes are not certified, then

all right, title, and interest to the Settlement Funds (including accrued interest) less reasonable

expenses actually incurred or due and owing for notice and administration, Taxes, or Tax Expenses under ¶¶ 19 and 20, shall be transferred by the Escrow Agent to the person or persons as directed by Defendants' Counsel within five (5) business days of notice to the Escrow Agent of such triggering event.

22.     Except as provided in ¶ 47, the Settlement set forth herein is not severable.  If the Settlement or Stipulation is terminated for any reason, or if the Effective Date does not occur, the entire Settlement terminates.  There is no settlement of the MainStay Action without a settlement of the Egleston Action, and there is no settlement of the Egleston Action without a settlement of the MainStay Action.

## ADMINISTRATION OF THE SETTLEMENT AND RELATED PROCEDURES

### *Notice Order and Settlement Hearing*

23.     The Settling Parties, promptly after their complete execution of this Stipulation, shall submit this Stipulation together with its Exhibits to the Court and shall jointly apply for the entry of the Orders for Notice and Hearing, substantially in the form and content of Exhibits A and B attached hereto, requesting preliminary approval of the Settlement set forth in this Stipulation, certification of the Classes, approval for the mailing of the Notices substantially in the form of Exhibit 1 to Exhibit A hereto and Exhibit 1 to Exhibit B hereto, and publication of the Egleston Publication Notice substantially in the form of Exhibit 3 to Exhibit B hereto. The Notices shall include the general terms of the Settlement set forth in the Stipulation, the respective proposed Plan of Allocation applicable to the appropriate Action, the general terms of the respective Lead Plaintiffs' Counsel's Fee and Expense Applications, and the date of the Settlement Fairness Hearing as defined below.  The Settling Parties shall further request that, as soon as reasonably practicable after notice is given, the Court hold a final hearing (the

"Settlement Fairness Hearing") to consider and determine whether (i) the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) the Court should finally certify the Classes; and (iii) the Court should enter the Order and Final Judgment dismissing the Actions against the Defendants on the merits and with prejudice. Lead Plaintiffs may also request that the Court consider at the Settlement Fairness Hearing whether (i) any proposed Plan of Allocation, as set forth in the Notices attached hereto as Exhibit 1 to Exhibit A hereto and Exhibit 1 to Exhibit B hereto are fair, reasonable, and should be approved; and (ii) whether the Court should enter the Order Approving Attorneys Fees and Plan of Allocation.

***Administration and Calculation of Claims/Supervision and Distribution of Settlement Fund***

24.    This is not a claims-made settlement. Upon the occurrence of the Effective Date, neither the Defendants nor any person or entity who or which paid any portion of the Settlement Amount on their behalf or on behalf of any Released Party shall have any right to the return of the Settlement Amount or any portion thereof or interest accrued thereon irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Settlement Fund.

25.    The Claims Administrator, subject to such supervision and direction of the Court and/or Lead Plaintiffs' Counsel as may be necessary, shall administer and calculate the claims submitted by the Settlement Class Members and shall oversee the distribution of the Settlement Fund to Authorized Claimants. The Claims Administrator shall administer the process of receiving, reviewing and approving or denying claims under Lead Plaintiffs' Counsel's supervision and subject to the jurisdiction of the Court. None of the Released Parties shall have any responsibility whatsoever for the administration of the Settlement or the claims process and

shall have no liability whatsoever to any person, including, but not limited to, Lead Plaintiffs,
Class Members or Lead Plaintiffs' Counsel in connection with such administration.

26.    The Claims Administrator shall determine each MainStay Authorized Claimant's
*pro rata* share of the net MainStay Settlement Fund pursuant to the Plan of Allocation stated in
the MainStay Notice, or in such other plan of allocation as the Court approves.

27.    The Claims Administrator shall determine each Egleston Authorized Claimant's
*pro rata* share of the net Egleston Settlement Fund pursuant to the Plan of Allocation stated in
the Egleston Notice, or in such other plan of allocation as the Court approves.

28.    The Plans of Allocation are to be proposed by the respective Lead Plaintiffs'
Counsel and are not a necessary term of this Stipulation and it is not a condition of this
Stipulation that any particular plan of allocation be approved by the Court. Lead Plaintiffs and
Lead Plaintiffs' Counsel may not cancel or terminate the Stipulation or the Settlement based on
the Court's or any appellate court's ruling with respect to the Plans of Allocation or any plan of
allocation in the Actions. Neither the Defendants nor any other Released Party shall have any
responsibility or liability whatsoever for allocation of the Settlement Fund.

29.    Lead Plaintiffs' Counsel shall be responsible for supervising the administration of
the Settlement and disbursement of the Settlement Fund. Neither the Defendants nor any other
Released Party shall have any liability, obligation or responsibility whatsoever for the
administration of the Settlement or disbursement of the Settlement Fund. Neither the Defendants
nor any other Released Party shall be permitted to review, contest or object to any decision of the
Claims Administrator or Lead Plaintiffs' Counsel with respect to payment to a Settlement Class
Member, except to the extent that a Released Party is a Settlement Class Member and then only
to the extent of his, her or its interest as a Settlement Class Member. Lead Plaintiffs' Counsel

shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

30.     The net Settlement Funds shall be distributed to respective Authorized Claimants by the Claims Administrator only after the later of the Effective Date and the entry of a Class distribution order.

31.     Lead Plaintiffs' Counsel will apply to the Court for a respective Class distribution order: (i) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; and (ii) if the Effective Date has occurred, directing payment of the net Settlement Fund to respective Authorized Claimants from the Escrow Account.

32.     Payment pursuant to the Class distribution order shall be final and conclusive against all Settlement Class Members.  All Settlement Class Members whose Claims are not approved by the Court shall be barred from participating in distributions from the net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Actions and the releases provided for therein, and will be permanently barred and enjoined from bringing any action against any and all Released Parties concerning any and all of the  Released Claims.

33.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

34.     Each Authorized Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Authorized Claimant's Claim, and the Claim will be subject to

investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Authorized Claimant's status as a Class Member and the validity and amount of the Authorized Claimant's Claim. No discovery shall be allowed on the merits of the Actions or this Settlement in connection with the processing of claim forms.

35.     Each respective Settlement Fund shall be applied as follows:

a.     to pay all the costs and expenses reasonably and actually incurred in connection with providing the respective Notice, locating Settlement Class Members, soliciting Settlement Class Member claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms referred to in ¶ 36(a), and paying escrow fees and costs, if any;

b.     to pay the respective Taxes and Tax Expenses referred to in ¶ 20;

c.     to pay the respective Lead Plaintiffs' Counsel's attorneys' fees, expenses, and costs, with interest thereon, if and to the extent allowed by the Court;

d.     to pay any award to the Lead Plaintiff(s) approved by the Court; and

e.     to distribute to Egleston Authorized Claimants and MainStay Authorized Claimants, respectively, as allowed by this Stipulation, the Plans of Allocation, and the Court.

36.     Upon the Effective Date and thereafter, and in accordance with the terms of this Stipulation, the Plans of Allocation, or such further approval and further Court order(s) as may be necessary, the respective Settlement Funds, net of the respective expenses and fees contemplated in ¶ 35 above, shall be distributed to the respective Authorized Claimants, subject to and in accordance with the following:

28

a.     Within ninety (90) calendar days after the mailing of the Notice or such other time as the Court may set, each person or entity claiming to be an Authorized Claimant must submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the respective forms of Exhibit 2 to Exhibit A hereto and Exhibit 2 to Exhibit B hereto, as applicable, signed under penalty of perjury and supported by such documents as specified in the Proof of Claim and Release and as are reasonably required by the Claims Administrator.

b.     Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit an appropriate Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement, but will in all other aspects be subject to and bound by the provisions of this Stipulation and the Settlement, the releases contained herein, and the Order and Final Judgment, and will be forever barred from bringing any action against the Released Persons concerning the Released Claims.

c.     The Settlement Fund shall be distributed to the respective Authorized Claimants substantially in accordance with the respective Plan of Allocation described in the respective Notices and approved by the Court.

37.     The Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to any of the following:

a.     any act, omission or determination of the Escrow Agent, the Claims Administrator, Lead Plaintiffs' Counsel, or designees or agents thereof;

b.     the management, investment, or distribution of the Settlement Fund;

c.     any Plan of Allocation;

29

        d.     the determination, administration, calculation, or payment of any claims, the payment or withholding of Taxes, Tax Expenses, or any losses incurred in connection therewith; or

        e.     the Fee and Expense Awards referred to in ¶ 44.

38.     No Person shall have any claim against Lead Plaintiffs, Lead Plaintiffs' Counsel, the Claims Administrator, the Defendants, or Defendants' Counsel based on distributions made substantially in accordance with this Stipulation and the Settlement, the Plan of Allocation, or further Court orders.

39.     If any balance remains in the respective Settlement Fund not less than six (6) months after the last distribution pursuant to a valid Proof of Claim and Release, Lead Plaintiffs' Counsel shall, if economically feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any *de minimis* balance still remaining in the Settlement Fund shall be donated to a charitable or educational entity to be designated by Lead Plaintiffs' Counsel.

40.     Unless Heartland and the Outside Directors or Stockman terminate their participation in the Settlement pursuant to ¶ 47 below, in which case the liability of the Opt-Out Party will not be affected by this Stipulation, under no circumstances shall:

        a.  Heartland have any liability to pay more than the Heartland Cash Settlement Amount and the Heartland Note;

        b.  Stockman have any liability to pay more than the Stockman Cash Settlement Amount;

        c.  Stepp have any liability to pay more than the Stepp Cash Settlement Amount; or

      d.   McCallum have any liability to pay more than the McCallum Cash Settlement Amount.

41.     It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Settlement Fund, including but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and shall be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. No order or proceeding relating to the Plans of Allocation shall operate to terminate or cancel this Stipulation or affect the finality of the Court's Order and Final Judgment approving this Stipulation and the Settlement, or any other orders entered pursuant to this Stipulation.

***Order and Final Judgment***

42.     Upon approval by the Court of the Settlement, an Order and Final Judgment identical in all material respects to that attached as Exhibit C hereto, shall be entered in each of the Actions, among other things:

      a.   approving this Stipulation and adjudging its terms to be fair, reasonable, and adequate, directing consummation of the terms and provisions of this Stipulation, and retaining jurisdiction to effectuate the same;

      b.   entering a bar order pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA");

      c.   completely discharging, settling, dismissing with prejudice, releasing, and permanently barring and enjoining the assertion, prosecution, or continuation by Releasors of any Released Claim, including any Unknown Claim, against each and every Released Parties;

provided, however, that the Order and Final Judgment shall not bar any action or claim to

enforce the terms of the Settlement as approved by the Court or the Order and Final Judgment;

        d.     completely discharging, settling, dismissing with prejudice, releasing and

permanently barring and enjoining the assertion, prosecution, or continuation by the Settling

Defendants of any Settled Defendants' Claims, including any Unknown Claim, against

Releasors; provided, however, that the Order and Final Judgment shall not bar any action or

claim to enforce the terms of the Settlement as approved by the Court or the Order and Final

Judgment;

        e.     if there are any Opt-Out Parties, entering an additional bar order as set

forth in ¶ 48(d) below.

***Attorneys' Fees and Reimbursement of Expenses***

        43.     MainStay's Lead Counsel may apply to the Court for: (a) an award of attorneys'

fees, not to exceed twenty-five percent (25%) of the MainStay Settlement Fund net of litigation

expense incurred in connection with the MainStay Action, plus interest, and (b) reimbursement

of litigation expenses and costs incurred in connection with prosecuting the MainStay Action,

including without limitation the fees of experts and consultants (if any) plus interest; and

Epstein's Lead Counsel may apply to the Court for: (a) an award of attorneys' fees, not to exceed

thirty-three percent (33%) of the Egleston Settlement Fund plus interest, and (b) reimbursement

of expenses and costs incurred in connection with prosecuting the Egleston Action, including

without limitation the fees of experts and consultants (if any) plus interest (together, the "Fee and

Expense Applications"). Settling Defendants take no position with respect to the Fee and

Expense Applications provided that they are consistent with the terms outlined in this ¶ 43.

44.    Any award under Lead Plaintiffs' Counsel's Fee and Expense Applications (the "Fee and Expense Awards") shall be paid to MainStay's Lead Counsel and Epstein's Lead Counsel from the MainStay Settlement Fund and Egleston Settlement Fund, respectively, as ordered, immediately after the Court enters an order making such award, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the respective Settlement or any part thereof, subject to Lead Plaintiffs' Counsel's obligation to make appropriate refunds or repayments to the respective Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated in whole or in part pursuant to the terms of this Stipulation, if the Settlement is not approved, or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of attorneys' fees and/or litigation expenses is reduced or reversed. Lead Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than five (5) business days after receiving notice of the termination of the Settlement in whole or in part or notice of any reduction of the award of attorneys' fees and/or litigation expenses. An award of attorneys' fees and/or litigation expenses is not a necessary term of this Stipulation and is not a condition of this Stipulation. Lead Plaintiffs' Counsel shall thereafter allocate the attorneys' fees in a manner in which they in good faith believe reflects the contributions of plaintiffs' counsel to the prosecution and settlement of the Actions. Notwithstanding the foregoing, Lead Plaintiffs' Counsel will not seek payment of attorneys' fees on any unpaid portion of the Heartland Note.

45.    The procedure for and the allowance or disallowance by the Court of any applications by any of Lead Plaintiffs' Counsel for attorneys' fees, costs, and expenses payable from the Settlement Fund, are not part of the Settlement, and shall be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the

Settlement. Any order or proceedings relating to any such applications, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Order and Final Judgment approving this Stipulation and the Settlement set forth herein.

46.    Neither Settling Defendants nor Defendants' Counsel shall have any responsibility for, or liability whatsoever with respect to, any payment to Lead Plaintiffs' Counsel from the Settlement Fund.

***Opt-Out Termination Right***

47.    If certain members of the MainStay Class, or if members of the MainStay Class representing, in the aggregate, a certain total face amount of C&A Notes, specified in a separate supplemental letter agreement between Lead Plaintiffs and Heartland, the Outside Directors and Stockman (the "Supplemental Letter Agreement") request exclusion from the MainStay Class, or if individuals or entities who otherwise would be members of the Egleston Class representing, in the aggregate, more than the total number of securities or total face amount of C&A Notes specified in the Supplemental Letter Agreement request exclusion from the Egleston Class, Heartland and the Outside Directors or Stockman, in their or his sole discretion, may elect to unilaterally terminate their or his respective participation(s) in the Settlement. Such termination notice shall be in writing to Lead Plaintiffs' Counsel. The Supplemental Letter Agreement will be confidential and will be filed with the Court under seal unless otherwise required by the Court.

48.    Notwithstanding anything contained herein to the contrary, if an Opt-Out Party terminates its or his participation in the Settlement pursuant to ¶ 47:

      a.     The Opt-Out Party shall cease to be a "Settling Defendant" and any

counsel representing the Opt-Out Party shall cease to be a "Defendant's Counsel";

      b.     All right, title, and interest to the any contributions made to the Settlement

Fund by the Opt-Out Party (including accrued interest) less a proportional share of reasonable

expenses actually incurred or due and owing for notice and administration, Taxes, or Tax

Expenses under ¶¶ 19-20, shall be transferred by the Escrow Agent to the Opt-Out Party within

five (5) business days of notice to the Escrow Agent of such triggering event and such

contributions shall cease to be part of the Egleston Settlement Fund, the MainStay Settlement

Fund and the Settlement Funds;

      c.     The Opt-Out Party will not be released pursuant to this Stipulation, and

shall not be considered "Released Parties" and the Opt-Out Party will not provide releases

pursuant to the Stipulation, and no claims held by the Opt-Out Party shall be considered "Settled

Defendants Claims;"

      d.     The Order and Final Judgment shall be amended to add an additional bar

order providing:

> [Identifying all Opt-Out Parties], and all other persons, including but not limited
> to any other person or entity later named as a defendant or a third-party in the
> Actions, are hereby permanently BARRED, ENJOINED and RESTRAINED
> from commencing, prosecuting, or asserting any claim for contribution,
> indemnification or advancement (whether contractual or otherwise) against the
> Settling Defendants or any other claim against the Settling Defendants where the
> injury to such entity/individual is any person's actual or threatened liability to the
> Lead Plaintiffs or the Classes, including but not limited to any amounts paid in
> settlement of such actual or threatened liability, or any other costs or expenses
> (including without limitation advancement of attorneys' fees) incurred in
> connection with the Actions.

      e.     The Opt-Out Party shall be restored to its or his respective position(s) in

the Actions as of November 15, 2009 and the terms and provisions of this Stipulation shall have

no further force and effect with respect to the Opt-Out Party and shall not be used in the Actions

or in any other proceeding for any purposes, and any judgments or orders entered by the Court in

accordance with the terms of this Stipulation (including certifications of the Classes) shall be

treated as vacated as to the Opt-Out Party;

        f.     The Settlement between all plaintiffs and Mainstay and Egleston Class

Members and the remaining Settling Defendants shall not be affected and shall remain in full

force and effect, unless both Stockman and Heartland and the Outside Directors exercise their

rights to terminate their participation in the Settlement. If both Heartland and the Outside

Directors and Stockman elect to terminate their participation in the Settlement pursuant to ¶ 47,

the entire Settlement and Stipulation will terminate and have no further effect and the provisions

of ¶ 21 shall apply.

    49.    The Orders for Notice and a Hearing shall provide that all requests for exclusion

shall be submitted at least twenty (20) days prior to the Settlement Fairness Hearing.

        a.     Copies of all requests for exclusion received, together with copies of all

written revocations of requests for exclusion, shall be delivered to Defendants' Counsel within

three (3) business days of receipt.

        b.     If either Heartland and the Outside Directors or Stockman elects to

terminate their or his respective participation(s) in the Settlement and this Stipulation pursuant to

¶ 47, written notice of such termination must be provided to Lead Plaintiffs' Counsel and all

Defendants' Counsel within fourteen (14) days of receiving written notice of such exclusion.

        c.     Lead Plaintiffs' Counsel may communicate with potential Settlement Class

Members regarding their decision(s) to opt out. If a sufficient number of potential Settlement

Class Members withdraw their requests for exclusion prior to the conclusion of the Settlement

Fairness Hearing such that the sum specified in the Supplemental Letter Agreement is no longer satisfied, Lead Plaintiffs' Counsel shall notify Heartland and the Outside Directors and Stockman and any notice by Heartland and the Outside Directors and/or Stockman pursuant to ¶ 47 shall immediately become null and void.

***The Effective Date***

50.     The Effective Date of the Settlement shall be the date when all of the following shall have occurred:

a.     the Settling Defendants have made the required contributions to the Settlement Fund;

b.     the Court has approved the Settlement, following Notices to the Classes and pursuant to the Settlement Fairness Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

c.     the Court has certified the Classes;

d.     the Court has entered the Order and Final Judgment, or judgments substantially in the form of Exhibit C hereto, in each of the Actions;

e.     the time for Heartland and the Outside Directors and Stockman to terminate their respective participations in the Settlement pursuant to ¶ 47 has expired and either Heartland and the Outside Directors or Stockman has not terminated their or his participation in the Settlement; and

f.     the Order and Final Judgment have become Final in each of the Actions, as defined in ¶ 1(t).

37

51.     Upon the occurrence of all of the events referenced in ¶ 50, any and all remaining interest or right of Settling Defendants in or to the Settlement Funds, if any, shall be absolutely and forever extinguished.

52.     In the event that either the Settlement or this Stipulation is not approved by the Court or the Settlement is terminated pursuant to ¶ 48(f) or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Actions as of November 15, 2009.  In such event, the terms and provisions of this Stipulation (except for ¶ 21) shall have no further force and effect with respect to the Settling Parties and shall not be used in the Actions or in any other proceeding for any purpose, and any judgments or orders entered by the Court in accordance with the terms of this Stipulation (including certification of the Classes) shall be treated as vacated.

53.     No Court order or modification or reversal on appeal of any Court order concerning the Order Approving Attorneys Fees and Plan of Allocation or any Plan of Allocation or award of attorney fees or expenses shall constitute grounds for cancellation or termination of the Settlement or this Stipulation.

**MISCELLANEOUS PROVISIONS**

54.     Except for the provision of testimony, which shall be given only pursuant to subpoena, the Lead Plaintiffs agree not to assist or cooperate in any manner with the prosecution of any other action related to the subject matter of the Actions, including, without limitation, allowing any expert retained by the Lead Plaintiffs in the Actions to offer testimony or other assistance in any other action related to the subject matter of the Actions.

55.    Lead Plaintiffs and Lead Plaintiffs' Counsel represent and warrant that none of the claims or causes of action asserted by them in the Actions or any of the contemplated proceeds therefrom have been assigned, encumbered or in any manner transferred, in whole or in part.

56.    The Settling Parties: (a) acknowledge that it is their intent to consummate the Settlement contemplated by this Stipulation and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts in good faith to accomplish the foregoing terms and conditions of this Stipulation.

57.    The Settling Parties intend the Settlement to be a final and complete resolution of all disputes in the Actions as against the Settling Defendants.  The Settlement covers claims that were contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  Lead Plaintiffs' Counsel and Defendants' Counsel shall request that the Order and Final Judgment contain a statement that during the course of the Actions the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.  The Settling Parties agree that the amount paid to the Settlement Funds and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

58.    The Settling Defendants have vigorously denied, and continue to deny, that they have committed any violation of the federal securities laws or other laws, and have vigorously denied and continue to deny all allegations of wrongdoing or liability whatsoever with respect to the Released Claims, including any and all claims of wrongdoing or liability alleged or asserted in the Actions.  Lead Plaintiffs' Counsel and Defendants' Counsel shall request that the Order

39

and Final Judgment contain a statement that neither this Stipulation nor the Settlement (whether or not consummated), nor any act performed or document executed pursuant to or in furtherance of the Stipulation or Settlement, shall be (i) offered or received against any of the Defendants and/or Released Parties as evidence or deemed to be evidence of any presumption, concession, or admission by any of the Settling Defendants and/or Released Parties with respect to the truth of any fact alleged or the validity of any claim that has been or could have been asserted in the Actions or any other lawsuit, or the deficiency of any defense that has been or could have been asserted, or of any liability, negligence, fault, or wrongdoing of any of the Settling Defendants and/or Released Parties; (ii) offered or received against any of the Defendants and/or Released Parties as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any of the Defendants and/or Released Parties; (iii) offered or received against any of the Defendants and/or Released Parties as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason against any of the Defendants and/or Released Parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation or Settlement; provided, however, that if this Stipulation is approved by the Court, any of the Defendants and/or Released Parties may refer to it to effectuate the liability protection granted hereunder; or (iv) construed against any of the Defendants and/or Released Parties as an admission or concession that such consideration to be given hereunder represents the amount which could be or would have been recovered after trial. Any of the Settling Parties and/or Released Parties may file this Stipulation and/or the Order and Final Judgment in any action brought against any of them in order to support a defense or

40

counterclaim based on principles of res judicata, collateral estoppel, release, good faith

settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion

or similar defense or counterclaim.

59.    All agreements made and orders entered during the course of the Actions and

relating to the confidentiality of information, including the Stipulation and Protective Order

Regarding Confidentiality of Discovery Materials, entered by the Court on January 21, 2009,

shall survive this Stipulation.

60.    All of the Exhibits to this Stipulation constitute material and integral parts hereof,

and are fully incorporated herein by reference.

61.    The Settling Parties may change, amend, modify, or alter this Stipulation and its

Exhibits only by (i) a written instrument signed by or on behalf of all of them or their respective

successors-in-interest or (ii) Court order.

62.    This Stipulation supersedes and extinguishes any and all other promises,

representations, or agreements, whether written or oral, made at any time prior to the date of this

Stipulation by and between the Settling Defendants or any of their current and former officers,

directors, stockholders, partners, principals, employees, agents, parent corporations, subsidiaries,

affiliates, predecessors, estates, successors, assigns, and attorneys, on the one hand and Lead

Plaintiffs on the other, regarding the resolution of the Actions, including the Memorandum of

Understanding dated November 16, 2009.  The Settling Parties agree that this Stipulation

contains the entire agreement between the Settling Defendants and Lead Plaintiffs and that the

terms of this Stipulation are contractual and not mere recitals.  No representation, promise, or

inducement not included in this Stipulation shall bind any Settling Party hereto and there shall be

no verbal agreements of any kind between the Settling Parties.  Notwithstanding the foregoing,

the Supplemental Letter Agreement dated February 17, 2010 referred to in ¶ 47 shall remain in full force and effect.  Notwithstanding anything contained herein to the contrary, this Stipulation shall have no effect on any agreements among the Settling Defendants, each of which shall remain in full force and effect.

63.    Lead Plaintiffs' Counsel, on behalf of the Classes, is expressly authorized by Lead Plaintiffs to take all appropriate actions required or permitted to be taken by the Classes pursuant to the Stipulation to effectuate its teams, and to enter into any modifications or amendments to the Stipulation on behalf of the Classes that it deems appropriate.

64.    Each counsel or other person executing this Stipulation or any of its Exhibits on behalf of any party hereto hereby represents that they have the full authority to do so.

65.    The Stipulation may be executed, including by signature transmitted by facsimile, in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

66.    This Stipulation is binding upon, and shall inure to the benefit of, the successors and assigns of the Settling Parties.

67.    The Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

68.     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and the Settling Parties submit to the Court's exclusive jurisdiction for purposes of implementing and enforcing the Settlement.

69.     This Stipulation and the Exhibits attached hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles, except to the extent that federal law requires that federal law governs.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, dated as of February 17, 2010.

Max W. Berger
Steven B. Singer
John C. Browne
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019

Counsel for MainStay High Yield Corporate
Bond Fund and the Class in the MainStay
Action

Daniel W. Krasner
Thomas H. Burt
Wolf, Haldenstein, Adler, Freeman & Herz
LLP
270 Madison Avenue
New York, NY 10016

Counsel for Craig D. Epstein and the Class in
the Egleston Action

43

Jonathan J. Lerner
Lea Haber Kuck
Jeffrey S. Geier
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

Counsel for Heartland Industrial Partners, L.P.,
Heartland Industrial Associates, L.L.C., Daniel
P. Tredwell, W. Gerald McConnell and Samuel
Valenti, III

Andrew B. Weissman
Wilmer, Cutler, Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone (202) 663-6612

Counsel for David A. Stockman

Gandolfo V. BiBlasi
Karen Patton Seymor
David E. Swarts
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone (212) 558-4000

Counsel for J. Michael Stepp

Eileen M. Donoghue
Gallagher and Cavanaugh
100 Foot of John Street
Lowell, Massachusetts 01852
(978) 452-0522

Counsel for Defendant Elkin B. McCallum

Jonathan J. Lerner
Lea Haber Kuck
Jeffrey S. Geier
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

Counsel for Heartland Industrial Partners, L.P.,
Heartland Industrial Associates, L.L.C., Daniel
P. Tredwell, W. Gerald McConnell and Samuel
Valenti, III

Andrew B. Weissman
Wilmer, Cutler, Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone (202) 663-6612

Counsel for David A. Stockman

Gandolfo V. DiBlasi
Karen Patton Seymour
David E. Swarts
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone (212) 558-4000

Counsel for J. Michael Stepp

Eileen M. Donoghue
Gallagher and Cavanaugh
100 Foot of John Street
Lowell, Massachusetts 01852
(978) 452-0522

Counsel for Defendant Elkin B. McCallum

44

Jonathan J. Lerner
Lea Haber Kuck
Jeffrey S. Geier
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

Counsel for Heartland Industrial Partners, L.P.,
Heartland Industrial Associates, L.L.C., Daniel
P. Tredwell, W. Gerald McConnell and Samuel
Valenti, III

Andrew B. Weissman
Wilmer, Cutler, Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone (202) 663-6612

Counsel for David A. Stockman

Gandolfo V. DiBlasi
Karen Patton Seymour
David E. Swarts
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone (212) 558-4000

Counsel for J. Michael Stepp

Eileen M. Donoghue
Gallagher and Cavanaugh
100 Foot of John Street
Lowell, Massachusetts 01852
(978) 452-0522

Counsel for Defendant Elkin B. McCallum

44

Jonathan J. Lerner
Lea Haber Kuck
Jeffrey S. Geier
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

Counsel for Heartland Industrial Partners, L.P.,
Heartland Industrial Associates, L.L.C., Daniel
P. Tredwell, W. Gerald McConnell and Samuel
Valenti, III

Andrew B. Weissman
Wilmer, Cutler, Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone (202) 663-6612

Counsel for David A. Stockman

Gandolfo V. DiBlasi
Karen Patton Seymour
David E. Swarts
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Telephone (212) 558-4000

Counsel for J. Michael Stepp

Eileen M. Donoghue
Gallagher and Cavanaugh
100 Foot of John Street
Lowell, Massachusetts 01852
(978) 452-0522

Counsel for Defendant Elkin B. McCallum

44

**EXHIBIT A**

**Exhibit A**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

MAINSTAY HIGH YIELD CORPORATE BOND
FUND, on behalf of itself and all others similarly situated,

        Plaintiff,

    v.                                              Case No. 2:07-cv-10542

HEARTLAND INDUSTRIAL PARTNERS, L.P., a          Honorable Gerald E. Rosen
Delaware limited liability partnership, HEARTLAND
INDUSTRIAL ASSOCIATES, L.L.C., a Delaware
limited company, DAVID A. STOCKMAN, J. MICHAEL
STEPP, TIMOTHY D. LEULIETTE, DANIEL P.
TREDWELL, W. GERALD MCCONNELL, SAMUEL
VALENTI, III, JOHN A. GALANTE, BRYCE M.
KOTH, ROBERT A. KRAUSE, GERALD E. JONES,
DAVID R. COSGROVE, and ELKIN B. MCCALLUM,

        Defendants.

## PRELIMINARY ORDER FOR NOTICE AND HEARING IN CONNECTION
## WITH SETTLEMENT PROCEEDINGS

WHEREAS, on February 17, 2010, the Settling Parties[1] in the above-entitled action (the

"Action") entered into a Stipulation and Agreement of Settlement (the "Stipulation") which is

subject to review by this Court under Rule 23 of the Federal Rules of Civil Procedure and which,

together with the exhibits thereto, sets forth the terms and conditions for the proposed settlement

of the claims alleged in the MainStay Complaint against the Defendants on the merits and with

prejudice; and the Court having read and considered the Stipulation and the accompanying

documents; and the parties to the Stipulation having consented to the entry of this Order;

---

[1]    Unless otherwise defined herein, all capitalized terms used herein have the meanings
defined in the Stipulation.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      The Court hereby preliminarily approves the Stipulation and the Settlement set forth therein, subject to further consideration at the Settlement Fairness Hearing described below.

2.      Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the MainStay Action is hereby preliminarily certified as a class action on behalf of all persons and entities who, as investment advisory or sub-advisory clients of MacKay Shields LLC, purchased or otherwise acquired C&A Notes through MacKay Shields LLC during the period between August 11, 2004, through and including May 17, 2005. Excluded from the MainStay Class are any putative MainStay Class Members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

3.      For purposes of this Order only, the Court preliminarily finds that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (i) the number of MainStay Class Members are so numerous that joinder of all members thereof is impracticable; (ii) there are questions of law and fact common to the MainStay Class; (iii) the claims of the named representatives are typical of the claims of the MainStay Class they seek to represent; (iv) MainStay will fairly and adequately represent the interests of the MainStay Class; (v) the questions of law and fact common to the members of the MainStay Class predominate over any questions affecting only individual members of the MainStay Class; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

4.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, MainStay is preliminarily certified as Class Representative in the MainStay Action.  For purposes of this Settlement only, the Court further preliminarily certifies MainStay's Lead Counsel as Class Counsel.

5.    A hearing (the "Settlement Fairness Hearing") pursuant to Rule 23(e) of the Federal Rules of Civil Procedure is hereby scheduled to be held before the Court on _____, 2010, at ___:_____ ___.m. for the following purposes:

(a)    to finally determine whether the MainStay Action satisfies the applicable prerequisites for class action treatment under Rules 23(a) and (b) of the Federal Rules of Civil Procedure;

(b)    to determine whether the proposed Settlement is fair, reasonable, and adequate, and should be approved by the Court;

(c)    to determine whether the Order and Final Judgment as provided under the Stipulation should be entered, dismissing the MainStay Complaint filed herein, on the merits and with prejudice as against the Defendants; to determine whether the release by the Releasors of the Released Claims, as set forth in the Stipulation, should be provided to the Released Parties; and to determine whether the release by the Settling Defendants of the Settled Defendants' Claims, as set forth in the Stipulation, should be provided to MainStay, MainStay's Counsel and the MainStay Class.

(d)    to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable, and should be approved by the Court;

3

(e)    to consider MainStay's Counsel's application for an award of attorneys' fees and expenses; and

(f)    to rule upon such other matters as the Court may deem appropriate.

6.    The Settlement Fairness Hearing may be adjourned by the Court without notice to the MainStay Class other than by an announcement of the adjournment at the scheduled time of the Settlement Fairness Hearing or at the scheduled time of any adjournment of the Settlement Fairness Hearing.  The Court may consider modifications of the Settlement (with the consent of Lead Plaintiffs the Settling Defendants) without further notice to the MainStay Class.

7.    The Court reserves the right to approve the Settlement with or without modification and with or without further notice of any kind.  The Court further reserves the right to enter the Order and Final Judgment approving the Stipulation and dismissing the MainStay Action on the merits and with prejudice regardless of whether it has approved the Plan of Allocation or awarded attorneys' fees and expenses.

8.    The Court approves the form, substance and requirements of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing and the Proof of Claim form, annexed hereto as Exhibits 1 and 2 respectively.

9.    The Court approves the MainStay's Lead Counsel's selection of, and hereby appoints, The Garden City Group to act as the Claims Administrator.  The Claims Administrator, under the supervision of MainStay's Lead Counsel, shall cause the MainStay Notice and the Proof of Claim, substantially in the forms annexed hereto, to be mailed, by first class mail, postage prepaid, on or before ten business days following entry of this Order, to all MainStay

4

Class Members at the address of each such person or entity, as set forth in the records of MacKay Shields, or who can otherwise be identified with reasonable effort. MainStay's Lead Counsel shall, at or before the Settlement Fairness Hearing, file with the Court proof of mailing of the MainStay Notice and Proof of Claim.

10.    The form and content of the MainStay Notice, and the method set forth herein of notifying the MainStay Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7) as amended by the Private Securities Litigation Reform Act of 1995, and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.

11.    In order to be entitled to participate in the Settlement Fund, in the event the Settlement is effected in accordance with the terms and conditions set forth in the Stipulation, each MainStay Class Member shall take the following actions and be subject to the following conditions:

(a)    A properly executed Proof of Claim (the "Proof of Claim"), substantially in the form attached hereto as Exhibit 2, must be submitted to the Claims Administrator, at the Post Office Box indicated in the MainStay Notice, postmarked not later than ninety (90) days after the Notice Date. Such deadline may be further extended by Court Order. Each Proof of Claim shall be deemed to have been submitted when postmarked (if properly addressed and mailed by first class mail, postage prepaid) provided such Proof of Claim is actually received prior to the motion for an order of the Court approving distribution of the Settlement Fund. Any

Proof of Claim submitted in any other manner shall be deemed to have been submitted when it was actually received at the address designated in the Notice.

(b)    The Proof of Claim submitted by each MainStay Class Member must satisfy the following conditions: (i) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (ii) it must be accompanied by documentation from MacKay Shields adequately supporting any disagreement, if any, with the list of transactions included in the Proof of Claim form, or such other documentation as is deemed adequate by the Claims Administrator; (iii) if the person executing the Proof of Claim is acting in a representative capacity, a certification of his current authority to act on behalf of the MainStay Class Member must be included in the Proof of Claim; and (iv) the Proof of Claim must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

(c)    As part of the Proof of Claim, each MainStay Class Member shall submit to the sole and exclusive jurisdiction of the Court with respect to the claim submitted, and shall (subject to effectuation of the Settlement) release all Released Claims as provided in the Stipulation.

12.    Any member of the MainStay Class who does not submit a Proof of Claim form in the manner stated in this Order shall be deemed to have waived his, her or its right to share in the Settlement Fund, and shall forever be barred from sharing in the Settlement Fund. Any such member of the MainStay Class, however, in all other respects shall be subject to and bound by all of the terms of the Settlement, including the terms of the Stipulation, the Order and Final Judgment and the releases provided for by the Stipulation and the Order and Final Judgment

6

unless such member of the MainStay Class has submitted a request to be excluded from the MainStay Class in the manner required by this Order.

13.     MainStay Class Members shall be bound by all determinations and judgments in the MainStay Action, whether favorable or unfavorable, unless such persons request exclusion from the MainStay Class in a timely and proper manner, as hereinafter provided. A MainStay Class Member wishing to make such exclusion request shall mail the request in written form by first class mail which must be received no later than twenty (20) calendar days prior to the Settlement Fairness Hearing, to the address designated in the MainStay Notice. Such request for exclusion shall clearly indicate the name, address and telephone number of the person seeking exclusion, that the sender requests to be excluded from the MainStay Class in *MainStay High Yield Corporate Bond Fund v. Heartland Industrial Partners, L.P., et al.*, Case No. 02:07-cv-10542-GER-RSW, and must be signed by such person. Such persons requesting exclusion are also directed to state:  the date(s), price(s), and number(s) of notes of all purchases and sales of C&A Notes purchased or otherwise acquired through MacKay Shields LLC during the period between August 11, 2004 through and including May 17, 2005, and the number of C&A Notes still held as of the close of trading on May 17, 2005. The request for exclusion shall not be effective unless it provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court. Upon receiving any request(s) for exclusion pursuant to the Notice, the Claims Administrator shall promptly notify MainStay's Lead Counsel and Defendants' Counsel of such request(s) for exclusion.

14.     MainStay Class Members requesting exclusion from the MainStay Class (and who do not retract such request) shall not be entitled to receive any payment out of the Settlement Fund as described in the Stipulation and Notice.

7

15.    Any MainStay Class Member may be heard and/or appear at the Settlement

Fairness Hearing to show cause why the proposed Settlement should not be approved as fair,

reasonable and adequate and why the Order and Final Judgment should not be entered thereon;

why the proposed plan of allocation should not be approved as fair, reasonable and adequate; or

why MainStay's Counsel should not be awarded attorneys' fees and payments of expenses in the

amounts sought by MainStay's Counsel; provided, however, that no MainStay Class Member

shall be heard or be entitled to contest the approval of the terms and conditions of the proposed

Settlement, the Order and Final Judgment to be entered, the proposed plan of allocation or

MainStay's Counsel's application for an award of attorneys' fees and payment of expenses, unless

the MainStay Class Member has served by hand or by first-class mail written objections and

copies of any supporting papers and briefs (which must contain proof of ownership of C&A

Notes) upon the following persons such that they are received on or before 20 days prior to the

Settlement Fairness Hearing:  John Browne, Esq., Bernstein Litowitz Berger & Grossmann LLP,

1285 Avenue of the Americas, New York, New York 10019, on behalf of MainStay and the

MainStay Class; and Jonathan J. Lerner, Esq., Skadden Arps Slate Meagher & Flom LLP, Four

Times Square, New York, NY 10036, and Andrew B. Weissman, Esq., Wilmer, Cutler,

Pickering, Hale and Dorr LLP, 1875 Pennsylvania Avenue, N.W., Washington, D.C. 20006 on

behalf of the Settling Defendants, and, also on or before that date, has filed the objections, papers

and briefs showing due proof of service upon all counsel identified above with the Clerk of the

Court, United States District Court for the Eastern District of Michigan, United States

Courthouse, 231 West Lafayette Blvd., Detroit, MI 48226.  Attendance at the hearing is not

necessary; however, persons wishing to be heard orally in opposition to the approval of the

Settlement, the Plan of Allocation, and/or the request for attorneys' fees are required to indicate

8

in their written objection their intention to appear at the hearing. Persons who intend to object to the Settlement, the Plan of Allocation, and/or counsel's application for an award of attorneys' fees and expenses and desire to present evidence at the Settlement Fairness Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Settlement Fairness Hearing. MainStay Class Members do not need to appear at the hearing or take any other action to indicate their approval.

16.    Any MainStay Class Member who does not object to the Settlement and/or the Plan of Allocation and/or the adequacy of representation and/or MainStay's Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses in the manner prescribed in the MainStay Notice shall be deemed forever to have waived such objection and shall forever be barred from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement, the Order and Final Judgment to be entered approving the Settlement, the Plan of Allocation, the adequacy of representation or the application by MainStay's Counsel for an award of attorneys' fees and reimbursement of expenses or from otherwise being heard concerning these subjects in this or any other proceeding. Pending final determination of whether the Settlement should be approved, MainStay, all MainStay Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence or prosecute any action which asserts Released Claims against any Released Party. Pending the Settlement Fairness Hearing, the Court stays all proceedings in the MainStay Action as against the Settling Defendants, other than those proceedings necessary to carry out or enforce the terms and conditions of the Stipulation.

17.    This Order, the Settlement, and any of their terms, and all negotiations, discussions and proceedings in connection with this Order and the Settlement, shall not

constitute evidence, or an admission by any of the Settling Defendants or the other Released

Parties, that any acts of wrongdoing have or have not been committed and shall not be deemed to

create any inference that there is or is not any liability on the part of any of the Settling

Defendants or any other Released Parties. This Order, the Settlement, and any of their terms,

and all negotiations, discussions and proceedings in connection with this Order and the

Settlement, shall not be offered or received in evidence or used for any other purpose in this or

any other proceeding in any court, administrative agency, arbitration tribunal, or other forum of

any kind or character in the United States or any other country except as necessary to enforce the

terms of this Order and/or the Settlement.

18.    As provided in the Stipulation, MainStay's Lead Counsel may pay the Claims

Administrator the reasonable fees and costs associated with giving notice to the MainStay Class

and the review of claims and administration of the Settlement out of the Settlement Fund without

further order of the Court.

19.    MainStay's Lead Counsel shall submit its papers in support of final approval of

the Settlement, the Plan of Allocation and request for attorneys' fees and expenses no later than

thirty (30) calendar days before the Settlement Fairness Hearing.

20.    If: (a) the Settlement is terminated pursuant to ¶ 48(f) of the Stipulation; or (b)

any specified condition to the Settlement set forth in the Stipulation is not satisfied and the

Settlement terminates as provided in ¶ 21 of the Stipulation, then, in any such event, the

Stipulation, including any amendment(s) thereof, and this Preliminary Order certifying the

MainStay Class, the Class Representatives and Class Counsel for purposes of the Settlement

shall be null and void, of no further force or effect, and without prejudice to any party, and may

not be introduced as evidence or referred to in any actions or proceedings by any person or

entity, and each party shall be restored to his, her or its respective position as it existed as of

November 15, 2009.

      21.    If an Opt-Out Party terminates its participation in the Settlement pursuant to ¶ 47

of the Stipulation, then, as to such Opt-Out Party only, the Stipulation, including any

amendment(s) thereof, and this Preliminary Order certifying the MainStay Class, the Class

Representatives and Class Counsel for purposes of the Settlement shall be null and void, of no

further force or effect, and without prejudice to the Opt-Out Party, and may not be introduced as

evidence or referred to in any actions or proceedings by any person or entity against the Opt-Out

Party, and the Opt-Out Party shall be restored to its respective position as it existed as of

November 15, 2009.

      22.    The Court retains exclusive jurisdiction over the MainStay Action to consider all

further matters arising out of or connected with the Settlement.

Dated:       Detroit, Michigan
             February __, 2010

                                              _____

                                              Judge Gerald E. Rosen
                                            UNITED STATES DISTRICT JUDGE

**EXHIBIT 1**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

MAINSTAY HIGH YIELD CORPORATE BOND
FUND, on behalf of itself and all others similarly situated,

                Plaintiff,                  Case No. 2:07-cv-10542-GER-RSW

v.                                      Honorable Gerald E. Rosen

HEARTLAND INDUSTRIAL PARTNERS, L.P.,
a Delaware limited liability partnership,
HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C.,
a Delaware limited company, DAVID A. STOCKMAN,
J. MICHAEL STEPP, TIMOTHY D. LEULIETTE,
DANIEL P. TREDWELL, W. GERALD MCCONNELL,
SAMUEL VALENTI, III, JOHN A. GALANTE,
BRYCE M. KOTH, GERALD E. JONES, DAVID R.
COSGROVE, and ELKIN B. MCCALLUM,

                Defendants.

---

## NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT, MOTION FOR ATTORNEYS' FEES AND SETTLEMENT FAIRNESS HEARING

### *A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

**This Notice provides you with important information concerning the settlement (the "Settlement") in the above-captioned action (the "MainStay Action"), which has been brought against persons and entities (identified below) relating to 12.875% Notes or 10.75% Notes (the "C&A Notes") purchased through MacKay Shields LLC ("MacKay Shields") and issued by Collins & Aikman Corporation ("C&A" or the "Company") during the period between August 11, 2004, through and including May 17, 2005 (the "Class Period"). Your rights may be affected by this Notice. If you wish to participate in the Settlement you must act by _____. You should read this Notice carefully.**

**TO:**    The "Class," consisting of all persons and entities who, as investment advisory or sub-advisory clients of MacKay Shields purchased or otherwise acquired C&A Notes during the Class Period.

- The Settlement resolves litigation brought by MainStay High Yield Corporate Bond Fund ("Lead Plaintiff" or "MainStay"), on behalf of the Class concerning misrepresentations and omissions allegedly made by certain of the Defendants (as defined below) throughout the Class Period regarding the financial condition of C&A, an entity that has ceased to exist by virtue of the sale and liquidation of all its businesses and assets pursuant to a Chapter 11 plan of reorganization (the "Plan") dated October 12, 2007, which was confirmed on July 18, 2007 by order of the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division (the "Bankruptcy Court").

- The "Defendants" in this action are individuals and entities associated with C&A during the

Class Period, as follows: Heartland Industrial Partners, L.P.; Heartland Industrial Associates, L.L.C. (together, "Heartland"), a private equity fund that was a shareholder of C&A during the Class Period; David A. Stockman ("Stockman") (former CEO and Chairman of C&A's Board of Directors), J. Michael Stepp ("Stepp") (former CFO), Bryce Koth ("Koth") (former Senior VP), Timothy D. Leuliette ("Leuliette") (former director), Daniel P. Tredwell ("Tredwell") (former director), W. Gerald McConnell ("McConnell") (former director), Samuel Valenti, III ("Valenti") (former director), John A. Galante ("Galante") (former Vice President and Treasurer at C&A), Gerald E. Jones ("Jones") (former COO and V.P. of C&A's Fabrics Division), David R. Cosgrove (former Senior Vice President and Controller at C&A), Elkin B. McCallum (a former director at C&A), Robert A. Krause ("Krause") (Senior VP, Finance and Administration of C&A), Paul C. Barnaba ("Barnaba") (Director of Financial analysis), Thomas V. Gougherty ("Gougherty") (Controller of C&A's Int'l Plastics Div.), and Christopher M. Williams ("Williams") (Exec. VP of C&S's Bus. Devel.) (collectively "Defendants").

- The Settlement provides for a recovery with a total value of $12,362,500 (the "Settlement Amount") to the Class comprised of the following payments: (i) a $4.5 million payment of cash by Heartland; (ii) $5.5 million of a note issued by Heartland and payable to the Class (the "Heartland Note"), as summarized below; (iii) a $2.2 million cash payment to be paid by Stockman; (iv) a $62,500 cash payment to be paid by Stepp; and (v) a $100,000 cash payment to be paid by McCallum. The cash Settlement Amount plus interest, plus the Heartland Note are referred to herein as the MainStay Settlement Fund. The MainStay Settlement Fund, plus any interest, less any award of attorneys' fees, reimbursement of litigation expenses and other Court-approved costs (the "Net Settlement Fund"), will be distributed solely to Class Members who timely submit acceptable Proofs of Claim (See Response to Question 9 below). Heartland, Stockman, Stepp, McCallum, Tredwell, McConnell and Valenti are referred to as the "Settling Defendants," except to the extent some of them exercise a right to terminate their participation in the Settlement under certain limited conditions as explained below in Question 13, in which case they are excluded from that definition, are referred to as the "Non-Settling Defendants," and their contribution will not be part of the Settlement Amount.

- Lead Plaintiff's expert estimates that the average recovery per $1,000 C&A Note purchased through MacKay Shields during the Class Period will be $82.24, prior to the deduction of court-approved fees and expenses.

- Interest at a rate of 3% per annum will also accrue on the outstanding principle balance of the Heartland Note (beginning thirty (30) days after preliminary approval of the Settlement). The Heartland Note will be payable 8 months from the Effective Date of the Settlement.

- The Heartland Note will be in the initial amount of $11 million, with $5.5 million of it being earmarked for the settlement of the MainStay Action. The remaining $5.5 million will be earmarked for the settlement of the Egleston Action, as defined below. The Heartland Note will be secured by a pledge by Heartland of the equity interests (the "Interest") in a holding company (the "Holding Company") wholly owned by Heartland that directly owns shares in companies in which Heartland invests.

- Heartland shall have the right to prepay, in part or in full, without penalty or additional charge, the Heartland Note (together with all accrued interest to the date of prepayment) at

any time or times.

- In case of a default on the Heartland Note, Heartland will pay the costs and expenses of the Lead Plaintiff and the lead plaintiff in the Egleston Action, as defined below, for enforcing the Heartland Note in the total amount of $250,000, and interest will accrue at a rate of 3% per annum on any unpaid amount due under the Heartland Note for the duration of the default. Heartland also agrees that the securities held by the Holding Company may be sold by Lead Plaintiff (and the lead plaintiff in the Egleston Action) in the event of a default on the Heartland Note, with the proceeds to be applied first to the unpaid amount of the Heartland Note (including interest) and any remainder will be delivered to Heartland. Heartland will also execute a confession of judgment in the amount of any unpaid balance due under the Heartland Note.

- In exchange for the payments set forth above, the Class shall release all Released Claims (defined below) against the Defendants and the Released Parties (defined below).

- The Defendants disagree with Lead Plaintiff on the amount of damages, if any, that could have been recovered if the Class prevailed on each claim at trial. Defendants produced an expert opinion stating that the Class suffered no recoverable damages. Lead Plaintiff's expert calculated the Class' maximum recoverable damages as $46 million. Lead Plaintiff recognized that the full amount of the maximum recoverable damages would have been very difficult to establish in light of, among other things, that it included security price drops occurring long after certain corrective disclosures. Accordingly, Lead Plaintiff recognized that the Class' likely recoverable damages were $30 million. Based on this damage calculation, the MainStay Settlement Amount of $12,362,500 is approximately 41% of the Class' likely recoverable damages, as calculated by Lead Plaintiff's expert.

- Lead Counsel intends to seek an award of attorneys' fees of up to 25% of the MainStay Settlement Fund net of Court-awarded litigation expenses, plus interest earned at the same rate earned by the Class on the cash portion of the MainStay Settlement Fund. Lead Counsel has been litigating this case and its related predecessor case for nearly five years without any payment whatsoever. In addition, at the final hearing, Lead Counsel will seek reimbursement of the litigation expenses they have incurred in connection with the prosecution of this MainStay Action, not to exceed $975,000, plus interest earned at the same rate earned by the Class on the cash portion of the MainStay Settlement Fund. Lead Plaintiff's expert estimates that if the requested attorneys' fees and expenses are awarded, the average cost per $1,000 C&A Note purchased through MacKay Shields during the Class Period will be $27.05.

- In reaching the Settlement, Lead Plaintiff and the Defendants have avoided the cost and time of a trial, and Lead Plaintiff has agreed to the Settlement to avoid the risk of dismissal of some or all of the claims of the Class against the Defendants. The Defendants do not believe that they violated the federal securities laws, deny all allegations of wrongdoing asserted against them, and deny that any of C&A's public statements were materially false or misleading. They have also asserted affirmative defenses to the claims alleged in this case. Accordingly, the Defendants assert that they are not liable to the Class for any amount of damages.

- If you are a member of the Class and the Settlement is approved, your legal rights will be affected whether you act or not. Read this notice carefully to see what your options are in connection with the Settlement described herein.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM (BY _____, 2010)** | This is the only way to receive a payment in the Settlement. A copy of the Proof of Claim form is enclosed. |
| **EXCLUDE YOURSELF (BY \_\_\_\_\_, 2010)** | You will not receive any payment in connection with this Settlement. This is the only option that allows you to be part of any other lawsuit against the Defendants and/or the Released Parties concerning the legal claims being released in the Settlement. |
| **OBJECT (BY _____, 2010)** | File with the Clerk of Court your written concerns or objections to the Settlement, the Plan of Allocation, or the requested attorneys' fees and reimbursement of litigation expenses. |
| **ATTEND A HEARING (ON _____, 2010)** | Ask to speak in Court about the fairness of the Settlement, the Plan of Allocation, or the requested attorneys' fees and reimbursement of litigation expenses. |
| **DO NOTHING** | If you are a member of the Class and you do not either submit a Proof of Claim form or request exclusion, you will be bound by the release of the Defendants and Released Parties, you will receive no payment, and you will not be able to bring or pursue any Settled Claims in any other lawsuit or arbitration against the Released Parties. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made to Class Members only if certain conditions set forth in the Stipulation and Agreement of Settlement (the "Stipulation") are satisfied, including the Court approving the Settlement and that approval being upheld in appeals that are filed, if any.

- Further information regarding the Settlement may be obtained by contacting Lead Counsel: Bernstein Litowitz Berger & Grossmann LLP, John C. Browne, 1285 Avenue of the Americas, New York, New York 10019, 1-800-380-8496.

| WHAT THIS NOTICE CONTAINS |
|---|

1.    Why did I receive this notice package? ...................................................................

2.    What is this lawsuit about? ...............................................................................

3.    What is a class action? .....................................................................................

4.    Why is there a Settlement? ...............................................................................

5.    How do I know if I am included in the Settlement? ...........................................

6.    What if I am still not sure whether I am included? ...........................................

7.    What does the Settlement Provide? ...................................................................

8.    Payment pursuant to the Settlement ..................................................................

9.    How can I receive a payment in the Settlement? ...............................................

10.    When will I receive my payment in the Settlement? .........................................

11.    What am I giving up to receive a payment in the Settlement? ............................

12.    What is the effect of the Bar Order? .................................................................

13.    How do I exclude myself from the Settlement? .................................................

14.    Do I have a lawyer in the case? .......................................................................

15.    How will the lawyers for the Class in the Settlement be paid? ...........................

16.    How do I notify the Court if I am opposed to any part of the Settlement, the Plan of Allocation or the request for attorneys' fees and reimbursement of expenses in the Settlement? .....

17.    When and where will the Court decide these matters? .......................................

18.    Am I required to appear at the final hearing and may I speak? ...........................

19.    What will happen if I am a Class Member and I do nothing at all? ........................................................................................

20.    How do I get more information? .......................................................................

## BASIC INFORMATION

| 1. | Why did I receive this notice package? |
|---|---|

MacKay Shields may have purchased C&A's 12.875% Notes and 10.75% Notes on your behalf, as duly authorized investment advisor, during the Class Period (as defined above). If this description applies to you, you may be part of the Class and may have a right to know about the proposed Settlement of the MainStay Action and about all of your options.

| 2. | What is this lawsuit about? |
|---|---|

The MainStay Action was filed on February 5, 2007, in the United States District Court for the Eastern District of Michigan.

On April 27, 2007, MainStay High Yield Corporate Bond Fund ("Lead Plaintiff") was appointed by the Court as the Lead Plaintiff on behalf of the Class in the MainStay Action and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") was appointed Lead Counsel for the Class.

Also on April 27, 2007, the Court ordered that discovery be coordinated between this MainStay Action and another action for securities fraud relating to the collapse of C&A – captioned *K.J. Egleston v. Heartland Industrial Partners, L.P. et al.*, 06-cv-13555-GER-RSW (the "Egleston Action") – against many of the same defendants, including Heartland.

On May 5, 2007, Lead Plaintiff filed an Amended Class Action Complaint And Demand For Jury Trial (the "Complaint") asserting on behalf of all persons who purchased C&A Notes through their investment advisors at MacKay Shields during the Class Periods claims for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") against certain of the Defendants, and for control person liability against certain Defendants pursuant to Section 20(a) of the Exchange Act.

The Complaint alleges that between August 2004 and May 2005, certain Defendants conducted face-to-face meetings with MacKay Shields for the purpose of inducing MacKay Shields to purchase C&A Notes on behalf of MainStay and the Class. In marketing the C&A Notes to MacKay Shields and in public statements made by certain Defendants during the Class Period, including filings made with the Securities Exchange Commission ("SEC"), certain Defendants allegedly made materially false and misleading statements. From August 2004 through May 2005, MacKay Shields allegedly relied on these alleged misstatements in purchasing C&A Notes.

The Complaint further alleges that C&A was engaged in a fraudulent scheme that included (1) fraudulent "round-trip" sham transactions that lacked any legitimate business purpose and were designed to artificially inflate C&A's reported revenue and other financial results; (2) improper recognition of supplier and other rebates designed to inflate C&A's reported EBITDA; and (3) improper treatment of discounts on capital equipment purchases in violation of Generally Accepted Accounting Principles ("GAAP"). The Complaint alleges that the truth about the fraud at C&A was revealed through partial disclosures beginning on March 17, 2005, when C&A announced that it would restate its financial results for the first three quarters of 2004 and potentially 2003 as a result of "accounting irregularities." The Complaint alleges that following the March 17, 2005 announcement, certain Defendants arranged another face-to-face meeting with MacKay Shields during which they lied about C&A's true financial and operational condition. MacKay Shields thereafter purchased additional C&A notes on behalf of the Class. On May 12, 2005, C&A announced that Defendant

Stockman, the Company's CEO and Chairman, was resigning and the restatement was to be larger than previously announced. On May 17, 2005, C&A announced that it had filed for Chapter 11 Bankruptcy protection on the previous day. The Complaint alleges that these disclosures caused the prices of C&A Notes to decline.

In late March 2007, a criminal indictment relating to the collapse of C&A was filed in the Southern District of New York, captioned *USA v. David Stockman, et. al*, 07-cr-00220-BSJ (S.D.N.Y) (the "Criminal Action"). The Criminal Action charged four executives of C&A, including Defendants Stockman, Stepp and Cosgrove, with violations of the securities laws for making fraudulent misrepresentations regarding C&A's financial condition. Four other former C&A executives pled guilty to criminal violations of securities and other laws. On or about January 9, 2009, however, the criminal charges against Stockman and others were dropped and the Criminal Action was withdrawn. Subsequently, the guilty pleas of certain defendants were also withdrawn by court order.

In late March 2007, the SEC charged nine former officers and directors of C&A with violations of Section 10(b) of the Exchange Act in a case filed in the Southern District of New York and captioned *Securities Exchange Commission v. Collins & Aikman Corp., et al.*, Case No. 1:07-cv-02419-SAS (S.D.N.Y.).

On July 18, 2007, C&A's Chapter 11 plan of reorganization (the "Plan") was confirmed by order of the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division (the "Bankruptcy Court").

On July 31, 2007, certain Defendants moved to dismiss the Action for failure to state a claim as a matter of law. During the pendency of motions to dismiss, an automatic stay of discovery under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") prevented MainStay and the Class from obtaining any discovery.

On March 19, 2008, the Court granted in part and denied in part the motions to dismiss the Complaint, and the PSLRA discovery stay was lifted. Shortly thereafter, in June 2008, certain Defendants moved to stay all discovery in the Action pending resolution of the Criminal Action pending in the Southern District of New York. That request was denied by the Court on July 9, 2008. A subsequent motion for a stay by the Government was eventually withdrawn.

The parties subsequently engaged in extensive discovery, including more than 10 million pages of document discovery and over 30 depositions.

Based upon Lead Plaintiff's independent investigation and the volume of documents, testimony and other information Lead Plaintiff obtained through discovery, Lead Plaintiff and Lead Counsel believe that the Settlement is an excellent result for the class. Not only will the Settlement result in a substantial payment to the Class, but it avoids many of the risks that would have confronted Lead Plaintiff had it proceeded to trial against the Defendants, including the risk that the Class may not have been able to establish liability or that any judgment could have been ultimately uncollectible. Based on their evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement is fair, reasonable and adequate and in the best interests of the Class.

Defendants, while affirmatively denying wrongdoing, fault and liability, consider it desirable and in their best interests that the MainStay Action be dismissed against them according to the terms of the Settlement in order to avoid further expense, uncertainty and distraction of protracted litigation.

Settlement was reached only after extensive Court-ordered mediation efforts taking place over a period of more than one year, and conducted under the auspices of Court-appointed special masters The Honorable Layn R. Phillips and the Honorable Thomas R. Brett. In the course of those settlement negotiations, Lead Plaintiff personally appeared at mediation sessions ordered by the Court, and conducted by the Court-appointed special masters, at the United States District Court in Detroit, Michigan on January 12, 2009; March 16, 2009; and January 5, 2010. At each of these sessions, the Court closely supervised the settlement discussions. Lead Plaintiff further held a full-day settlement conference on Saturday, December 12, 2009 with the special master. In the four full day mediation sessions and other negotiations between counsel and through the special master, the counsel for the parties advocated vigorously for their clients' positions and had the opportunity to hear candid assessments of their respective positions which allowed counsel and the parties to fully and completely assess the strengths and weaknesses of the Actions.

| 3. | What is a class action? |
|---|---|

In a class action, one or more people or entities called a lead plaintiff or a representative plaintiff, sue on behalf of other investors who have similar claims based upon their transactions in a given security. All of those people and/or entities are referred to collectively as a "Class," or individually as a "Class Member." One court resolves the issues for all Class Members, except for those persons or entities who exclude themselves from the Class (as explained below).

| 4. | Why is there a Settlement? |
|---|---|

The Court did not decide in favor of either the Lead Plaintiff (MainStay) or the Defendants in this action. Instead, Lead Plaintiff and the Settling Defendants agreed to settle before obtaining final rulings from the Court or a jury in this action. As explained above, Lead Plaintiff and Lead Counsel believe the Settlement is beneficial for all Class Members. The Settling Defendants consider it desirable and in their best interests that the MainStay Action be dismissed against them under the terms of the proposed Settlement in order to avoid the further expense, uncertainty and distraction of protracted litigation.

| 5. | How do I know if I am included in the Settlement? |
|---|---|

You are a Class Member only if you purchased or acquired C&A's 12.875% Notes or 10.75% Notes through MacKay Shields, as duly authorized investment advisor, during the Class Period.

Excluded from the Class are those who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in this Notice as described in Question 13 below.

| 6. | What if I am still not sure whether I am included? |
|---|---|

If you are still not sure whether you are included, you may ask for free help. You can call Lead Counsel at 1-800-380-8496 or you may fill out and return the enclosed Proof of Claim form described in Question 9, to see if you qualify.

| 7. | What does the Settlement Provide? |
|---|---|

Defendants negotiated the Settlement in conjunction with negotiating a settlement of the Egleston Action (which was coordinated for discovery purposes with the MainStay Action). As set forth

above, the settlement of the MainStay Action provides for a recovery to the Class with a total value of $12,362,500, comprised of the following payments: (i) a $4.5 million payment of cash by Heartland; (ii) $5.5 million of the value of the Heartland Note, as discussed above; (iii) a $2.2 million cash payment to be paid by Stockman; (iv) a $62,500 cash payment to be paid by Stepp; and (v) a $100,000 cash payment to be paid by McCallum. In the event certain of the Settling Defendants exercise a right to terminate their participation in the Settlement under certain limited conditions as explained below in Question 13, their contribution will not be part of the Settlement Amount.

The Settlement Funds discussed above will be paid in separate installments as follows:

(i)      within thirty (30) days after preliminary approval of the Settlement by the Court (which occurred on _____), Heartland shall make its cash payment, and Stockman shall make his cash payment, into an escrow account or accounts;

(ii)     within thirty (30) days after the Court's preliminary approval of the Settlement, Heartland shall issue the Heartland Note payable to the classes in this MainStay Action and in the Egleston Action, into the escrow account. The Note will be payable 8 months from the Effective Date of the Settlement. Interest at the rate of 3% per annum will accrue on the Heartland Note (beginning thirty (30) days after the Court's preliminary approval of the Settlement), and Heartland will pay all accrued interest at the time the Heartland Note is retired. The Heartland Note may be prepaid in whole or in part by Heartland at any time without penalty. Interest shall accrue only as to the unpaid portion of the Heartland Note;

(iii)    within thirty (30) days prior to the date set by the Court for the Settlement Fairness Hearing, Stepp shall make his cash payment, and McCallum shall make his cash payment, into an escrow account or accounts.

If the Settlement is approved by the Court, all members of the Class will be deemed to have released all Released Claims (as described below in the Response to Question 11) against the Released Parties (as described below in the Response to Question 11). This means that, upon Court approval, all Class Members will be permanently barred from asserting any of the Released Claims against any Released Party.

The net MainStay Settlement Fund (the MainStay Settlement Fund after payment of claims administration expenses, taxes, attorneys' fees and expenses and other expenses as allowed by the Court) will be allocated among all Class Members who submit valid Proof of Claim forms before the deadline for submission ("Authorized Claimants") pursuant to a "plan of allocation" as discussed in Question 8 below.

If you are receiving this notice from the claims administrator, you are likely a member of the Class in this MainStay Action. If you are also a member of the class in the Egleston Action – if, for instance, you also made other purchases of securities of C&A or purchased additional C&A Notes in addition to the C&A Notes that were purchased on your behalf by MacKay Shields – you should also receive a separate notice and proof of claim form relating to the settlement of the Egleston Action. You must also fill out and return that proof of claim form if you want to be eligible to collect a recovery from the Egleston Class. If you are a member of both this Class and the class in the Egleston Action, you are excluded from the Egleston Class only to the extent of your claims in this MainStay Action.

| 8. | Payment pursuant to the Settlement |
|---|---|

The objective of the Plan of Allocation is to equitably distribute the settlement proceeds to those Class Members who suffered economic losses as a result of the alleged wrongdoing. The proposed Plan of Allocation provides for distribution of the net Settlement Fund to Authorized Claimants on a *pro rata* basis based on information MacKay Shields provided for each claimant's transactions in C&A Notes during the Class Period. Those transactions are set forth in the enclosed Proof of Claim form. If you agree with the transactions listed on the Proof of Claim form, you need only sign the form and return it to be eligible to participate in the Settlement. Should you disagree with any of those transactions, or believe that qualifying transactions in C&A Notes have been omitted from the Proof of Claim form, you should follow the instructions set forth on the Proof of Claim form to correct or add transactions and provide supporting documentation from MacKay Shields for all corrections and additions.

The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the net Settlement Fund based on his or her "Recognized Loss." The calculation of the Recognized Loss will depend upon several factors, including when and at what price the C&A Notes were purchased or otherwise acquired, and whether, and if so, at what price, such C&A Notes were sold or redeemed. A Recognized Loss will be calculated for each purchase or acquisition of C&A Notes. That calculation is not intended to be an estimate of the amount of what a claimant may have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Loss calculation is the basis upon which the net Settlement Fund will be proportionately allocated to Authorized Claimants. This computation is only a method to weigh claimants' claims against one another. Each Authorized Claimant will receive a *pro rata* share of the net Settlement Fund based on his or her Recognized Loss.

The Recognized Loss for C&A Notes will be calculated as follows: For each Class Period purchase or acquisition of C&A Notes, the Recognized Loss is equal to the amount paid for those C&A Notes including any accrued interest, less, for those C&A Notes that were sold at any time, the amount received, including any accrued interest. The "Aggregate Recognized Loss" for each of the C&A Notes shall be equal to the total Recognized Loss for each purchase or acquisition included on the Proof of Claim form. For Proof of Claim forms with purchases or acquisitions both of C&A's 10.75% Notes and of C&A's 12.875% Notes, the "Total Recognized Loss" shall be equal to the sum of the Aggregate Recognized Losses for both C&A Notes such that gains from transactions in one of the C&A Notes shall offset losses from transactions in the other C&A Notes.

Each Authorized Claimant shall be allocated a *pro rata* share of the net Settlement Fund based on his or her Total Recognized Loss as compared to the sum of the Total Recognized Losses of all Authorized Claimants. Each Authorized Claimant shall be paid an amount determined by multiplying the net Settlement Fund by a fraction, the numerator of which shall be his or her Total Recognized Loss, and the denominator of which shall be the sum of the Total Recognized Losses of all Authorized Claimants. This computation weighs the amount of each Authorized Claimant's claim again the amount of every other Authorized Claimant's claim. Each Authorized Claimant will receive a *pro rata* share of the net Settlement Fund based on his or her Total Recognized Loss. The net Settlement Fund will be distributed only to Authorized Claimants who have a Total Recognized Loss (as calculated under this Plan) greater than $0. Distributions will be made to Authorized Claimants after all timely Proof of Claim forms have been processed and after the Court has finally approved the Settlement.

The Court may approve the Plan of Allocation with or without modifications agreed to among the settling parties, or another Plan of Allocation, without further notice to Class Members.

Payment pursuant to the Plan of Allocation approved by the Court shall be conclusive against all Authorized Claimants. No person shall have any claim against Lead Plaintiff, Lead Counsel or the Claims Administrator or other agent designated by Lead Counsel based on the distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court. Each claimant shall be deemed to have submitted to the jurisdiction of the United States District Court for the Eastern District of Michigan with respect to his or her Proof of Claim form. All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proof of Claim forms submitted in connection with the Settlement, or otherwise involved in the administration or taxation of the Settlement Fund or the net Settlement Fund shall be released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they are to receive payment from the net Settlement Fund, will be barred from making any further claim against the net Settlement Fund or such persons beyond the amount allocated to them as provided in any distribution orders entered by the Court.

| 9. | How can I receive a payment in the Settlement? |
|----|-----------------------------------------------|

To qualify for payment, you must sign and return the enclosed Proof of Claim form, which has already been completed based on information provided by MacKay Shields. Accordingly, it should include all purchases and sales of C&A Notes made for your account by MacKay Shields during the Class Period. If you agree with the transactions listed on the Proof of Claim form, you need only sign the form and return it by _____ to be eligible to participate in the Settlement. Should you disagree with any of those transactions, or believe that qualifying transactions have been omitted from the Proof of Claim form, you should follow the instructions on the Proof of Claim form to correct or add transactions and provide supporting documentation for the corrections and additions. The Proof of Claim form, including any corrections or additions and supporting documentation, must be signed and postmarked no later than _____.

| 10. | When will I receive my payment in the Settlement? |
|-----|---------------------------------------------------|

The Court will hold a hearing on _____, at _____ to decide whether to approve the Settlement. Even if the Court approves the Settlement, it could take more than a year before the net MainStay Settlement Fund is distributed to the Class Members because, among other things, the Heartland Note will not mature for eight months after final approval of the Settlement. If you are a Class Member and you timely submitted a valid Proof of Claim form and you are a MacKay Shields client at the time of distribution of the net MainStay Settlement Fund, your payment will be sent to your MacKay Shields account. The amount of your payment should appear on your next statement following the payment. If you are no longer a MacKay Shields client at the time of distribution of the net MainStay Settlement Fund, your payment will be sent to you.

| 11. | What am I giving up to receive my payment in the Settlement? |
|-----|-------------------------------------------------------------|

Unless you exclude yourself (see Question 13 below), you are agreeing to remain in the Class and that means that if the Settlement is approved you will release all "Released Claims" against the "Released Parties" (as defined below, in the Stipulation and in the Proof of Claim form). This means that you no longer have the right to pursue these claims in a court of law against the Defendants (other than any Non-Settling Defendants) or any of the Released Parties. If you remain a member of the Class all of the Court's orders will apply to you and legally bind you.

"Releasors" means MainStay and each of the other members of the Class and each of the members of the Egleston Class, each of whom is a "Releasor," on behalf of themselves, their respective heirs, executors, estates, administrators, predecessors, successors, assigns, and their respective past or present parents, subsidiaries, associates, affiliates, employers, agents, insurers, reinsurers, directors, officers, partners, principals, members, attorneys, financial and other advisors, investment bankers, underwriters, lenders, or other representatives of the foregoing, in their capacities as such.

"Released Claims" means any and all Claims and Unknown Claims by any Releasor against the Released Parties, which have been or could have been asserted relating to the subject matter of the MainStay Action or the Egleston Action by any Releasor. Excluded from the definition of "Released Claims" are any Claims arising from or relating to the enforcement of this Settlement. "Released Claims" also does not include claims pending in any other currently pending litigation of which the Settling Defendants have received actual notice prior to February 17, 2010.

"Released Parties" means Defendants (other than any Non-Settling Defendants), and each of their past or present subsidiaries, parents, general partners, limited partners, members, controlling persons, successors and predecessors, officers, directors, agents, employees, attorneys, advisors, investment advisors, auditors, accountants, insurers, and any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendants has or has had a controlling interest or which is related to or affiliated with any of the Defendants (including without limitation Heartland Industrial Group, L.L.C.), the legal representatives, heirs, successors in interest or assigns of the Defendants and the parents, spouses, siblings and children of each of the Defendants.

"Settled Defendants' Claims" means any and all Claims and Unknown Claims against Releasors belonging to the Settling Defendants arising from or relating to the institution, prosecution or settlement of the MainStay Action. Excluded from the definition of "Settled Defendants' Claims" are any Claims arising from or relating to the enforcement of this Settlement.

"Unknown Claims" means any and all Released Claims which the Lead Plaintiff or Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, and any Settled Defendants' Claims which any Defendant does not know or suspect to exist in his, her or its favor at the time of the release of the Releasors, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement.

Lead Plaintiff and the Defendants acknowledge, and the Class Members and Releasors shall be deemed by operation of law to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settled Defendants' Claims was separately bargained for and is a key and fundamental element of the Settlement of which this release is a part.

| 12. | What is the effect of the Bar Order? |
|-----|--------------------------------------|

Pursuant to the PSLRA, 15 U.S.C. § 78u-4(f)(7), if the Settlement is approved and a Judgment is entered, all future claims for contribution arising out of this MainStay Action or the Egleston Action (i) by any person against the Defendants; and (ii) by the Defendants against any person, other than a person whose liability has been extinguished by the Settlement, will be barred (the "Bar Order").

The practical effect of this Bar Order is that no person or entity may file or prosecute any lawsuit for contribution against any of the Settling Defendants that arises out of this MainStay Action or the Egleston Action.

If there is a partial termination of the Settlement, there will be a modified bar order including bars to the Non-Settling Defendants and other persons for contribution, indemnification or advancement or other claims seeking to recover liabilities of costs arising out of continued litigation.

| | |
|---|---|
| 13. | How do I exclude myself from the Settlement? |

To exclude yourself from the Settlement, you must send a letter by mail to the Claims Administrator saying that you want to be excluded from *MainStay High Yield Corporate Bond Fund v. Heartland Industrial Partners, L.P. et al.*, Case No. 02:07-cv-10542-GER-RSW. If you wish to exclude yourself from the Class, be sure to include your name, address, telephone number, and signature, and mail your exclusion request, which must be received no later than _____ to:

————————————————————
Exclusions
Claims Administrator

Requests for exclusion must also list the amount of all C&A Notes purchased, acquired, or sold during the Class Period through MacKay Shields, the prices paid or received, and the date of each transaction.

You cannot exclude yourself on the Internet, by telephone or by e-mail. **If you do not follow these procedures – including meeting the date for exclusion set out above – you will not be excluded from the Class, and you will be bound by all of the orders and judgments entered by the Court regarding the Settlement.**

If your desire is to pursue your own litigation against any of the Released Parties, you should consult with your counsel prior to excluding yourself.

If you ask to be excluded, you will not receive a Settlement payment, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit.

Heartland and certain Settling Defendants associated with Heartland, as well as Defendant Stockman, have the option to terminate their participation in the Settlement in the event that certain members of the Class, or members of the Class who would otherwise be entitled to participate in the Class and who purchased in the aggregate, more than a certain total face amount of C&A Notes through MacKay Shields during the Class Period, or members of the class in the Egleston Action in excess of a specified amount, timely and validly request exclusion in accordance with the requirements set forth in this Notice or the Notice in the Egleston Action. This could result in a partial or full termination of the Settlement. In the event of a partial termination, the Settlement would proceed as described above with the Settling Defendants, and the Class would receive payments only from those Settling Defendants.

| | |
|---|---|
| 14. | Do I have a lawyer in the case? |

The Court approved Lead Counsel to represent you and the other Class Members in this MainStay Action. If you need to reach an attorney at Lead Counsel to discuss any aspect of the Settlement,

please address your inquiries to the attorney named in the Response to Question 16 below.

If you want to be represented by your own lawyer, you may hire one at your own expense.

| 15. | How will the lawyers for the Class in the Settlement be paid? |
|-----|------------------------------------------------------------|

You will not be charged directly for the fees or expenses of the Lead Counsel appointed by the Court. Lead Counsel has litigated this MainStay Action for over three years on an entirely contingent basis, and has advanced the expenses of litigation with the expectation that if it was successful in recovering money for the Class, it would receive fees and be reimbursed for its expenses from the MainStay Settlement Fund, as is customary in this type of litigation. Among other tasks, Lead Counsel investigated the claims and drafted and filed a detailed complaint; opposed Defendants' motions to dismiss; conducted extensive discovery, including more than thirty (30) depositions, the review and exchange of millions of pages of documents, the exchange of expert reports, and extensive written discovery; and participated in extensive settlement negotiations, including four full-day in-person mediation sessions before the Court-appointed settlement masters. Lead Counsel submits that the recovery obtained for the Class is exceptional. As discussed above, Defendants produced an expert opinion stating that the Class suffered no recoverable damages; and the amount recovered for the Class of $12,362,500 is approximately 41% of the Class' likely recoverable damages, as calculated by Lead Plaintiff's expert.

Lead Counsel intends to apply for a fee out of the MainStay Settlement Fund of up to 25% of the MainStay Settlement Fund net of Court-awarded litigation expenses, plus interest at the same rate as earned by the Class. Lead Counsel will also seek reimbursement of the costs and expenses advanced in connection with the MainStay Action, not to exceed $975,000, plus interest earned at the same rate as the Class. Lead Counsel will not seek payment of attorneys' fees on any unpaid portion of the Heartland Note. The requested fee amount is the result of a retainer agreement Lead Counsel negotiated with the sophisticated investor, the Lead Plaintiff, and was reviewed and approved by the Board of the MainStay High Yield Corporate Bond Fund. Lead Counsel estimates that the requested fee will amount to significantly less than the amount of Lead Counsel's "lodestar" (*i.e.,* Lead Counsel's hourly rates multiplied by the hours) spent prosecuting and settling this MainStay Action.

| 16. | How do I notify the Court if I am opposed to any part of the Settlement, the Plan of Allocation or the request for attorneys' fees and reimbursement of expenses in the Settlement? |
|-----|------------------------------------------------------------|

If you are a Class Member you may object to any aspect of the Settlement if you do not like any part of it, including the Plan of Allocation or the request for attorneys' fees and reimbursement of expenses.

To object, you must send a letter stating that you are a Class Member (or documentation proving that you are authorized to speak on behalf of a Class Member), that you object to the Settlement in *MainStay High Yield Corporate Bond Fund v. Heartland Industrial Partners, L.P. et al.*, Case No. 02:07-cv-10542-GER-RSW, and the reasons why you object.

In your objection, you must include your name, address, telephone number, and your signature. You must provide documentary evidence of your membership in the Class, including information concerning your transactions in C&A Notes during the Class Period through MacKay Shields, including the dates, prices paid or received and amounts purchased, acquired or sold and held at

the end of the Class Period, so that the Court may determine whether you are part of the Class and have an economic interest in any aspect of the Settlement. Your objection must be filed with the Court and received by counsel listed below no later than _____ :

### LEAD COUNSEL FOR PLAINTIFFS

John C. Browne, Esq.
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019

### COUNSEL TO DEFENDANT HEARTLAND

Jonathan J. Lerner, Esq.
Skadden Arps Slate Meagher & Flom LLP
Four Times Square
New York, NY 10036

### COUNSEL TO DEFENDANT STOCKMAN

Andrew B. Weissman, Esq.
Wilmer, Cutler, Pickering, Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington D.C. 20006

---

**17.    When and where will the Court decide these matters?**

---

The Settlement Fairness Hearing will be held at _____ on _____, at the United States District Court for the Eastern District of Michigan, Theodore Levin Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan, 48226, in Courtroom 733. At this hearing the Court will consider whether (i) the Settlement is fair, reasonable and adequate; (ii) whether the claims against the Defendants should be dismissed with prejudice as set forth in the Stipulation; (iii) whether the Plan of Allocation is fair and reasonable; and (iv) whether the application by Lead Counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved. The Court may decide to adjourn the Settlement Fairness Hearing without further notice to the Class.

---

**18.    Am I required to appear at the final hearing and may I speak?**

---

You do not need to attend the hearing. However, if you have filed an objection to any aspect of the Settlement as provided above, you may ask the Court for permission to speak at the Settlement Fairness Hearing. To do so, you must state in your objection that you are giving notice that you intend to appear at the Settlement Fairness Hearing in *MainStay High Yield Corporate Bond Fund v. Heartland Industrial Partners, L.P. et al.*, Case No. 02:07-cv-10542-GER-RSW (the "Notice of Intention to Appear"). Be sure to include your name, address and telephone number, identify all relevant data concerning your C&A Notes, including the dates, prices paid or received and amounts purchased, acquired or sold through MacKay Shields, and held as of the end of the Class Period, and sign the letter. If you intend to have any witnesses testify or to introduce any evidence at the Settlement Fairness Hearing, you must list the witnesses and evidence in your objection. Your Notice of Intention to Appear must be filed with the Court and received by the

counsel listed above in the answer to Question 16, no later than _____, 2010. You cannot speak at the hearing if you exclude yourself.

## IF YOU DO NOTHING

| 19. | What will happen if I am a Class Member and I do nothing at all? |
|---|---|

If you do not exclude yourself from the Class, and you fail to timely file a Proof of Claim, you will receive no recovery from the Settlement. Unless you exclude yourself from the Class, you will not be able to start a lawsuit, continue to litigate a pending lawsuit, or be part of any other lawsuit against the Defendants or the Released Parties for the claims released by the Settlement, ever again. However, as explained in response to Question 13 above, requesting exclusion will not ensure that you will be able to pursue a Released Claim against any Defendant or Released Party.

## GETTING MORE INFORMATION

| 20. | How do I get more information? |
|---|---|

This Notice summarizes the proposed Settlement. More details are contained in the Stipulation. If you have questions regarding how to obtain copies of documents related to this Settlement, completing your Proof of Claim form, or correspondence you have received from the Claims Administrator, you may write to the Claims Administrator at the address listed above or call Lead Counsel toll free at 1-800-380-8496.

**PLEASE DO NOT CONTACT THE COURT**

**EXHIBIT 2**

**Must be Received**
**No Later Than**
**_____, 2010**

MainStay High Yield Corporate Bond Fund Litigation
c/o The Garden City Group, Inc.
**Claims Administrator**
**P.O. Box 9349**
**Dublin, OH 43017-4249**

MSB

## PROOF OF CLAIM

**PART I:** <u>CLAIMANT IDENTIFICATION:</u>
Claim Number:

| WRITE ANY NAME AND ADDRESS CORRECTIONS BELOW: |
|---|
| Full name: |
| |
| Address: |
| |
| City: |
| State/Country: |
| Zip Code: |

*IF THE ABOVE AREA IS <u>BLANK</u>, YOU MUST*
*ENTER YOUR FULL NAME AND ADDRESS HERE* ⟶
You must fill in the last four digits of your Social Security
Number/Taxpayer ID Number if box is blank:

| **Daytime Telephone Number:   (          )** |
|---|
| **Evening Telephone Number:   (          )** |

**PART II:** <u>GENERAL INSTRUCTIONS</u>

To qualify for payment, you must sign and return the enclosed Proof of Claim form, which has already been completed based on information provided by MacKay Shields. Accordingly, it should include all purchases and sales of C&A Notes made for your account by MacKay Shields during the Class Period. If you agree with the transactions listed on the Proof of Claim form, you need only sign the form and return it to be eligible to participate in the Settlement. Should you disagree with any of those transactions, or believe that qualifying transactions have been omitted from the Proof of Claim form, you should, on a separate piece of paper, correct or add transactions and provide supporting documentation from MacKay Shields for the corrections and additions. The Proof of Claim form must be signed and postmarked no later than _____.

**YOU MUST MAIL**, TO THE FOLLOWING ADDRESS, YOUR COMPLETED AND SIGNED PROOF OF CLAIM AND RELEASE, POSTMARKED ON OR BEFORE _____, 2010:

MainStay High Yield Corporate Bond Fund Litigation
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9349
Dublin, OH 43017-4249

**PART III:** <u>SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS</u>

I submit this Proof of Claim and Release under the terms of the Stipulations of Settlement described in the Notice. I also submit to the jurisdiction of the Court with respect to my claim as a Class Member and for purposes of enforcing the release set forth herein. I further acknowledge that I am bound by and subject to the terms of any judgment(s) that may be entered in the Action. I agree to furnish additional information to the Claims Administrator to support this claim if required to do so. Notwithstanding any claim I may have, or will, submit in connection with the action entitled *Epstein v. Heartland Industrial Partners, L.P.*, 06-cv-13555 (the "Egleston Action"), I have not submitted any other claim in this Litigation covering the same purchases or sales of C&A Notes during the Class Period and know of no other Person having done so on my behalf.

A. **PURCHASES:** Purchases of C&A's 12.875% Notes or 10.75% Notes through MacKay Shields between **August 11, 2004**, through and including **May 17, 2005**. (Must be documented if corrections are made or additional transactions are provided):

| Security | Trade Date (List Chronologically) (Month/Day/Year) | Face Amount of Bonds Purchased | Purchase Price Per $1000 Face Amount | Total Purchase Price (excluding commissions, taxes, and fees) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

B. **SALES:** Sales of C&A's 12.875% Notes or 10.75% Notes through MacKay Shields sold from between **August 11, 2004**, through and including **May 17, 2005**. (Must be documented if corrections are made or additional transactions are provided):

| Security | Trade Date (List Chronologically) (Month/Day/Year) | Face Amount of Bonds Sold | Sale Price Per $1000 Face Amount | Total Sale Price (excluding commissions, taxes, and fees) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

C. **UNSOLD HOLDINGS:** Please provide the principle amount of the C&A 12.875% Notes or 10.75% Notes that you held at the close of business on **May 17, 2005** (If none, write "zero" or "0") (If other than zero, Must be documented if corrections are made or additional transactions are provided).

## PART IV: RELEASE

I hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release and discharge from the Released Claims each and all of the Released Parties.

I (We) agree to be bound by all prior court rulings in the Action, and agree to be bound by all actions taken by the Lead Plaintiff and Lead Plaintiff's Counsel, including the voluntary dismissal of the claims alleged in the Action.

I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION I (WE) PROVIDED ON THIS PROOF OF CLAIM AND RELEASE FORM IS TRUE, CORRECT AND COMPLETE.

Signature of Claimant (If this claim is being made on behalf of Joint Claimants, then each must sign)

_____    _____    _____
(Signature)                  (Signature)                  (Title/Capacity of person(s) signing, e.g. beneficial purchaser(s), president, executor, administrator, trustee, etc.)

Date: _____

**EXHIBIT B**

**Exhibit B**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| K.J. EGLESTON, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 2:06-cv-13555-GER-RSW |
| HEARTLAND INDUSTRIAL PARTNERS, L.P., a Delaware limited liability partnership, HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., a Delaware limited company, DAVID A. STOCKMAN, J. MICHAEL STEPP, and BRYCE M. KOTH, | Honorable Gerald E. Rosen |
| Defendants. | |

## PRELIMINARY ORDER FOR NOTICE AND HEARING IN CONNECTION WITH SETTLEMENT PROCEEDINGS

WHEREAS, on February 17, 2010, the Settling Parties[1] in the above-entitled action (the "Action") entered into a Stipulation and Agreement of Settlement (the "Stipulation") which is subject to review by this Court under Rule 23 of the Federal Rules of Civil Procedure and which, together with the exhibits thereto, sets forth the terms and conditions for the proposed settlement of the claims alleged in the Egleston Complaint against the Defendants on the merits and with prejudice; and the Court having read and considered the Stipulation and the accompanying documents; and the parties to the Stipulation having consented to the entry of this Order;

NOW, THEREFORE, IT IS HEREBY ORDERED:

---

[1]    Unless otherwise defined herein, all capitalized terms used herein have the meanings defined in the Stipulation.

1.      The Court hereby preliminarily approves the Stipulation and the Settlement set forth therein, subject to further consideration at the Settlement Fairness Hearing described below.

2.      Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Egleston Action is hereby preliminarily certified as a class action on behalf of all individuals and entities who purchased or otherwise acquired the securities of C&A and who suffered damages, including without limitation the common stock of C&A and the C&A Notes, during the period between August 6, 2002 and May 17, 2005, inclusive.  Excluded from the Egleston Class are the Defendants, past or present directors and officers of C&A, members of their immediate families, parents, subsidiaries and affiliates of C&A, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or has had a controlling interest, any Released Parties, and, to the extent of their claims in the MainStay Action, MainStay Class Members.  Also excluded from the Egleston Class are any putative Egleston Class Members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

3.      For purposes of this Order only, the Court preliminarily finds that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (i) the number of Egleston Class Members are so numerous that joinder of all members thereof is impracticable; (ii) there are questions of law and fact common to the Egleston Class; (iii) the claims of the named representatives are typical of the claims of the Egleston Class they seek to represent; (iv) Epstein will fairly and adequately represent the interests of the Egleston Class; (v) the questions of law and fact common to the members of the Egleston Class predominate over any questions affecting only individual

members of the Egleston Class; and (vi) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

    4.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, Epstein is preliminarily certified as Class Representative in the Egleston Action.  For purposes of this Settlement only, the Court further preliminarily certifies Epstein's Lead Counsel as Class Counsel.

    5.    A hearing (the "Settlement Fairness Hearing") pursuant to Rule 23(e) of the Federal Rules of Civil Procedure is hereby scheduled to be held before the Court on _____, 2010, at ___:_____ ___.m. for the following purposes:

    (a)    to finally determine whether the Egleston Action satisfies the applicable prerequisites for class action treatment under Rules 23(a) and (b) of the Federal Rules of Civil Procedure;

    (b)    to determine whether the proposed Settlement is fair, reasonable, and adequate, and should be approved by the Court;

    (c)    to determine whether the Order and Final Judgment as provided under the Stipulation should be entered, dismissing the Egleston Complaint filed herein, on the merits and with prejudice as against the Defendants; to determine whether the release by the Releasors of the Released Claims, as set forth in the Stipulation, should be provided to the Released Parties; and to determine whether the release by the Settling Defendants of the Settled Defendants Claims, as set forth in the Stipulation, should be provided to Epstein, Epstein's Counsel, and the Egleston Class;

3

(d)    to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable, and should be approved by the Court;

(e)    to consider Epstein's Counsel's application for an award of attorneys' fees and expenses; and

(f)    to rule upon such other matters as the Court may deem appropriate.

6.    The Settlement Fairness Hearing may be adjourned by the Court without notice to the Egleston Class other than by an announcement of the adjournment at the scheduled time of the Settlement Fairness Hearing or at the scheduled time of any adjournment of the Settlement Fairness Hearing.  The Court may consider modifications of the Settlement (with the consent of Lead Plaintiffs and the Settling Defendants) without further notice to the Egleston Class.

7.    The Court reserves the right to approve the Settlement with or without modification and with or without further notice of any kind.  The Court further reserves the right to enter the Order and Final Judgment approving the Stipulation and dismissing the Egleston Action on the merits and with prejudice regardless of whether it has approved the Plan of Allocation or awarded attorneys' fees and expenses.

8.    The Court approves the form, substance and requirements of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing and the Proof of Claim form, annexed hereto as Exhibits 1 and 2 respectively.

9.    The Court approves Epstein's Lead Counsel's selection of, and hereby appoints, The Garden City Group to act as the Claims Administrator.  The Claims Administrator, under the supervision of Epstein's Lead Counsel, shall cause the Egleston Notice and the Proof of Claim,

4

substantially in the forms annexed hereto, to be mailed, by first class mail, postage prepaid, on or before ten business days following entry of this Order, to all Egleston Class Members who can be identified with reasonable effort. The Claims Administrator shall use reasonable efforts to give notice to nominee owners such as brokerage firms and other persons or entities who purchased C&A common stock as record owners but not as beneficial owners. Such nominee purchasers are directed, within seven (7) days of their receipt of the Egleston Notice, (a) to provide the Claims Administrator with lists of the names and addresses of the beneficial owners, and the Claims Administrator is ordered to send the Egleston Notices and Proofs of Claim promptly to such identified beneficial owners; or (b) to request additional copies of the Egleston Notices and Proofs of Claim from the Claims Administrator and within seven (7) days of receipt of the copies of the Egleston Notices and Proofs of Claim forms from the Claims Administrator to mail the Notices and Proof of Claim to the beneficial owners. Nominee purchasers who elect to send the Egleston Notice and Proof of Claim to their beneficial owners shall send a statement to the Claims Administrator confirming that the mailing was made as directed. Additional copies of the Egleston Notice shall be made available to any record holder requesting such for the purpose of distribution to beneficial owners, and such record holders shall be reimbursed from the Settlement Fund, upon receipt by the Claims Administrator of proper documentation, for the reasonable expense of sending the Egleston Notice and Proof of Claim to beneficial owners. Epstein's Lead Counsel shall, at or before the Settlement Fairness Hearing, file with the Court proof of mailing of the Egleston Notice and Proof of Claim.

10.     The Court approves the form of Egleston Publication Notice of the pendency of the Egleston Action and the proposed settlement in substantially the form and content annexed hereto as Exhibit 3 and directs that Epstein's Lead Counsel shall cause the Egleston Publication

Notice to be published in the national edition of *The Wall Street Journal* within ten days of the mailing of the Notice. Epstein's Lead Counsel shall, at or before the Settlement Fairness Hearing, file with the Court proof of publication of the Egleston Publication Notice.

11.    The form and content of the Egleston Notice, and the method set forth herein of notifying the Egleston Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7) as amended by the Private Securities Litigation Reform Act of 1995, and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.

12.    In order to be entitled to participate in the Settlement Fund in the event the Settlement is effected in accordance with the terms and conditions set forth in the Stipulation, each Egleston Class Member shall take the following actions and be subject to the following conditions:

(a)    A properly executed Proof of Claim substantially in the form attached hereto as Exhibit 2 (the "Proof of Claim"), must be submitted to the Claims Administrator, at the Post Office Box indicated in the Egleston Notice, postmarked not later than ninety (90) days after the Notice Date. Such deadline may be further extended by Court Order. Each Proof of Claim shall be deemed to have been submitted when postmarked (if properly addressed and mailed by first class mail, postage prepaid) provided such Proof of Claim is actually received prior to the motion for an order of the Court approving distribution of the Settlement Fund. Any

Proof of Claim submitted in any other manner shall be deemed to have been submitted when it was actually received at the address designated in the Notice.

      (b)    The Proof of Claim submitted by each Egleston Class Member must satisfy the following conditions:  (i) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (ii) it must be accompanied by adequate supporting documentation for the transactions reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by the Claims Administrator; (iii) if the person executing the Proof of Claim is acting in a representative capacity, a certification of his current authority to act on behalf of the Egleston Class Member must be included in the Proof of Claim; and (iv) the Proof of Claim must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

      (c)    As part of the Proof of Claim, each Egleston Class Member shall submit to the sole and exclusive jurisdiction of the Court with respect to the claim submitted, and shall (subject to effectuation of the Settlement) release all Released Claims as provided in the Stipulation.

13.    Any member of the Egleston Class who does not submit a Proof of Claim form in the manner stated in this Order shall be deemed to have waived his, her or its right to share in the Settlement Fund, and shall forever be barred from sharing in the Settlement Fund.  Any such member of the Egleston Class, however, in all other respects shall be subject to and bound by all of the terms of the Settlement, including the terms of the Stipulation, the Order and Final

7

Judgment and the releases provided for by the Stipulation and the Order and Final Judgment unless such member of the Egleston Class has submitted a request to be excluded from the Egleston Class in the manner required by this Order.

14.    Egleston Class Members shall be bound by all determinations and judgments in the Egleston Action, whether favorable or unfavorable, unless such persons request exclusion from the Egleston Class in a timely and proper manner, as hereinafter provided.  An Egleston Class Member wishing to make such exclusion request shall mail the request in written form by first class mail which must be received no later than twenty (20) calendar days prior to the Settlement Fairness Hearing to the address designated in the Egleston Notice.  Such request for exclusion shall clearly indicate the name, address and telephone number of the person seeking exclusion, that the sender requests to be excluded from the Egleston Class in the Egleston / Collins & Aikman Securities Litigation, and must be signed by such person.  Such persons requesting exclusion are also directed to state:  the date(s), price(s), and number(s) of shares or notes of all purchases and sales of C&A securities purchased or otherwise acquired during the period between August 6, 2002 through and including May 17, 2005, and the number of shares of C&A securities still held as of the close of trading on May 17, 2005.  The request for exclusion shall not be effective unless it provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court.  Upon receiving any request(s) for exclusion pursuant to the Notice, the Claims Administrator shall promptly notify Epstein's Lead Counsel and Defendants' Counsel of such request(s) for exclusion.

15.    Egleston Class Members requesting exclusion from the Egleston Class (and who do not retract such request) shall not be entitled to receive any payment out of the Settlement Fund as described in the Stipulation and Notice.

8

16.    Any Egleston Class Member may be heard and/or appear at the Settlement Fairness Hearing to show cause why the proposed Settlement should not be approved as fair, reasonable and adequate and why the Order and Final Judgment should not be entered thereon; why the proposed plan of allocation should not be approved as fair, reasonable and adequate; or why Epstein's Counsel should not be awarded attorneys' fees and payments of expenses in the amounts sought by Epstein's Counsel; provided, however, that no Egleston Class Member shall be heard or be entitled to contest the approval of the terms and conditions of the proposed Settlement, the Order and Final Judgment to be entered, the proposed plan of allocation or Epstein's Counsel's application for an award of attorneys' fees and payment of expenses, unless the Egleston Class Member has served by hand or by first-class mail written objections and copies of any supporting papers and briefs (which must contain proof of ownership of C&A common stock or C&A Notes) upon the following persons such that they are received on or before 20 days prior to the Settlement Fairness Hearing: Thomas H. Burt, Esq., Wolf Haldenstein Adler Freeman & Herz LLP, 270 Madison Avenue, New York, NY 10016, on behalf of Epstein and the Egleston Class; and Jonathan J. Lerner, Esq., Skadden Arps Slate Meagher & Flom LLP, Four Times Square, New York, NY 10036, and Andrew B. Weissman, Esq., Wilmer, Cutler, Pickering, Hale and Dorr LLP, 1875 Pennsylvania Avenue, N.W., Washington, D.C. 20006 on behalf of the Settling Defendants, and, also on or before that date, has filed the objections, papers and briefs showing due proof of service upon all counsel identified above with the Clerk of the Court, United States District Court for the Eastern District of Michigan, United States Courthouse, 231 West Lafayette Blvd., Detroit, MI 48226.  Attendance at the hearing is not necessary; however, persons wishing to be heard orally in opposition to the approval of the Settlement, the Plan of Allocation, and/or the request for attorneys' fees are required to indicate

9

in their written objection their intention to appear at the hearing. Persons who intend to object to the Settlement, the Plan of Allocation, and/or counsel's application for an award of attorneys' fees and expenses and desire to present evidence at the Settlement Fairness Hearing must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Settlement Fairness Hearing. Egleston Class Members do not need to appear at the hearing or take any other action to indicate their approval.

17.    Any Egleston Class Member who does not object to the Settlement and/or the Plan of Allocation and/or the adequacy of representation and/or Epstein's Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses in the manner prescribed in the Egleston Notice shall be deemed forever to have waived such objection and shall forever be barred from making any objection to the fairness, adequacy or reasonableness of the proposed Settlement, the Order and Final Judgment to be entered approving the Settlement, the Plan of Allocation, the adequacy of representation or the application by Epstein's Counsel for an award of attorneys' fees and reimbursement of expenses or from otherwise being heard concerning these subjects in this or any other proceeding. Pending final determination of whether the Settlement should be approved, Epstein, all Egleston Class Members, and each of them, and anyone who acts or purports to act on their behalf, shall not institute, commence or prosecute any action which asserts Released Claims against any Released Party. Pending the Settlement Fairness Hearing, the Court stays all proceedings in the Egleston Action as against the Settling Defendants, other than those proceedings necessary to carry out or enforce the terms and conditions of the Stipulation.

18.    This Order, the Settlement, and any of their terms, and all negotiations, discussions and proceedings in connection with this Order and the Settlement, shall not

constitute evidence, or an admission by any of the Settling Defendants or the other Released

Parties, that any acts of wrongdoing have or have not been committed and shall not be deemed to

create any inference that there is or is not any liability on the part of any of the Settling

Defendants or any other Released Parties.  This Order, the Settlement, and any of their terms,

and all negotiations, discussions and proceedings in connection with this Order and the

Settlement, shall not be offered or received in evidence or used for any other purpose in this or

any other proceeding in any court, administrative agency, arbitration tribunal, or other forum of

any kind or character in the United States or any other country except as necessary to enforce the

terms of this Order and/or the Settlement.

19.     As provided in the Stipulation, Epstein's Lead Counsel may pay the Claims

Administrator the reasonable fees and costs associated with giving notice to the Egleston Class

and the review of claims and administration of the Settlement out of the Settlement Fund without

further order of the Court.

20.     Epstein's Lead Counsel shall submit its papers in support of final approval of the

Settlement, the Plan of Allocation and request for attorneys' fees and expenses no later than

thirty (30) calendar days before the Settlement Fairness Hearing.

21.     If:  (a) the Settlement is terminated pursuant to ¶ 48(f)  of the Stipulation; or (b)

any specified condition to the Settlement set forth in the Stipulation is not satisfied and the

Settlement terminates as provided in ¶ 21 of the Stipulation, then, in any such event, the

Stipulation, including any amendment(s) thereof, and this Preliminary Order certifying the

Egleston Class, the Class Representatives and Class Counsel for purposes of the Settlement shall

be null and void, of no further force or effect, and without prejudice to any party, and may not be

introduced as evidence or referred to in any actions or proceedings by any person or entity, and each party shall be restored to his, her or its respective position as it existed as of November 15, 2009.

22.    If an Opt-Out Party terminates its participation in the Settlement pursuant to ¶ 47 of the Stipulation, then, as to such Opt-Out Party only, the Stipulation, including any amendment(s) thereof, and this Preliminary Order certifying the Egleston Class, the Class Representatives and Class Counsel for purposes of the Settlement shall be null and void, of no further force or effect, and without prejudice to the Opt-Out Party, and may not be introduced as evidence or referred to in any actions or proceedings by any person or entity against the Opt-Out Party, and the Opt-Out Party shall be restored to its respective position as it existed as of November 15, 2009.

23.    The Court retains exclusive jurisdiction over the Egleston Action to consider all further matters arising out of or connected with the Settlement.

Dated:        Detroit, Michigan
              February __, 2010


_____
Judge Gerald E. Rosen
UNITED STATES DISTRICT JUDGE

12

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

K.J. EGLESTON, individually and on behalf of all others
similarly situated

        Plaintiff,                           Case No. 2:06-13555

v.

HEARTLAND INDUSTRIAL PARTNERS, L.P.,
a Delaware limited liability partnership,

HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C.,
a Delaware limited company, DAVID A. STOCKMAN,
J. MICHAEL STEPP, and BRYCE M. KOTH,

        Defendants.

## NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION, MOTION FOR ATTORNEYS' FEES AND SETTLEMENT HEARING (THE "NOTICE")

This Notice provides you with important information concerning the settlement (the "Settlement") of the above-captioned action (the "Action" or the "Egleston Action"). The Action, originally brought by Plaintiff K. J. Egleston, is against defendants Heartland Industrial Partners, L.P., Heartland Industrial Associates, L.L.C. (the foregoing two entities are occasionally referenced collectively herein as "Heartland"), David A. Stockman, J. Michael Stepp, and Bryce M. Koth. The Action relates to the common stock and notes of Collins & Aikman Corporation ("C&A" or the "Company") during the period described below. Your rights may be affected by this Notice. If you wish to participate in the Settlement you must act by _____, 2010. You should read this Notice carefully.

> TO:    **The proposed class ("the Class"), consisting of all individuals and entities who purchased or otherwise acquired the securities of C&A during the period between August 6, 2002 and May 17, 2005, inclusive, and who suffered damages.**

> *A federal court authorized this notice. This is not a solicitation from a lawyer.*

- The Settlement resolves the Action on behalf of the Class concerning misrepresentations and omissions allegedly made by C&A throughout the Class Period regarding C&A's viability and financial prospects. Excluded from the Class are C&A, Defendants, past or present directors and officers of C&A, members of their immediate families, parents, subsidiaries and affiliates of C&A, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or has had a controlling interest, any Released Parties, and, to the extent of their claims in another action called the MainStay Action, MainStay Class Members. Also excluded from the Class are any putative Class Members who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

- The Settlement provides for a recovery of $12,262,500 in this action (the "Settlement Amount"). The first $6,762,500 of this shall be paid in cash (the "Cash Consideration") into an escrow account. Of the Cash Consideration, $6,700,000 will be paid into the escrow account within thirty days of the Court's preliminary approval of the Settlement Agreement and the remaining $62,500 will be paid into the escrow account thirty days prior to the date set by the Court for the final approval hearing. The remaining $5,500,000 shall be contributed by Heartland, within thirty days of the Court's approval of the Settlement Agreement in the form of a note payable to the Classes, care of the escrow account (the "Note"). The Note will be payable eight months from the effective date of the settlement (which shall be the first date after the date on which approval of the Settlement is made final, whether on appeal or review, expiration of the time for reargument appeal or review, or otherwise). The Class will also receive interest on the Settlement Amount. The $12,262,500 Settlement Amount in this, the Egleston Action, plus interest, is referred to herein as the Gross Settlement Fund. The Gross Settlement Fund, less any award of attorneys' fees, reimbursement of litigation expenses and other Court-approved costs (the "Net Settlement Fund"), will be distributed solely to Class Members who timely submit acceptable Proofs of Claim (see Response to Question ___ below). Heartland, Stockman and Stepp are referred to as the "Settling Defendants," except to the extent some of them exercise a right to terminate their participation in the Settlement under certain limited conditions as explained below in Question 13, in which case they are excluded from that definition, are referred to as the "Non-Settling Defendants," and their contribution will not be part of the Settlement Amount.

- In exchange for the payments set forth above, the Class shall release all Released Claims (described below) against the Settling Defendants.

- The Settling Defendants disagree with the Class Representatives on the amount of damages, if any, that could have been recovered if the Class prevailed on each claim at trial. The Class Representative estimates that if all Class Members make a claim against the Gross Settlement Fund, the average recovery, prior to deduction for court approved fees and expenses, will be $0.46 per share of C&A common stock, based upon an estimate of 49 million shares traded during the Class Period, $6.50 per 10.75% Note and $ 1.95 per 12.875% Note (See Question 9 below). **Please note that these amounts are only estimates.**

- Another action, arising from the same facts, against the same Defendants and certain additional defendants, brought on behalf of persons and entities who purchased C&A 10.75% Notes and 12.875% Notes through their duly authorized investment advisor, MacKay Shields LLC, *MainStay High Yield Corporate Bond Fund v. Heartland Industrial Partners, L.P., et al.*, (the "MainStay Action") is being settled, on the same schedule. The total amount for which both actions are being settled is thus $24,625,000, to be paid $13,400,000 in cash within 30 days of preliminary approval, $225,000 in cash 30 days prior to the date set by the Court for final approval, and $11 million in note form payable eight months from the effective dates of the settlements. The consummation of the Settlement in this, the Egleston Action, is contingent upon the Court's approval of the settlement in the MainStay Action.

- Lead Counsel intends to seek an award of attorneys' fees of up to 33 1/3% of the Settlement Fund, plus interest earned at the same rate earned by the Class. Plaintiffs' Counsel have been litigating this case without any payment whatsoever. In addition, at the final hearing, Lead Counsel will seek reimbursement of the litigation expenses Plaintiffs' Counsel have incurred in connection with the prosecution of this Action, which will not exceed $950,000. If the Court approves Lead Counsel's fee and expense application, the average reduction to the recovery per share of C&A common stock will be approximately $0.18 , per 10.75% Note will be $2.51, and per 12.875% Note will be $.75.

- Lead Plaintiffs also intend to move the Court to award a payment of not more than $15,000 to the Class Representative, and potentially, two other individuals, the late K.J. Egleston and Scott Egleston, who served as Lead Plaintiff, for their reasonable costs and expenses (including lost wages) directly relating to the representation of the Class.

- In reaching the Settlement, the Settling Defendants have avoided the cost and time of a trial and Class Representative has agreed to the Settlement to avoid the risk of the dismissal of some or all of the claims of the Class against the Settling Defendants. The Settling Defendants do not believe that they violated the federal securities laws, deny all allegations of wrongdoing asserted against them, and deny that any of C&A's public statements were materially false or misleading. They have also asserted affirmative defenses to the claims alleged in this case. Accordingly, the Settling Defendants assert that they are not liable to the Class for any amount of damages.

| YOUR LEGAL RIGHTS AND OPTIONS: | |
|---|---|
| **SUBMIT A CLAIM FORM** (_____, 2010) | This is the only way to receive a payment in the Settlement. A copy of the Proof of Claim form is enclosed, and is also available at www.gardencitygroup.com. See Question 7 below. |
| **EXCLUDE YOURSELF** (_____, 2010) | You will not receive any payment in connection with this Settlement. This is the only option that allows you ever to be part of any other lawsuit against the Settling Defendants and/or the Released Parties concerning the legal claims being released in the Settlement. *See* Response to Question 12, below. |
| **OBJECT** (_____, 2010) | File with the Clerk of Court your written concerns or objections to the Settlement, the Plan of Allocation, or the requested attorneys' fees and reimbursement of litigation expenses. *See* Response to Question 15 below. |
| **ATTEND A HEARING** (_____, 2010) | Ask to speak in Court about the fairness of the Settlement, the Plan of Allocation or the requested attorneys' fees and reimbursement of expenses. *See* Response to Question 15 below. |
| **DO NOTHING** | If you are a Class Member and you do not either submit a Proof of Claim form or request exclusion, you will be bound by the release of the Settling Defendants and Released Parties, you will receive no payment, and you will not be able to bring or pursue any Released Claims in any other lawsuit or arbitration against the Released Parties. |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice. Please note the date of the Fairness Hearing – currently scheduled for _____, 2010 – is subject to change without further notice. If you plan to attend the hearing, you should check the website, www.gardencitygroup.com, or with Lead Counsel as set forth herein to be sure that no change to the date and time of the hearing has been made.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made to Class Members only if certain conditions set forth in the Stipulation are satisfied, including the Court approving the Settlement and that approval being upheld in appeals that are filed, if any.

- Further information regarding the Settlement may be obtained by contacting Lead Counsel: Wolf Haldenstein Adler Freeman & Herz LLP.

---

**WHAT THIS NOTICE CONTAINS**

1. Why did I receive this notice package?................................................................................................
2. What is this lawsuit about?.................................................................................................................
3. Why is this Action a class action?.......................................................................................................
4. Why is there a Settlement?.................................................................................................................
5. How do I know if I am included in the Settlement?...............................................................................
6. What if I am still not sure whether I am included as a Class Member?..................................................
7. What does the Settlement provide?.....................................................................................................
8. Payment pursuant to the Settlement....................................................................................................
9. How can I receive a payment in the Settlement?..................................................................................
10. When will I receive my payment in the Settlement?............................................................................
11. What am I giving up to receive a payment in the Settlement?.............................................................
12. How do I exclude myself from the Settlement?...................................................................................
13. Do I have a lawyer in the Action?......................................................................................................
14. How will the lawyers for the Class in the Settlement be paid?...........................................................
15. How do I notify the Court if I am opposed to any part of the Settlement, the Plan of Allocation, the request for attorneys' fees and reimbursement of expenses or the Class Representatives' application for reimbursement of time and expenses in the Settlement?...........................................................................................................
16. When and where will the Court decide these matters?......................................................................
17. Am I required to appear at the final hearing and may I speak?..........................................................
18. What will happen if I am a Class Member in the Action and I do nothing at all?..................................

**BASIC INFORMATION**

---

**1. Why did I receive this notice package?**

---

You or someone in your family may have purchased or otherwise acquired the securities of C&A during the period between August 6, 2002 and May 17, 2005, inclusive and who suffered damages. If the description above applies to you, you may be part of the Class and may have a right to know about the proposed Settlement of the Action and about all of your options.

---

**2. What is this lawsuit about?**

---

On April 13, 2005, the original complaint in the Action was filed in the Southern District of New York as a putative securities class action. On January 15, 2006, a Consolidated Class Action Complaint was filed in the Action. On July 10, 2006, Plaintiff K.J. Egleston was appointed Lead Plaintiff for the proposed class and Wolf Haldenstein Adler Freeman & Herz, LLP was appointed as Lead Counsel for the proposed class. On that date, the action brought by Mr. Egleston was also consolidated with a number of other actions pending in that district and became the lead case of those actions.

On May 17, 2005, C&A filed for bankruptcy protection. C&A subsequently liquidated and no longer exists as an operating business. C&A has no assets from which it could contribute to any settlement in this Action. Further, all of the applicable insurance that C&A carried has been exhausted. No insurance policy exists that could provide a contribution to a settlement in this Action.

On May 4, 2007, a Second Amended Consolidated Class Action Complaint (the "Complaint") was filed in the Action, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. This, the active complaint, alleges, among other things, that certain of the Defendants engaged in a fraudulent scheme to artificially inflate the price of C&A securities and to deceive Class Members by making misrepresentations and nondisclosures of material fact concerning C&A's prospects.

The Second Amended Complaint alleges that Defendants Stockman, Stepp and Koth engaged in a scheme to conceal and falsely report the true financial condition of C&A throughout the Class Period, including among other things through (i) sham transactions between C&A and a related party; (ii) false reporting of vendor rebate transactions; and (iii) improperly borrowing from one of C&A's lenders, G.E. Capital Corp., against receivables that it was not eligible to borrow against. Heartland is alleged to be liable as a "control person" under the federal securities laws.

On July 31, 2007, Defendants filed motions to dismiss the Complaint in this Action. After oral argument on March 18, 2008, the Court issued a Memorandum of Decision and Order dated March 19, 2008 (the "Order"), denying in whole or in part the motions to dismiss, and finding that plaintiffs' claims under §§10(b), 20(a) and Rule 10b-5 of the Exchange Act were adequately pled.

Once the Court denied the motions to dismiss the Amended Complaint, the Class Representative and Defendants embarked on merits discovery. Plaintiffs' merits discovery has been extensive, including, but not limited to: (i) review of millions of pages of documents produced by Defendants and third-parties and (ii) conduct of more than 25 depositions (some of which extended for two days) of C&A-affiliated personnel, relevant third-parties, and expert witnesses.

On March 23, 2007, both the Securities and Exchange Commission ("SEC") and the United States Attorney's Office for the Southern District of New York announced actions against several persons in connection with the demise of C&A. Four individuals entered pleas of guilty to felonies, while four other individuals, including defendants Stockman and Stepp, were indicted. The SEC filed civil charges against defendants Stockman and Stepp, among other persons.

The criminal charges were dropped against all defendants on January 9, 2009, and those individuals who had entered pleas of guilty were subsequently allowed to withdraw the pleas. Some defendants maintain that the dismissal of the criminal charges demonstrates that they did not commit any fraud. The SEC action remains pending. Fees for the attorneys for the several defendants and witnesses in the SEC action, the criminal proceedings and other matters entirely exhausted all available insurance proceeds.

On January 21, 2009, Scott Egleston replaced K.J. Egleston as Lead Plaintiff in the Action. On July 8, 2009, Craig D. Epstein replaced Scott Egleston as Lead Plaintiff.

On _____, 2010, the court preliminarily certified this Action as a Class Action and appointed Craig D. Epstein as Class Representative (the "Class Representative").

Based upon the Lead Plaintiffs' independent investigation and the significant volume of documents and information they received in discovery, as well as the absence of insurance and the financial reality of limited assets available to satisfy the claims, the Class Representative and Lead Counsel believe that the Settlement of this Action, which provides for payment of $12,262,500 in the form of cash and a secured Note, is an excellent recovery for Class Members. Here, C&A is bankrupt, liquidated and has no assets to contribute and all insurance has been exhausted. Further, here, where Defendants argued that the Class Representative would be unable to prove scienter and loss causation and their arguments on loss causation were supported by their expert report, Lead Counsel believe that the Class faced substantial risks in taking this Action to trial. Based on their evaluation, the Class Representative and Lead Counsel have determined that the settlement set forth in this Stipulation is fair, reasonable and adequate and in the best interests of the Class.

The Settling Defendants, while affirmatively denying wrongdoing, fault and liability, consider it desirable and in their best interests that the Action be dismissed against them according to the terms of the proposed Settlement in order to avoid the further expense, uncertainty and distraction of protracted litigation.

---

### 3. Why is this Action a Class Action?

---

In a Class Action, one or more people or entities called a lead plaintiff or a class representative, sue on behalf of other investors who have similar claims based upon their transactions in a given security. All of those people and/or entities are referred to collectively as a "Class," or individually as a "Class Member." One court resolves the issues for all Class Members, except for those persons or entities who exclude themselves from the Class (as explained below).

## 4.  Why is there a Settlement?

The Court did not decide in favor of either the Class Representative or the Defendants in this Action.  Instead, the Class Representative and the Settling Defendants agreed to settle before obtaining final rulings from the Court or a jury.  As explained above, the Class Representative and Lead Counsel believe the Settlement is beneficial for all Class Members.  The Settling Defendants consider it desirable and in their best interests that the Action be dismissed against them under the terms of the proposed Settlement in order to avoid the further expense, uncertainty and distraction of protracted litigation.

## 5.  How do I know if I am included in the Settlement?

You are a Class Member only if you purchased or acquired C&A Notes or common stock during the Class Period.  The Class has received preliminary certification by the Court and will include:

> **All individuals and entities who purchased or otherwise acquired the securities of C&A during the period between August 6, 2002 and May 17, 2005, inclusive and who suffered damages.**

The following, however, are **not** Class Members: C&A, Defendants, past or present directors and officers of C&A, members of their immediate families, parents, subsidiaries and affiliates of C&A, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or has had a controlling interest, any Released Parties, and, to the extent of their claims in another action called the MainStay Action, MainStay Class Members.

Also excluded from the Class are Persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in this Notice as described in Question 12 below.

If one of your mutual funds purchased or owns C&A Notes or common stock that alone does not make you a Class Member. Contact your broker to see whether you purchased C&A Notes or common stock during the Class Period.

## 6.  What if I still am not sure whether I am included?

If you are still not sure whether you are included, you can ask for free help.  You can call 1-800-391-7473 or visit www.gardencitygroup.com for more information.  Or you can fill out and return the claim form described on page 10, in Question 9, to see if you qualify.

## 7.  What does the Settlement Provide?

The Settlement provides a recovery of $12,262,500.  The first $6,700,000 of this shall be paid in cash into an escrow account within thirty days of the Court's preliminary approval of the Settlement Agreement and $62,500 shall be paid in cash into an escrow account thirty days prior to the date set by the Court for final approval of the Settlement.  The remaining $5,500,000 shall be contributed, within thirty days of the Court's preliminary approval of the Settlement Agreement, in the form of a note payable to the Class, care of the escrow account.  The Note will be payable 8 months from the effective date of the Settlement (which shall be the first date after the date on which approval of the Settlement is made final, whether on appeal or review, expiration of the time for reargument appeal or review, or otherwise). The foregoing payments consist of: (i) a $4.5 million payment of cash by Heartland; (ii) $5.5 million of the value of the Heartland Note, as discussed above; (iii) a $2.2 million cash payment to be paid by Stockman; and (iv) a $62,500 cash payment to be paid by Stepp.  In the event certain of the Settling Defendants exercise a right to terminate their participation in the Settlement under certain limited conditions as explained below in Question 13, their contribution will not be part of the Settlement Amount.  The Class will receive interest on the Settlement Amount. The Settlement Amount plus interest, is referred to herein as the Gross Settlement Fund. The Gross Settlement Fund, less any award of attorneys' fees, reimbursement of litigation expenses and other Court-approved costs (the "Net Settlement Fund"), will be distributed solely to Class Members who timely submit acceptable Proofs of Claim (see Response to Question 8 below).

The Settlement, if approved, will result in the dismissal of the Complaint against all Defendants and the release by all Class Members of all Released Claims against the Released Parties, as defined below in the Response to Question 11.

As indicated above, Lead Counsel estimates that the average recovery under the Settlement after reduction for Court approved fees and expenses will be approximately $0.28 per share of C&A common stock, $ 3.99 per each 10.75% Note and $ 1.20 per each 12.875% Note.  The actual recovery of any particular Class Member will depend on the following: (1)

the number of claims filed; (2) when a Class Member purchased or acquired C&A securities during the Class Period; (3) whether a Class Member sold or retained their C&A securities during the Class Period and if sold, when that transaction took place; (4) taxes and administrative costs, including the costs of this Notice; (5) whether certain Defendants exercise their rights to terminate their participation in the Settlement and (6) the amount awarded by the Court for attorneys' fees and expenses. Distributions to Class Members will be made based on the Plan of Allocation described below in Response to Question 8, or as otherwise approved by the Court.

As also stated above, another consolidated action, arising from the same facts, against the same Defendants and certain additional defendants, brought on behalf of persons and entities who purchased C&A 10.75% Notes and 12.875% Notes through their duly authorized investment advisor, MacKay Shields LLC, *MainStay High Yield Corporate Bond Fund v. Heartland Industrial Partners, L.P., et al.*, (the "MainStay Action") is being settled on the same schedule. The total amount for which both actions are being settled is thus $24,625,000, to be paid $13,400,000 in cash within 30 days of preliminary approval, $225,000 in cash 30 days prior to the date set by the Court for the final approval hearing, and $11 million in note form payable eight months from the effective dates of the settlements. The consummation of the Settlement in this, the Egleston Action, is contingent upon the Court's approval of the settlement in the MainStay action.

The Settling Defendants do not agree with the Class Representative as to the maximum amount that the Class could have recovered had the Class Representative prevailed at trial and on appeal. In this regard, the Parties disagree regarding the following issues in connection with liability and damages: (1) whether the Settling Defendants made any false and misleading statements or whether such statements could be attributed to them; (2) whether the Settling Defendants engaged in any deceptive or manipulative conduct; (3) whether the Settling Defendants' conduct or statements were actionable under any law, including the federal securities laws; (4) whether the Settling Defendants made the statements or engaged in the conduct with the requisite knowledge to constitute fraud; (5) whether Heartland is liable as a "controlling person"; (6) the appropriate economic model for determining the amount by which C&A common stock and C&A Notes were allegedly artificially inflated (if at all) during the Class Period; (7) the extent to which the various matters that the Class Representatives allege were materially false or misleading (if at all) influenced and artificially inflated (if at all) the trading price of C&A common stock and Notes at various times during the Class Period; and (8) the extent to which external factors, such as general market conditions, influenced the trading price of C&A common stock and Notes at various times during the Class Period.

The Net Settlement Fund will be divided among all Class Members who submit valid proof of claim forms before the deadline for submission.

---

## 8. Payment pursuant to the Settlement

---

The proposed Plan of Allocation provides for distribution of the Net Settlement Fund to Authorized Claimants is as follows:

Each Person claiming to be a claimant entitled to share in the Net Settlement Fund ("Authorized Claimant") shall be required to submit a separate Proof of Claim signed under penalty of perjury and supported by such documents as specified in the Proof of Claim as are reasonably available to the Authorized Claimant.

All Proof of Claim forms must be postmarked or received by _____, 2010, addressed as follows:

**In re Collins & Aikman Corporation Securities Litigation Settlement** (Case No. 2:06-13555)
**c/o The Garden City Group, Inc.**
**Claims Administrator**
**P.O. Box 9403**
**Dublin, OH  43017-4503**

Unless otherwise ordered by the Court, any Class Member who fails to submit a properly completed and signed Proof of Claim within such period as may be ordered by the Court shall be forever barred from receiving any payments pursuant to the Stipulation, but will in all other respects be subject to the provisions of the Stipulation and the final judgment entered by the Court.

The Net Settlement Fund shall be distributed to members of the Class who submit acceptable Proofs of Claim ("Authorized Claimants").

The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim." The Recognized Claim formula is not intended to be an estimate of the amount of what a Class Member might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants. Such Plan of Allocation is a

matter separate and apart from the proposed Settlement, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  The Plan of Allocation may be modified in connection with, among other things, a ruling by the Court, an objection filed by a Class Member, without further notice to the Class.

The Plan of Allocation generally measures the amount of loss that a Class Member can claim under the Settlement for the purpose of making *pro rata* allocations of the cash in the Net Settlement Fund to Class Members who submit acceptable Proofs of Claim.  The Plan of Allocation is not a formal damage analysis.  The following proposed Plan of Allocation reflects plaintiffs' allegations that the prices of C&A common stock and C&A Notes were artificially inflated during the Class Period due to misrepresentations and/or omissions by Defendants or individuals or entities under their control.

Recognized Claims will be calculated for the purposes of the Settlement as follows:

## PLAN FOR DISTRIBUTION OF THE SETTLEMENT FUND TO CLASS MEMBERS

The Settlement Amount and any interest earned thereon shall be the Gross Settlement Fund.  The Gross Settlement Fund, less all applicable taxes, approved costs, fees and expenses (the "Net Settlement Fund") shall be distributed to members of the Class who submit acceptable Proofs of Claim ("Authorized Claimants").

The following proposed Plan of Allocation for the Net Settlement Fund reflects Plaintiffs' allegations that the price of C&A's common stock and the C&A Notes were inflated artificially by reason of allegedly false and misleading statements made by Defendants during the Class Period.

### *Common Stock Purchases*

1.      With respect to the Net Settlement Fund, "Recognized Claim" is the out-of-pocket loss actually incurred on the purchase and sale of the stock including any sales through August 15, 2005 (90 days after the May 17, 2005 end of the Class Period).  Thus, for shares of C&A common stock purchased during the Class Period and still held at the close of trading on August 15, 2005, "Recognized Claim" will be calculated for purposes of the Settlement as equal to the purchase price.

### *10.75% Notes*

1.      Based on available price data for C&A debt securities during the relevant period, and on Plaintiffs' Damage Expert's analysis of alleged artificial inflation in the price of C&A's securities during the Class Period, Plaintiffs assert that the prices of C&A's debt securities were inflated by the following amounts for the periods indicated:

| Period | Amount of Inflation (per $100 Face Value)[1] |
|--------|---------------------------|
| | 10.75% Notes |
| August 5, 2002 through August 14, 2003 | $3.51 |
| August 15, 2003 through March 16, 2005 | $25.06 |
| March 17, 2005 | $21.55 |
| March 18, 2005 | $21.55 |
| March 21 through May 11, 2005 | $21.55 |
| May 12, 2005 | $6.58 |
| May 13, 2005 | $0.18 |
| May 16, 2005 | -$5.94 |
| May 17, 2005 | $0 |

[1] Negative amount in the price inflation table result from the increase in the price of the C&A Notes on May 17, 2005, which offsets part of the drop from May 12 to May 16, 2005.  If a C&A Note is purchased during the Class Period and subsequently sold on a day with negative amounts in the price inflation table, damages are increased by that amount.

2.      No claim will be recognized for C&A debt securities purchased during the Class Period that were not owned as of the close of trading on at least one of the following dates:  August 14, 2003, March 16, 2005, March 17, 2005, March 18, 2005, May 11, 2005, May 12, 2005, May 13, 2005, May 16, 2005, or May 17, 2005.

3.      For C&A 10.75% debt securities purchased during the Class Period and sold at a loss on or before August 15, 2005, "Recognized Claims –Settlement" will be calculated for purposes of the Settlement as *the lesser of* (a) the Inflation per $100 of face value on the date of purchase, less the Inflation per $100 of face value on the date of sale, *or* (b) the purchase price paid less the sales proceeds received (all figures net of commissions, accrued interest, etc.).

4.      For C&A debt securities purchased during the Class Period and still held at the close of trading on August 15, 2005, "Recognized Claim –Settlement" will be calculated for purposes of the Settlement as the Inflation per $100 of face value on the date of purchase.

### *12.875% Notes*

1.      Based on available price data for C&A debt securities during the relevant period, and on Plaintiffs' Damage Expert's analysis of alleged artificial inflation in the price of C&A's securities during the Class Period, Plaintiffs assert that the prices of C&A's debt securities were inflated by the following amounts for the periods indicated:

| Period | Amount of Inflation (per $100 Face Value)[2] |
|---|---|
|  | **12.875% Notes** |
| August 5, 2002 through August 14, 2003 | N/A |
| August 15, 2003 through March 16, 2005 | $35.48 |
| March 17, 2005 | $24.88 |
| March 18, 2005 | $18.26 |
| March 21 through May 11, 2005 | $15.03 |
| May 12, 2005 | -$0.23 |
| May 13, 2005 | -$0.88 |
| May 16, 2005 | -$2.16 |
| May 17, 2005 | $0 |

2.      No claim will be recognized for C&A debt securities purchased during the Class Period that were not owned as of the close of trading on at least one of the following dates:  August 14, 2003, March 16, 2005, March 17, 2005, March 18, 2005, May 11, 2005, May 12, 2005, May 13, 2005, May 16, 2005, or May 17, 2005.

3.      With respect to the Settlement fund to purchasers of 12.875% Notes, the calculation of Recognized Claim – Settlement should be calculated by following the steps set forth in Paragraphs 3 and 4 of the Plan of Allocation set forth above for purchasers or the 10.75% Notes, **AND THEN:**

4.      Reducing that total by 70%.  (For purchasers of C&A 12.875 % Notes, "Recognized Claim" will equal 30% of those determined by performing the initial calculation because the Plan of Allocation for these purchasers includes a discount that reflects difficulties such purchasers would face in achieving any recovery or certifying any class due to the distribution of these notes entirely by private placement and the Rule 144 process).

*****************

### PROVISIONS GENERALLY APPLICABLE TO ALL PLANS OF ALLOCATION

The Claims Administrator shall determine each Authorized Claimant's *pro rata* shares of the Net Settlement Funds based upon each Authorized Claimant's Recognized Claim.  The Recognized Claim formulas for the Net Settlement Funds are

---

[2] Negative amount in the price inflation table result from the increase in the price of the C&A Notes on May 17, 2005, which offsets part of the drop from May 12 to May 16, 2005.  If a C&A Note is purchased during the Class Period and subsequently sold on a day with negative amounts in the price inflation table, damages are increased by that amount.

not intended to be an estimate of the amount of what a Class Member might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the respective Settlements. The Recognized Claim formulas are the basis upon which the Net Settlement Funds will be proportionately allocated to the Authorized Claimants.

In the event a Class Member has more than one purchase or sale of C&A securities, all purchases and sales of a particular security (common stock, 10.75% Notes or 12.875% Notes) shall be matched on a First In First Out ("FIFO") basis. Class Period sales of C&A common stock will be matched first against any shares of C&A Class A common stock held prior to the beginning of the Class Period, and then in chronological order against Class Period purchases. The receipt or grant by gift, devise or operation of law of shares of C&A Class A common stock purchased during the Class Period shall not be deemed a purchase of shares of C&A Class A common stock during the Class Period, nor shall it be deemed an assignment of any claim relating to the purchase of such shares unless specifically provided in the instrument of gift or assignment.

To the extent a Claimant had a gain from his, her or its overall transactions in C&A stock during the Class Period, the value of the Recognized Claim as to that stock will be zero. To the extent that a Claimant suffered an overall loss on his, her or its overall transactions in C&A stock during the Class Period, but that loss was less than the Recognized Claim calculated above, then the Recognized Claim shall be limited to the amount of the actual loss.

Likewise, to the extent a Claimant had a gain from his, her or its overall transactions in C&A 10.75 % Notes during the Class Period, the value of the Recognized Claim as to those notes will be zero. To the extent that a Claimant suffered an overall loss on his, her or its overall transactions in C&A 10.75 % Notes during the Class Period, but that loss was less than the Recognized Claim calculated above, then the Recognized Claim shall be limited to the amount of the actual loss. To the extent a Claimant had a gain from his, her or its overall transactions in C&A 12.875 % Notes during the Class Period, the value of the Recognized Claim as to those notes will be zero. To the extent that a Claimant suffered an overall loss on his, her or its overall transactions in C&A 12.875 % Notes during the Class Period, but that loss was less than the Recognized Claim calculated above, then the Recognized Claim shall be limited to the amount of the actual loss.

Class Members who do not submit acceptable Proofs of Claim will not share in the Settlement Proceeds but will nevertheless be bound by the Settlements and the Orders and Final Judgments of the Court dismissing this Action.

Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the settlement(s). If any funds remain in either of the Net Settlement Funds by reason of un-cashed distributions or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distributions of the Net Settlement Funds cash their distributions, any balance remaining in the Net Settlement Funds one (1) year after the initial distribution of such funds shall be re-distributed to Class Members who have cashed their initial distributions and who would receive at least $10.00 from such re-distributions, after payment of any unpaid costs or fees incurred in administering the Net Settlement Funds for such re-distributions. If after six months after such re-distributions any funds shall remain in either of the Net Settlement Funds, then such balance(s) shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) designated by Plaintiff's Lead Counsel, and approved by the Court after notice to counsel to the Settling Defendants.

If a Proof of Claim is received which lists securities other than C&A common stock or C&A Notes, the Claims Administrator and Lead Plaintiffs' Counsel will assess any Recognized Claim for such security on a case-by-case basis. In no event shall claimants receive more than, in the aggregate, 5% of the Net Settlement Fund in connection with claims for securities other than C&A common stock or the C&A Notes.

**Plaintiffs, the Defendants, their respective counsel, and all other Released Parties shall have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Funds, the Net Settlement Funds, the Plan of Allocation or the determination, administration, calculation, or payment of any Proof of Claim or non-performance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Funds or any losses incurred in connection therewith.**

## OTHER PROVISIONS OF THE PLAN

To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's Recognized Claim, as defined above. If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's recognized claim bears to the total of the claims of all Authorized Claimants.

If payment calculates to less than $10, then such payment shall be equal to $0. Payment in this manner shall be deemed conclusive against all Authorized Claimants.

The determination of the price paid and the price received shall be exclusive of all commissions, taxes, fees and charges. Therefore, you need to list all purchases, acquisitions, and sales of C&A common stock during the relevant time period. Brokerage commissions and transfer taxes paid by you in connection with your purchase, acquisition and sale of C&A common stock or C&A Notes should not be included in the "total purchase price" and net of the "total proceeds."

The Court has reserved jurisdiction to allow, disallow or adjust the claim of any Class Member on equitable grounds. No person shall have any claim against the Class Representatives or their counsel or any claims administrator or other agent designated by the Class Representatives or their counsel, or against Defendants or Defendants' counsel, based on distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court. All Class Members who fail to complete and file a valid and timely Proof of Claim shall be barred from participating in distributions from the Settlement Fund (unless otherwise ordered by the Court), but otherwise shall be bound by all of the terms of the Stipulation, including the terms of any judgment(s) entered and the releases given.

Under no circumstances will a Recognized Loss exceed the out-of-pocket loss, not including commissions, taxes or other fees.

The Plan of Allocation is not a material term of the Settlement and the Court may approve a modified version of this Plan of Allocation.

---

**9.  How can I receive a payment in the Settlement?**

---

To qualify for payment, you must submit a Proof of Claim form.  A Proof of Claim form is enclosed with this Notice.  You may also obtain a Proof of Claim form on the Internet at www.gardencitygroup.com.  Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than _____, 2010.

---

**10.  When will I receive my payment in the Settlement?**

---

The Court will hold a hearing on _____, at _____ a.m./p.m. to decide whether to approve the Settlement.  Even if the Court approves the Settlement, it could take more than a year before the Net Settlement Fund is distributed to the Class Members because the Claims Administrator must process all of the Proof of Claim forms, audit the results and follow up to cure any deficient claims.  As a result, the processing of claims is a complicated process which can take many months to complete.

---

**11.  What am I giving up to receive my payment in the Settlement?**

---

Unless you exclude yourself, you are agreeing to remain in the Class and that means that if the Settlement is approved you will release all "Released Claims" against the "Released Parties" (as defined below and in the Stipulation which is available on the internet at www.gardencitygroup.com or through the mail upon request, and in the Proof of Claim Form). This means that you no longer have the right to pursue these claims in a court of law against the Defendants (other than any Non-Settling Defendants) or any of the Released Parties.  If you remain a member of the Class all of the Court's orders will apply to you and legally bind you.

"Releasors" means Craig D. Epstein and each of the other members of the Egleston Class and MainStay and each of the other members of the MainStay Class, each of whom is a "Releasor," on behalf of themselves, their respective heirs, executors, estates, administrators, predecessors, successors, assigns, and their respective past or present parents, subsidiaries, associates, affiliates, employers, agents, insurers, reinsurers, directors, officers, partners, principals, members, attorneys, financial and other advisors, investment bankers, underwriters, lenders, or other representatives of the foregoing, in their capacities as such.

"Released Claims" shall mean any and all Claims and Unknown Claims by any Releasor against the Released Parties, which have been or could have been asserted relating to the subject matter of the Egleston Action or the MainStay Action by any Releasor.  Excluded from the definition of "Released Claims" are any Claims arising from or relating to the enforcement of this Settlement.  "Released Claims" also does not include claims pending in any other currently pending litigation of which the Settling Defendants have received actual notice prior to February 17, 2010.

"Released Parties" means Defendants (other than any Non-Settling Defendants) and each of their past or present subsidiaries, parents, general partners, limited partners, members, controlling persons, successors and predecessors, officers, directors, agents, employees, attorneys, advisors, investment advisors, auditors, accountants, insurers, and any

person, firm, trust, corporation, officer, director or other individual or entity in which any Defendants has or has had a controlling interest or which is related to or affiliated with any of the Defendants (including without limitation Heartland Industrial Group, L.L.C.), the legal representatives, heirs, successors in interest or assigns of the Defendants and the parents, spouses, siblings and children of each of the Defendants.

"Settled Defendants' Claims" means any and all Claims and Unknown Claims against Releasors belonging to the Settling Defendants arising from or relating to the institution, prosecution or settlement of the MainStay Action.  Excluded from the definition of "Settled Defendants' Claims" are any Claims arising from or relating to the enforcement of this Settlement.

"Unknown Claims" means any and all Released Claims which the Lead Plaintiff or Class Members do not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, and any Settled Defendants' Claims which any Defendant does not know or suspect to exist in his, her or its favor at the time of the release of the Releasors, which if known by him, her or it might have affected his, her or its decision(s) with respect to the Settlement.

Lead Plaintiff and the Defendants acknowledge, and the Class Members and Releasors shall be deemed by operation of law to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settled Defendants' Claims was separately bargained for and is a key and fundamental element of the Settlement of which this release is a part.

## 12.  What is the effect of the Bar Order?

Pursuant to the PSLRA, 15 U.S.C. § 78u-4(f)(7), if the Settlement is approved and a Judgment is entered, all future claims for contribution arising out of this Egleston Action or the MainStay Action (i) by any person against the Defendants; and (ii) by the Defendants against any person, other than a person whose liability has been extinguished by the Settlement, will be barred (the "Bar Order").

The practical effect of this Bar Order is that no person or entity may file or prosecute any lawsuit for contribution against any of the Settling Defendants that arises out of this Egleston Action or the MainStay Action.

If there is a partial termination of the Settlement, there will be a modified bar order including bars to the Non-Settling Defendants and other persons for contribution, indemnification or advancement or other claims seeking to recover liabilities of costs arising out of continued litigation.

## 13.  How do I exclude myself from the Settlement?

To exclude yourself from the Settlement, you must send a letter by mail to the Claims Administrator saying that you want to be excluded from *K.J. Egleston v. Heartland Industrial Partners, L.P., et al.* (Case No. 2:06-cv-13555-GER-RSW).  If you wish to exclude yourself from the Class, be sure to include your name, address, telephone number, and signature, and mail your exclusion request postmarked no later than _____, 2010 to:

*In re Collins & Aikman Securities Litigation Settlement* (Case No. 2:06-13555)
c/o The Garden City Group, Inc.
Exclusions
Claims Administrator
P.O. Box 9403
Dublin, OH  43017-4503

Requests for exclusion must also list the amount of C&A common stock and 10.75% and 12.875% Notes purchased, acquired, or sold during the Class Period, the prices paid or received, the date of each transaction and the amount of such Notes or number of shares of C&A common stock held as of the beginning of the Class Period on August 6, 2002 and at the end of the Class Period on May 17, 2005.

You cannot exclude yourself on the website, by telephone or by e-mail.  **If you do not follow these procedures – including meeting the date for exclusion set out above – you will not be excluded from the Class, and you will be bound by all of the orders and judgments entered by the Court regarding the Settlement.** You must exclude yourself even if you already have a pending case against any of the Released Parties based upon any Released Claims.

If you ask to be excluded, you will not receive a Settlement payment, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit.

Heartland, and certain Settling Defendants associated with Heartland, as well as Defendant Stockman, have the option to terminate their participation in the Settlement in the event that members of the Class who purchased in the aggregate, more than a certain total face amount of C&A stock or C&A Notes during the Class Period, or certain members of the class in the MainStay Action, or members of the class in the MainStay Action who purchased Notes in excess of a specified amount, timely and validly request exclusion in accordance with the requirements set forth in this Notice or the Notice in the MainStay Action. This could result in a partial or full termination of the Settlement. In the event of a partial termination, the Settlement would proceed as described above with the Settling Defendants, and the Class would receive payments only from those Settling Defendants.

---

**14. Do I have a lawyer in the case?**

---

The Court approved Lead Counsel to represent you and the other Class Members in the Settlement. If you need to reach an attorney at one of these firms to discuss any aspect of the Settlement, please address your inquiries to the attorneys named in Response to Question 16 below.

If you want to be represented by your own lawyer, you may hire one at your own expense.

---

**15. How will the lawyers for the Class in the Settlement be paid?**

---

Lead Counsel have litigated the Action on an entirely contingent basis, and have advanced the expenses of litigation with the expectation that if they were successful in recovering money for the Class, they would receive fees and be reimbursed for their expenses from the Settlement Fund, as is customary in this type of litigation. Lead Counsel will apply for a fee out of the Settlement Fund of up to 33 1/3% of the Settlement Fund, plus interest earned at the same rate as the Class. Lead Counsel are also seeking reimbursement of the costs and expenses they advanced in connection with the Action, in an amount that will not exceed $950,000, plus interest earned at the same rate as the Class.

Class Representative, as well as, potentially, two other individuals that previously served as lead plaintiff, will also apply for reimbursement of their reasonable time and expenses (including lost wages) in an amount that will not exceed $15,000 each.

---

**16. How do I notify the Court if I am opposed to any part of the Settlement, the Plan of Allocation, the request for attorneys' fees and reimbursement of expenses or the Class Representatives' application for reimbursement of time and expenses in the Settlement?**

---

If you are a Class Member you may object to any aspect of the Settlement if you do not like any part of it, including the Plan of Allocation or the request for attorneys' fees and reimbursement of expenses.

To object, you must send a letter stating that you are a Class Member, that you object to the Settlement in *K.J. Egleston v. Heartland Industrial Partners, L.P., et al.*, and the reasons why you object.

In your objection, you must include your name, address, telephone number, and your signature. You must also include information concerning your transactions in C&A securities during the Class Period, including the dates, prices paid or received and amounts purchased, acquired or sold and held at the end of the Class Period, so that the Court may determine that you are part of the Class and have an economic interest in any aspect of the Settlement. If you intend to present any witnesses at the Settlement Fairness Hearing, you must also so state. Your objection must be filed with the Court by _____, 2010, and received no later than _____, 2010, by counsel listed below:

| Lead Counsel for Plaintiffs | Settling Defendants' Counsel |
|---|---|
| WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| Fred T. Isquith | Jonathan J. Lerner |
| Thomas H. Burt | 4 Times Square |
| Kate M. McGuire | New York, NY 10036 |
| 270 Madison Avenue | |
| New York, New York 10016 | WILMER, CUTLER, PICKERING HALE AND DORR LLP |
| | Andrew B. Weissman |
| | 1875 Pennsylvania Ave., N.W. |
| | Washington, DC 20006 |
| | Telephone (202) 663-6612 |

**17. When and where will the Court decide these matters?**

The Fairness Hearing for the Settlement will be held at _____ __.m. on _____, 2010, at the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan, 48226, in Courtroom _____. At this hearing the Court will consider whether (i) the Settlement is fair, reasonable and adequate (ii) whether the claims against the Settling Defendants should be dismissed with prejudice as set forth in the Stipulation; (iii) whether the Plan of Allocation is fair and reasonable; and (iv) whether the application by Lead Counsel for an award of attorneys' fees and reimbursement of litigation expenses should be approved. The Court may decide to adjourn the Settlement Fairness Hearing without further notice to the Class. The Court may also decide whether and how much to award Lead Plaintiffs for reimbursement of their reasonable time and expenses (including lost wages).

**18. Am I required to appear at the final hearing and may I speak?**

You do not need to attend the hearing. However, if you have filed an objection to any aspect of the Settlement as provided above, you may ask the Court for permission to speak at the Fairness Hearing for the Settlement. To do so, you must include with your objection, the statement, "I hereby give notice that I intend to appear at the Fairness Hearing in *K.J. Egleston v. Heartland Industrial Partners, L.P., et al.* (Case No. 2:06-cv-13555-GER-RSW). Be sure to include your name, address and telephone number, identify all relevant data concerning your C&A securities, whether they were common stock or Notes, the dates, prices paid or received and amounts purchased, acquired or sold, and held as of the end of the Class Period, and sign the letter. If you intend to have any witnesses testify or to introduce any evidence at the Fairness Hearing, you must list the witnesses and evidence in your objection. Your Notice of Intention to Appear must be postmarked no later than _____, and be sent to the Clerk of the Court and the counsel listed above in the answer to Question 16. You cannot speak at the hearing if you exclude yourself.

**19. What will happen if I am a Class Member in the C&A Securities Action and I do nothing at all?**

If you do not exclude yourself from the Class, and you fail to timely file a Proof of Claim, you will receive no recovery from the Net Settlement Fund. Unless you exclude yourself from the Class, you will not be able to start a lawsuit, continue to litigate a pending lawsuit, or be part of any other lawsuit against the Settling Defendants or the Released Parties for the claims released by the Settlement, ever again. However, as explained in response to Question 12 above, requesting exclusion will not ensure that you will be able to pursue a Settled Claim against any Defendant or Released Party.

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

The Court has ordered that if you purchased or acquired C&A Notes or Common stock as nominee for a beneficial owner, then within seven (7) calendar days after you receive this Notice, you must either: (a) send a copy of this Notice and the accompanying Proof of Claim by first class mail to all such beneficial owners; or (b) provide a list of the names and addresses of such beneficial owners to the Claims Administrator at the following address so that the Claims Administrator can provide them with a copy of this Notice and a Proof of Claim form.

*In re Collins & Aikman Securities Litigation Settlement* (Case No. 2:06-13555)
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9403
Dublin, OH 43017-4503

You are entitled to reimbursement of your reasonable expenses actually incurred in connection with the foregoing, including reimbursement of postage expense and the cost of ascertaining the names and addresses of beneficial owners. Those expenses will be paid upon request and submission of appropriate supporting documentation.

## GETTING MORE INFORMATION

This Notice summarizes the proposed Settlement. More details are contained in the Stipulation for the Action which is available at www.gardencitygroup.com. If you have questions regarding how to obtain copies of documents related to this Settlement, completing your Proof of Claim form, correspondence you have received from the Claims Administrator, or the calculation of your Recognized Claim, you may write to The Garden City Group at the address listed above or call it toll free at 1-800-391-7473.

**PLEASE DO NOT CONTACT THE COURT**

**EXHIBIT 2**



| Must be Postmarked No Later Than _____, 2010 |
| --- |

In re Collins & Aikman Corporation Securities
Litigation Settlement (Case No. 2:06-13555)
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9403
Dublin, OH 43017-4503
1-800-391-7473

CEA

Claim Number:                    Control Number:

# PROOF OF CLAIM AND RELEASE

IF YOU PURCHASED OR ACQUIRED THE SECURITIES OF COLLINS & AIKMAN CORPORATION ("C&A" OR "COLLINS & AIKMAN") DURING THE PERIOD FROM AUGUST 6, 2002 THROUGH MAY 17, 2005, INCLUSIVE (THE "CLASS PERIOD"), AND SUFFERED DAMAGES, YOU ARE A "CLASS MEMBER" AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT PROCEEDS.

IF YOU ARE A CLASS MEMBER, YOU MUST COMPLETE AND SUBMIT THIS FORM IN ORDER TO BE ELIGIBLE FOR ANY SETTLEMENT BENEFITS.

YOU MUST COMPLETE AND SIGN THIS PROOF OF CLAIM AND MAIL IT BY FIRST CLASS MAIL, POSTMARKED NO LATER THAN _____, 2010 TO THE FOLLOWING ADDRESS:

In re Collins & Aikman Corporation Securities
Litigation Settlement (Case No. 2:06-13555)
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9403
Dublin, OH 43017-4503

YOUR FAILURE TO SUBMIT YOUR CLAIM BY _____, 2010 WILL SUBJECT YOUR CLAIM TO REJECTION AND PRECLUDE YOUR RECEIVING ANY MONEY IN CONNECTION WITH THE SETTLEMENT OF THIS LITIGATION. DO NOT MAIL OR DELIVER YOUR CLAIM TO THE COURT OR TO ANY OF THE PARTIES OR THEIR COUNSEL AS ANY SUCH CLAIM WILL BE DEEMED NOT TO HAVE BEEN SUBMITTED.  SUBMIT YOUR CLAIM ONLY TO THE CLAIMS ADMINISTRATOR.



## SECTION A - CLAIMANT INFORMATION

**Claimant Name(s)** (as you would like the name(s) to appear on the check, if eligible for payment)**:**



**Last 4 digits of Claimant Social Security Number/Taxpayer ID Number:**



**Name of the Person you would like the Claims Administrator to Contact Regarding This Claim** (if different from the Claimant Name(s) listed above)**:**



**Claimant or Representative Contact Information:**
The Claims Administrator will use this information for all communications relevant to this Claim (including the check, if eligible for payment). If this information changes, you <u>MUST</u> notify the Claims Administrator in writing at the address above.

**Street Address:**



**City:**



**State and Zip Code:**



**Country (Other than U.S.):**



**Daytime Telephone Number:** (        )        -        **Evening Telephone Number:** (        )        -

**Email Address:**

*(Email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.)*

NOTICE REGARDING ELECTRONIC FILES:  Certain claimants with large numbers of transactions may request to, or may be requested to, submit information regarding their transactions in electronic files.  To obtain the mandatory electronic filing requirements and file layout, you may visit the website at ***www.gardencitygroup.com*** or you may e-mail the Claims Administrator at eClaim@gardencitygroup.com.  Any file not in accordance with the required electronic filing format will be subject to rejection.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email after processing your file with your claim numbers and respective account information.  Do not assume that your file has been received or processed until you receive this email.  If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at eClaim@gardencitygroup.com to inquire about your file and confirm it was received and acceptable.

NOTE:  Separate Proofs of Claim should be submitted for each separate legal entity (for example, a claim from Joint Owners should not include separate transactions of just one of the Joint Owners, an Individual should not combine his or her IRA transactions with transactions made solely in the Individual's name).  Conversely, a single Proof of Claim should be submitted on behalf of one legal entity including all transactions made by that entity no matter how many separate accounts that entity has (for example, an individual or corporation with multiple brokerage accounts should include all transactions made in C&A securities during the Class Period on one Proof of Claim, no matter how many accounts the transactions were made in.)

3

## SECTION B - SCHEDULE OF TRANSACTIONS IN C&A COMMON STOCK

1. **BEGINNING HOLDINGS:** Number of shares of C&A common stock held at the close of trading on **August 5, 2002** (If none, write "zero" or "0") (If other than zero, must be documented).

2. **PURCHASES/ACQUISITIONS:** List your purchases or acquisitions of C&A common stock between **August 6, 2002** and **May 17, 2005**, inclusive (must be documented):

| Date(s) of Purchase/Acquisition (List Chronologically) Month/Day/Year | Number of Shares of Common Stock Purchase/Acquisition | Purchase/Acquisition Price Per Share of Common Stock | Total Purchase Price (excluding commissions, taxes, and fees) |
|---|---|---|---|
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |

3. **PURCHASES/ACQUISITIONS:** Number of shares of C&A common stock purchased/acquired between **May 18, 2005** and **August 15, 2005** (If none, write "zero" or "0").

4. **SALES:** List your sales of C&A common stock between **August 6, 2002** and **August 15, 2005**, inclusive (If none, write "zero" or "0") (If other than zero, must be documented):

| Date(s) of Sale (List Chronologically) Month/Day/Year) | Number of Shares of Common Stock Sold | Sale Price Per Share of Common Stock | Total Sale Price (excluding commissions, taxes, and fees) |
|---|---|---|---|
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |

5. **UNSOLD HOLDINGS:** Number of shares of C&A common stock held at the close of trading on **August 15, 2005** (If none, write "zero" or "0") (If other than zero, must be documented).

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❑**
**IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL NOT BE REVIEWED**

4

## SECTION C - SCHEDULE OF TRANSACTIONS IN 10.75% NOTES

1.  **BEGINNING POSITION:**  Please provide the face amount of 10.75% Notes that you held at the close of trading on **August 5, 2002** (If none, write "zero" or "0") (If other  than zero, must be documented).

2.  **PURCHASES/ACQUISITIONS:**  List purchases or acquisitions of 10.75% Notes between **August 6, 2002** and **May 17, 2005**. (Must be documented):

| Date(s) of Purchase/Acquisition (List Chronologically) Month/Day/Year | Face Amount of Notes Purchase/Acquired | Purchase/Acquisition Price Per $1000 Face Amount | Total Purchase Price (excluding commissions, taxes, and fees) |
|---|---|---|---|
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |

3.  **PURCHASES/ACQUISITIONS:**   Face   amount   of   10.75%   Notes purchased/acquired between **May 18, 2005** and **August 15, 2005** (If none, write "zero" or "0").

4.  **SALES:**  Sales of 10.75% Notes sold from **August 6, 2002** and **August 15, 2005**. (Must be documented):

| Date(s) of Sale (List Chronologically) Month/Day/Year) | Face Amount of Notes Sold | Sale Price Per $1000 Face Amount | Total Sale Price (excluding commissions, taxes, and fees) |
|---|---|---|---|
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |
| / / | | $ . | $ . |

5.  **ENDING POSITION:**  Please provide the face amount of 10.75% Notes that you held at the close of trading on **August 15, 2005** (If none, write "zero" or "0") (If other than zero, must be documented).

## IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU <u>MUST</u> PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❏
## IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED

5

## SECTION D - SCHEDULE OF TRANSACTIONS IN 12.875% NOTES

1. **BEGINNING POSITION:** Please provide the face amount of 12.875% Notes that you held at the close of trading on **August 5, 2002** (If none, write "zero" or "0") (If other than zero, must be documented).

2. **PURCHASES/ACQUISITIONS:** List purchases or acquisitions of 12.875% Notes between **August 6, 2002** and **May 17, 2005**. (Must be documented):

| Date(s) of Purchase/Acquisition (List Chronologically) Month/Day/Year | Face Amount of Notes Purchase/Acquired | Purchase/Acquisition Price Per $1000 Face Amount | | Total Purchase Price (excluding commissions, taxes, and fees) | |
|---|---|---|---|---|---|
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |

3. **PURCHASES/ACQUISITIONS:** Face amount of 12.875% Notes purchased/acquired between **May 18, 2005** and **August 15, 2005** (If none, write "zero" or "0").

4. **SALES:** Sales of 12.875% Notes sold from **August 6, 2002** and **August 15, 2005**. (Must be documented):

| Date(s) of Sale (List Chronologically) Month/Day/Year | Face Amount of Notes Sold | Sale Price Per $1000 Face Amount | | Total Sale Price (excluding commissions, taxes, and fees) | |
|---|---|---|---|---|---|
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |
| / / | | $ | . | $ | . |

5. **ENDING POSITION:** Please provide the face amount of 12.875% Notes that you held at the close of trading on **August 15, 2005** (If none, write "zero" or "0") (If other than zero, must be documented).

*Please contact the claims administrator if you have transactions in securities other than those identified in Sections B - D.*

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU <u>MUST</u> PHOTOCOPY THIS PAGE AND CHECK THIS BOX ❑ IF YOU DO NOT CHECK THIS BOX THESE ADDITIONAL PAGES WILL <u>NOT</u> BE REVIEWED**

6



| **SECTION E - CERTIFICATION AND SIGNATURE** |
|---|

### CLAIMANT'S STATEMENT

1.       I affirm that I purchased the securities between August 6, 2002 and May 17, 2005, inclusive.  (Do not submit this Proof of Claim if you did not purchase C&A securities during this period).

2.       By submitting this Proof of Claim, I state that I believe in good faith that I am a Class Member as defined above and in the Notice, or am acting for such person; that I am not a Defendant in the Action or anyone excluded from the Class; that I have read and understand the Notice; that I believe that I am entitled to receive a share of the Net Settlement Fund; that I elect to participate in the proposed Settlement described in the Notice; and that I have not filed a request for exclusion.  (If you are acting in a representative capacity on behalf of a Class Member (for example, as an executor, administrator, trustee, or other representative), you must submit evidence of your current authority to act on behalf of that Class Member.  Such evidence would include, for example, letters testamentary, letters of administration, or a copy of the trust documents.)

3.       I consent to the jurisdiction of the Court with respect to all questions concerning the validity of this Proof of Claim.  I understand and agree that my claim may be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to my status as a Class Member and the validity and amount of my claim.  No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proofs of Claim.

4.       I have set forth where requested above all relevant information with respect to each purchase of C&A securities during the Class Period, and each sale, if any, of such securities.  I agree to furnish additional information (including transactions in other C&A securities) to the Claims Administrator to support this claim if requested to do so.

5.       I have enclosed photocopies of the stockbroker's confirmation slips, stockbroker's statements, or other documents evidencing each purchase, sale or retention of C&A securities listed below in support of my claim.  (IF ANY SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN A COPY OR EQUIVALENT DOCUMENTS FROM YOUR BROKER BECAUSE THESE DOCUMENTS ARE NECESSARY TO PROVE AND PROCESS YOUR CLAIM.)

6.       I understand that the information contained in this Proof of Claim is subject to such verification as the Claims Administrator may request or as the Court may direct, and I agree to cooperate in any such verification.  (The information requested herein is designed to provide the minimum amount of information necessary to process most simple claims.  The Claims Administrator may request additional information as required to efficiently and reliably calculate your Recognized Claim.  In some cases the Claims Administrator may condition acceptance of the claim based upon the production of additional information, including, where applicable, information concerning transactions in any derivatives of the subject securities such as options.)

7.       I hereby acknowledge that, upon the occurrence of the Effective Date, by operation of law, I on behalf of myself and on behalf of my heirs, executors, administrators, predecessors, successors, and assigns (or, if I am submitting this Proof of Claim on behalf of a corporation, a partnership, estate or one or more other persons, I on behalf of it, him, her or them and on behalf of its, his, her or their heirs, executors, administrators, predecessors, successors, and assigns) shall fully and completely release, remise and discharge each of the "Released Parties" of all "Released Claims," as defined in the Notice.

          UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION I (WE) PROVIDED ON THIS PROOF OF CLAIM FORM IS TRUE, CORRECT AND COMPLETE.


Signature of Claimant (If this claim is being
made on behalf of Joint Claimants, then
each must sign)


_____     _____     _____
(Signature)                                      (Signature)                                      (Capacity of person(s) signing, e.g.
                                                                                                              beneficial purchaser(s), executor,
                                                                                                              administrator, trustee, etc.)


_____
Date:

**ACCURATE CLAIM PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.
THANK YOU FOR YOUR PATIENCE.**

## REMINDER CHECKLIST

1. Please sign the Certification Section of the Proof of Claim and Release form.

2. If this claim is made on behalf of joint claimants, then both must sign.

3. Please remember to attach supporting documents.

4. DO NOT SEND ORIGINALS OF ANY SUPPORTING DOCUMENTS.

5. Keep a copy of your Proof of Claim and Release form and all documentation submitted for your records.

6. The Claims Administrator will acknowledge receipt of your Proof of Claim and Release by mail, within 30 days. Your claim is not deemed filed until you receive an acknowledgment postcard. If you do not receive an acknowledgment postcard within 30 days, please call the Claims Administrator toll free at **1-800-391-7473**.

7. If you move, please send us your new address.

8. **Do not use highlighter on the Proof of Claim and Release form or supporting documentation.**

THIS PROOF OF CLAIM MUST BE POSTMARKED NO LATER THAN
_____, **2010** AND MUST BE MAILED TO:

**In re Collins & Aikman Corporation Securities
Litigation Settlement (Case No. 2:06-13555)
c/o The Garden City Group, Inc.
Claims Administrator
P.O. Box 9403
Dublin, OH 43017-4503**

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

K.J. EGLESTON, individually and on behalf of all others
similarly situated

                           Plaintiff,                        Case No. 2:06-13555

v.

HEARTLAND INDUSTRIAL PARTNERS, L.P.,
et al.,

                           Defendants.

## NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION, MOTION FOR ATTORNEYS' FEES AND SETTLEMENT HEARING

TO:    ALL INDIVIDUALS AND ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED THE SECURITIES OF C&A DURING THE PERIOD BETWEEN AUGUST 6, 2002 AND MAY 17, 2005, INCLUSIVE, AND WHO SUFFERED DAMAGES.

YOU ARE HEREBY NOTIFIED that the above-captioned action has been certified as a class action and that a settlement of the action for $12,262,500, consisting of $6,762,500 cash and $5,500,000 in the form of a note that is payable to the Class eight months after the effective date of the Settlement, has been proposed. A hearing will be held before the Honorable Gerald E. Rosen of the United States District Court for the Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan, 48226, in Courtroom _____. at ____:_____ ___.m., on _____, 2010 to determine whether: (1) the proposed Settlement should be approved by the Court as fair, reasonable and adequate; (2) Lead Counsel's application for an award of attorneys' fees in an amount of up to 33 1/3 % of the Settlement Fund and reimbursement of attorneys' expenses of not more than $950,000 should be approved; (3) those who served as lead plaintiff should be reimbursed for their reasonable costs and expenses (including lost wages) directly related to their representation of the Class in the litigation; and (4) the claims against the Defendants should be dismissed with prejudice.

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL

BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND. If you have not yet received the full printed Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses (the "Settlement Notice") and Proof of Claim and Release form ("Proof of Claim"), you may obtain copies of these documents by visiting www._____.com or by contacting:

*In re Collins & Aikman Corporation Securities Litigation Settlement (Case. No. 2:06-13555)*
c/o The Garden City Group.
Claims Administrator
P.O. Box _____
_____, ____ _____
(___) ___-____

Inquiries, other than requests for the forms of the Notice and Proof of Claim, may be made to the following Counsel:

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
Fred T. Isquith
Thomas H. Burt
Kate M. McGuire
270 Madison Avenue
New York, New York 10016

*Lead Counsel for Plaintiffs*

To participate in the Settlement, you must submit a Proof of Claim no later than _____, 2010. If you are a member of the Class and do not submit a proper Proof of Claim, you will not share in the settlement but you nevertheless will be bound by the Final Order and Judgment. As more fully described in the Notice, the deadline for submitting objections and requests for exclusion is _____, 2010.

Note, another consolidated action, arising from the same facts, against the same Defendants

2

and certain additional defendants, brought on behalf of persons and entities who purchased C&A 10.75% Notes and 12.875% Notes through their duly authorized investment advisor, MacKay Shields LLC, *MainStay High Yield Corporate Bond Fund v. Heartland Industrial Partners, L.P., et al.,* (the "MainStay Action") is also being settled, for $12,362,500. The total amount for which both actions are being settled is thus $24,625,000, to be paid in $13,625,000 million in cash within 30 days of approval, and $11 million in note form payable eight months from the effective dates of the settlements. The consummation of the Settlement in this, the Egleston Action, is contingent upon the Court's approval of the settlement in the MainStay action. If your are a member of the MainStay class, you may not recover for the amount of your MainStay claim from the Egleston Settlement.

Further information may also be obtained by directing your inquiry in writing to the Claims Administrator, The Garden City Group, at the address listed above.

By Order of The Court

**EXHIBIT C**

Exhibit C

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MAINSTAY HIGH YIELD CORPORATE BOND FUND, on behalf of itself and all others similarly situated,<br>   Plaintiff,<br><br> vs.<br><br>HEARTLAND INDUSTRIAL PARTNERS, L.P., a Delaware limited liability partnership, HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., a Delaware limited company, DAVID A. STOCKMAN, J. MICHAEL STEPP, TIMOTHY D. LEULIETTE, DANIEL P. TREDWELL, W. GERALD MCCONNELL, SAMUEL VALENTI, III, JOHN A. GALANTE, BRYCE M. KOTH, ROBERT A. KRAUSE, GERALD E. JONES, DAVID R. COSGROVE, and ELKIN B. MCCALLUM,<br>   Defendants.<br>_____ | Case No. 2:07-cv-10542-GER-RSW<br><br>Honorable Gerald E. Rosen |
| CRAIG D. EPSTEIN, individually and on behalf of all others similarly situated,<br>   Plaintiff,<br><br> vs.<br><br>HEARTLAND INDUSTRIAL PARTNERS, L.P., a Delaware limited liability partnership, HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., a Delaware limited company, DAVID A. STOCKMAN, J. MICHAEL STEPP, and BRYCE M. KOTH,<br>   Defendants.<br>_____ | Case No. 2:06-cv-13555-GER-RSW<br><br>Honorable Gerald E. Rosen |

## ORDER AND FINAL JUDGMENT

On the _____ day of _____, 2010, a hearing having been held before this

Court to determine: (1) whether the terms and conditions of the Stipulation and Agreement of

Settlement dated February 10, 2010 (the "Stipulation") are fair, reasonable, and adequate for the

settlement of all claims asserted by the MainStay Class[1] and the Egleston Class against the Defendants [except the Opt-Out Party][2] in the MainStay Complaint and the Egleston Complaint now pending in this Court under the above captions, including the release of the Released Parties, and should be approved; and (2) whether judgment should be entered dismissing both the MainStay Action and the Egleston Action on the merits and with prejudice [against all Defendants other than the Opt-Out Party]. The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that notices of the hearing substantially in the forms approved by the Court were mailed as directed in the Orders for Notice and Hearing as set forth in the [Affidavit of ____ dated ____, 2010] and the [Affidavit of ____ dated ____, 2010], and that the Egleston Publication Notice substantially in the form approved by the Court was published in the national edition of *The Wall Street Journal* pursuant to the specifications of the Court.

    NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

    1.    The Court has jurisdiction over the subject matter of the MainStay Action, the Egleston Action, MainStay, Epstein, all MainStay Class Members, all Egleston Class Members and the Settling Defendants.

    2.    For purposes of this Settlement, the Court finds that the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied in the MainStay Action in that: (a) the number of MainStay Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common

---

[1]    Unless otherwise defined herein, all capitalized terms used herein have the meanings defined in the Stipulation.

[2]    Bracketed material applying only if there is an Opt-Out Party shall be removed from this Order and Final Judgment if there is no Opt-Out Party.

2

to the MainStay Class; (c) the claims of MainStay are typical of the claims of the MainStay Class

they seek to represent; (d) MainStay and MainStay's Lead Counsel have and will fairly and

adequately represent the interests of the MainStay Class; (e) the questions of law and fact

common to the members of the MainStay Class predominate over any questions affecting only

individual members of the MainStay Class; and (f) a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.

       3.     For purposes of this Settlement, the Court finds that the prerequisites for a class

action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied in the

Egleston Action in that:  (a) the number of Egleston Class Members is so numerous that joinder

of all members thereof is impracticable; (b) there are questions of law and fact common to the

Egleston Class; (c) the claims of Epstein are typical of the claims of the Egleston Class they seek

to represent; (d) Epstein and Epstein's Lead Counsel have and will fairly and adequately

represent the interests of the Egleston Class; (e) the questions of law and fact common to the

members of the Egleston Class predominate over any questions affecting only individual

members of the Egleston Class; and (f) a class action is superior to other available methods for

the fair and efficient adjudication of the controversy.

       4.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and for purposes of

the Settlement, this Court hereby finally certifies the MainStay Action as a class action on behalf

of all those who, as investment advisory or sub-advisory clients of MacKay Shields LLC,

purchased or otherwise acquired C&A Notes through MacKay Shields LLC during the period

between August 11, 2004 through and including May 17, 2005.  **[Excluded from the Class are**

**the persons and/or entities who requested exclusion from the MainStay Class as listed on**

3

**Exhibit 1 annexed hereto OR No timely and valid requests for exclusion from the Class were received.]**

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure and for purposes of the Settlement, this Court hereby finally certifies the Egleston Action as a class action on behalf of all individuals and entities who purchased or otherwise acquired the securities of C&A and who suffered damages, including without limitation the common stock of C&A and the C&A Notes, during the period between August 6, 2002 and May 17, 2005, inclusive.  Excluded from the Egleston Class are the Defendants, past or present directors and officers of C&A, members of their immediate families, parents, subsidiaries and affiliates of C&A, and their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or has had a controlling interest, any Released Parties, and, to the extent of their claims in the MainStay Action, MainStay Class Members.  **[Also excluded from the Class are the persons and/or entities who requested exclusion from the Egleston Class as listed on Exhibit 1 annexed hereto OR No timely and valid requests for exclusion from the Class were received.]**

6.      [Nothing in this Order and Final Judgment or the Orders for Notice and a Hearing shall be deemed to prejudice the Opt-Out Party's right to contest class certification in the MainStay Action or the Egleston Action for purposes of litigating the remaining claims asserted against the Opt-Out Party.  All arguments concerning the propriety of such classes are preserved and shall be addressed by this Court at the appropriate time.]

7.      For purposes of this Settlement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally certifies MainStay as Class Representative in the MainStay Action, and MainStay's Lead Counsel as Class Counsel.

4

8.      For purposes of this Settlement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally certifies Epstein as Class Representative in the Egleston Action, and Egleston's Lead Counsel as Class Counsel.

9.      As set forth in the [Affidavit of _____ dated ____, 2010], notice of the pendency of the MainStay Action as a class action and of the proposed Settlement was given to all MainStay Class Members who could be identified with reasonable effort.  The Court finds and concludes that notice was given to members of the MainStay Class in compliance with the Preliminary Order for Notice and Hearing In Connection With Settlement Proceedings entered in the MainStay Action.  The form and method of notifying the MainStay Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7) as amended by the Private Securities Litigation Reform Act of 1995, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

10.      As set forth in the [Affidavit of _____ dated ____, 2010], notice of the pendency of the Egleston Action as a class action and of the proposed Settlement was given to all Egleston Class Members who could be identified with reasonable effort.  The Court finds and concludes that notice was given to members of the Egleston Class in compliance with the Preliminary Order for Notice and Hearing In Connection With Settlement Proceedings entered in the Egleston Action.  The form and method of notifying the Egleston Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the

5

Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7) as amended by the Private Securities Litigation Reform Act of 1995, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

11.    As set forth in the [Affidavit of _____ dated ____, 2010], the notice requirements set forth in the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the extent applicable to the MainStay Action or the Egleston Action, have been satisfied.

12.    The Court finds and concludes that the Settlement is fair, reasonable and adequate and in the best interests of the MainStay Class and the Egleston Class, approves the Settlement, adopts the terms of the Settlement, and directs the parties to consummate the Settlement in accordance with its terms and provisions.

13.    Pursuant to this Order and Final Judgment, upon the Effective Date of the Settlement, the Releasors shall forever release and discharge, and shall forever be enjoined from prosecuting, any and all Released Claims against any of the Released Parties.

14.    Pursuant to this Order and Final Judgment, upon the Effective Date of the Settlement, the Settling Defendants shall forever release and discharge, and shall forever be enjoined from prosecuting, any and all Settled Defendants' Claims against the Releasors.

15.    Neither this Order and Final Judgment, the Stipulation, nor any of its terms, provisions and exhibits, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

(a)    offered or received against any of the Released Parties as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of the Released Parties with respect to the truth of any fact alleged by any of the plaintiffs or the validity of any claim that has been or could have been asserted in the MainStay Action or the Egleston Action or in any other litigation or proceeding, or the deficiency of any defense that has been or could have been asserted in the MainStay Action or the Egleston Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of any of the Released Parties;

(b)    offered or received against any of the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of the Released Parties;

(c)    offered or received against any of the Released Parties as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Released Parties, in any other civil, criminal administrative or other proceeding, other than such proceedings as may be necessary to effectuate or enforce the provisions of the Stipulation; provided, however, that any of the Released Parties may refer to it to effectuate or enforce the releases or any other rights, terms or provisions set forth therein, and to that end may use the Stipulation or this Order and Final Judgment in any action or other proceeding to support a defense, claim, counter-claim or cross-claim based on principles of contract law, res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or similar principle, claim, defense, counter-claim or cross-claim;

(d)     construed against any of the Released Parties as a presumption, concession or admission that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; or

(e)     construed as or received in evidence as a presumption, concession or admission against MainStay or any of the other MainStay Class Members or Epstein or any of the other Egleston Class Members that any of their claims are without merit, or that any defenses asserted by any of the Settling Defendants have any merit, or that damages recoverable under the MainStay Complaint would not have exceeded the amounts received in the Settlement.

16.     The Court permanently bars and enjoins MainStay, the MainStay Class, Epstein and the Egleston Class and all other Releasors from commencing or prosecuting, either directly or indirectly, any Released Claims in this or any other forum against any or all of the Released Parties.

17.     Pursuant to Section 21D(f)(7)(A) of the Securities Exchange Act of 1934, as amended by the PSLRA, 15 U.S.C. § 78u-4(f)(7)(A), the Court permanently bars and enjoins any person from bringing a claim for contribution arising out of the Actions (i) by any person against any or all of the Settling Defendants, and (ii) by any Settling Defendant against any person, other than a person whose liability has been extinguished by the Settlement.

18.     [The Opt-Out Party, and all other persons, including but not limited to any other person or entity later named as a defendant or a third-party in the Actions, are hereby permanently BARRED, ENJOINED and RESTRAINED from commencing, prosecuting, or asserting any claim for contribution, indemnification or advancement (whether contractual or otherwise) against the Settling Defendants or any other claim against the Settling Defendants

8

where the injury to such entity/individual is any person's actual or threatened liability to the Lead Plaintiffs or the Classes, including but not limited to any amounts paid in settlement of such actual or threatened liability, or any other costs or expenses (including without limitation advancement of attorneys' fees) incurred in connection with the Actions.]

19.    The Court dismisses the MainStay Action against the Defendants [other than the Opt-Out Party] with prejudice and without costs except as provided for in this Order and Final Judgment.

20.    The Court dismisses the Egleston Action against the Defendants [other than the Opt-Out Party] with prejudice and without costs except as provided for in this Order and Final Judgment.

21.    The Court finds and concludes, pursuant to Section 27(c)(1) of the Securities Act of 1933 and Section 21D(c)(1) of the Securities Exchange Act of 1934, as amended by the PSLRA, 15 U.S.C. §§ 77z-1(c)(1), 78u-4(c)(1), that MainStay, MainStay's Counsel, Epstein, Epstein's Counsel, the Settling Defendants and Defendants' Counsel have complied with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion filed in the Actions.

22.    This Order and Final Judgment, the Settlement, and any of their terms, and all negotiations, discussions and proceedings in connection with this Order and Final Judgment and the Settlement, shall not constitute any evidence, or an admission by any of the Settling Defendants or the other Released Parties, that any acts of wrongdoing have been committed and shall not be deemed to create any inference that there is any liability on the part of any of the Settling Defendants or the other Released Parties.

23.     The Order and Final Judgment, the Settlement, and any of their terms, and all negotiations, discussions and proceedings in connection with this Order and Final Judgment and the Settlement, shall not be offered or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration tribunal, or other forum of any kind or character in the United States or any other country except as necessary to enforce the terms of the Order and Final Judgment and/or the Settlement.

24.     In the event that the Settlement fails to become effective in accordance with its terms, or if this Order and Final Judgment is reversed, vacated, or materially modified on appeal (and, in the event of material modification, if any party elects to terminate the Settlement), this Order and Final Judgment (except this Paragraph) shall be null and void, the Settlement (except Paragraphs 21 and 52 of the Stipulation) shall be deemed terminated, and the parties shall return to their pre-settlement positions as provided for in the Stipulation.

25.     Exclusive jurisdiction is hereby retained over the Parties and the MainStay Class Members for all matters relating to the MainStay Action, including without limitation the consideration of any allocation of the proceeds of the Settlement, and MainStay's Counsel's application for an award of attorneys' fees and reimbursement of expenses, and for the administration, interpretation, effectuation or enforcement of the Stipulation and this Order and Final Judgment, including enforcement of the Note, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the MainStay Class.

26.     Exclusive jurisdiction is hereby retained over the Parties and the Egleston Class Members for all matters relating to the Egleston Action, including without limitation the

10

consideration of any allocation of the proceeds of the Settlement, and Epstein's Counsel's application for an award of attorneys' fees and reimbursement of expenses, and for the administration, interpretation, effectuation or enforcement of the Stipulation and this Order and Final Judgment, including enforcement the Note, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Egleston Class.

27.    Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

28.    There is no just reason for delay in the entry of this Order, and immediate entry of this Order by the Clerk of the Court is expressly directed in both Actions pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Dated:        Detroit, Michigan
              _____, 2010        _____
                                             Hon. Gerald E. Rosen
                                             UNITED STATES DISTRICT JUDGE

**EXHIBIT D-1**

Exhibit D-1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MAINSTAY HIGH YIELD CORPORATE BOND FUND, on behalf of itself and all others similarly situated,<br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>HEARTLAND INDUSTRIAL PARTNERS, L.P., a Delaware limited liability partnership, HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C., a Delaware limited company, DAVID A. STOCKMAN, J. MICHAEL STEPP, TIMOTHY D. LEULIETTE, DANIEL P. TREDWELL, W. GERALD MCCONNELL, SAMUEL VALENTI, III, JOHN A. GALANTE, BRYCE M. KOTH, ROBERT A. KRAUSE, GERALD E. JONES, DAVID R. COSGROVE, and ELKIN B. MCCALLUM,<br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:07-cv-10542-GER-RSW<br><br>Honorable Gerald E. Rosen |

## ORDER APPROVING LEAD PLAINTIFF'S PLAN OF ALLOCATION AND

## MAINSTAY LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND

## EXPENSES

On the _____ day of _____, 2010, a hearing having been held before this

Court to consider: (1) the MainStay Lead Plaintiff's Plan of Allocation for the Settlement Fund

(the "Plan") for distribution of the MainStay Settlement Fund[1] to be established as a result of the

Settlement in the Actions; (2) whether and in what amount to award MainStay's Lead  Counsel

---

[1]　　Unless otherwise defined herein, all capitalized terms used herein have the meanings defined in the Stipulation and Agreement of Settlement dated February 17, 2010.

fees and reimbursement of expenses; and (3) the fairness and reasonableness of the Plan and the award of fees and reimbursement of expenses to the MainStay Class Members.

The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that notice of the hearing substantially in the form approved by the Court was mailed as directed in the Order for Notice and Hearing as set forth in the [Affidavit of _____ dated _____, 2010]; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested; and all capitalized terms used herein having the meanings as set forth and defined in the Stipulation.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The MainStay Plan of Allocation is approved as fair and reasonable, and MainStay's Lead Counsel and the Claims Administrator are directed to utilize the Plan as the basis for calculating the Proofs of Claim submitted by MainStay Class Members in connection with the Settlement in this MainStay Action.

2.    The Court finds and concludes that the Plan is fair and reasonable to the MainStay Class Members.

3.    MainStay's Lead Counsel is hereby awarded 25% of the MainStay Settlement Fund in fees, net of Court-approved litigation expenses, which sum the Court finds to be fair and reasonable.  MainStay's Lead Counsel are also awarded a total of $_____ in reimbursement of expenses.  Both amounts are to be paid out of the MainStay Settlement Fund. The fees and expenses payable from the MainStay Settlement Fund shall be paid with interest from the date such MainStay Settlement Fund is funded to the date of payment at the same net rate that the MainStay Settlement Fund earns.  The amounts awarded shall be paid immediately after the Court enters this Order, notwithstanding the existence of any timely filed objections

2

thereto, or potential for appeal therefrom, or collateral attack on the respective Settlement or any

part thereof. The award of attorneys' fees shall be allocated among MainStay's Counsel in a

fashion which, in the opinion of MainStay's Lead Counsel, fairly compensates MainStay's

Counsel for their respective contributions in the prosecution of the MainStay Action.

     4.    In making this award of attorneys' fees and reimbursement of expenses to be paid

from the MainStay Settlement Fund, the Court has considered and found that:

     (a)    the MainStay Settlement has created a fund of $12,362,500, plus interest, and that numerous MainStay Class Members who submit acceptable Proofs of Claim will benefit from the Settlement created by MainStay's Counsel;

     (b)    Over _____ copies of the Notice of Settlement were disseminated to putative MainStay Class Members indicating that MainStay's Lead Counsel was moving for attorneys' fees in an amount of twenty-five percent (25%) of the MainStay Settlement Fund and for reimbursement of their expenses in an amount not to exceed $975,000, plus interest on such fees and expenses at the same rate as may be earned by the MainStay Settlement Fund, and [_____] objections were filed against the terms of the proposed Settlement or the ceiling on the fees and expenses requested by MainStay's Lead Counsel contained in the Notice of Settlement;

     (c)    MainStay's Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

     (d)    The action involves complex factual and legal issues and was actively prosecuted over four years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

     (e)    Had MainStay's Lead Counsel not achieved the Settlement there would remain a significant risk that the MainStay Class may have recovered less or nothing; and

     (f)    MainStay's Counsel have devoted over _____ hours, with a lodestar value of $_____, to litigate the MainStay Action, ultimately achieving the Settlement.

     5.    The finality of the Order and Final Judgment entered with respect to the

Settlement between Lead Plaintiffs and the Settling Defendants shall not be affected in any

manner by this Order, or any appeal from this Order.

     6.    The notice described herein provided the best notice practicable under the

circumstances. Said notice provided due and adequate notice of these proceedings and the

matters set forth therein, including the Plan of Allocation and the request for attorneys' fees and

reimbursement of expenses, to all persons entitled to such notice, and said notice fully satisfied

the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due

process.

Dated:        Detroit, Michigan
                    _____, 2010

_____
Hon. Gerald E. Rosen
UNITED STATES DISTRICT JUDGE

**EXHIBIT D-2**

Exhibit D-2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

K.J. EGLESTON, individually and on behalf of all
others similarly situated,

                Plaintiff,

v.

HEARTLAND INDUSTRIAL PARTNERS, L.P.,
a Delaware limited liability partnership,
HEARTLAND INDUSTRIAL ASSOCIATES, L.L.C.,
a Delaware limited company, DAVID A. STOCKMAN,
J. MICHAEL STEPP, and BRYCE M. KOTH,

                Defendants

Case No. 2:06-cv-13555-GER-RSW

Honorable Gerald E. Rosen

## ORDER APPROVING LEAD PLAINTIFF'S PLAN OF ALLOCATION AND

## EPSTEIN'S COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES

On the _____ day of _____, 2010, a hearing having been held before this

Court to consider: (1) the Egleston Lead Plaintiff's Plan of Allocation for the Settlement Fund

(the "Plan") for distribution of the Egleston Settlement Fund[1] to be established as a result of the

Settlement in the Actions; (2) whether and in what amount to award Epstein's Counsel fees and

reimbursement of expenses; and (3) the fairness and reasonableness of the Plan and the award of

fees and reimbursement of expenses to the Egleston Class Members.

The Court having considered all matters submitted to it at the hearing and otherwise; and

it appearing that notice of the hearing substantially in the form approved by the Court was mailed

---

[1]      Unless otherwise defined herein, all capitalized terms used herein have the meanings defined in
the Stipulation and Agreement of Settlement dated February 17, 2010.

**Exhibit D-2**

as directed in the Order for Notice and Hearing as set forth in the [Affidavit of _____ dated _____, 2010 (the "_____ Affidavit,")] and the publication notice was published as also set forth in the _____ Affidavit; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested; and all capitalized terms used herein having the meanings as set forth and defined in the Stipulation.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Egleston Plan of Allocation is approved as fair and reasonable, and Epstein's Lead Counsel and the Claims Administrator are directed to utilize the Plan as the basis for calculating the Proofs of Claim submitted by Egleston Class Members in connection with the Settlement in this Egleston Action.

2.      The Court finds and concludes that the Plan is fair and reasonable to the Egleston Class Members.

3.      Epstein's Counsel are hereby awarded 33 1/3% of the Egleston Settlement Fund in fees, net of Court-approved litigation expenses, which sum the Court finds to be fair and reasonable. Epstein's Counsel are also awarded a total of $_____ in reimbursement of expenses. Both amounts are to be paid out of the Egleston Settlement Fund. The expenses payable from the Egleston Settlement Fund shall be paid with interest from the date such Egleston Settlement Fund is funded to the date of payment at the same net rate that the Egleston Settlement Fund earns. The amounts awarded shall be paid immediately after the Court enters this Order, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the respective Settlement or any part thereof. The award of attorneys' fees shall be allocated among Epstein's Counsel in a fashion which, in the opinion

**Exhibit D-2**

of Epstein's Lead Counsel, fairly compensates Epstein's Counsel for their respective

contributions in the prosecution of the Egleston Action.

        4.     In making this award of attorneys' fees and reimbursement of expenses to

be paid from the Egleston Settlement Fund, the Court has considered and found that:

        (a)     the Egleston Settlement has created a fund of $12,262,500, plus interest, and that numerous Egleston Class Members who submit acceptable Proofs of Claim will benefit from the Settlement created by Epstein's Counsel;

        (b)     Over _____ copies of the Notice of Settlement were disseminated to putative Egleston Class Members indicating that Epstein's Counsel was moving for attorneys' fees in an amount of one third (33 1/3%) of the Egleston Settlement Fund and for reimbursement of their expenses in an amount not to exceed $950,000, plus interest on such fees and expenses at the same rate as may be earned by the Egleston Settlement Fund, and [_____] objections were filed against the terms of the proposed Settlement or the ceiling on the fees and expenses requested by Epstein's Counsel contained in the Notice of Settlement;

        (c)     Epstein's Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

        (d)     The action involves complex factual and legal issues and was actively prosecuted over four years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

        (e)     Had Epstein's Counsel not achieved the Settlement there would remain a significant risk that the Egleston Class may have recovered less or nothing; and

        (f)     Epstein's Counsel have devoted over _____ hours, with a lodestar

value of $_____, to litigate the Egleston Action, ultimately achieving the Settlement.

        5.     The following persons who served as Lead Plaintiff are, pursuant to 15

U.S.C. 78u(4)(a)(4), awarded the following amounts as compensation for reasonable costs and

expenses, including lost wages:

         _____

         _____

**Exhibit D-2**

6.    The finality of the Order and Final Judgment entered with respect to the Settlement between Lead Plaintiffs and the Settling Defendants shall not be affected in any manner by this Order, or any appeal from this Order.

7.    The notice described herein provided the best notice practicable under the circumstances.  Said notice provided due and adequate notice of these proceedings and the matters set forth therein, including the Plan of Allocation and the request for attorneys' fees and reimbursement of expenses, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.

Dated:       Detroit, Michigan
             _____, 2010      _____
                                              Hon. Gerald E. Rosen
                                              UNITED STATES DISTRICT JUDGE

**EXHIBIT E**

Exhibit E

## NON-NEGOTIABLE SECURED PROMISSORY NOTE

$11,000,000                                     March [ ], 2010

FOR VALUE RECEIVED, the undersigned, Heartland Industrial Partners, L.P., a Delaware limited partnership, (the "Maker"), hereby promises as of the date hereof to pay [Escrow Agent] on behalf of the Authorized Claimants of the Egleston Class and the MainStay Class (the "Payee"; capitalized terms herein having the meaning defined in the Stipulation and Agreement of Settlement unless otherwise defined herein) at [address], or at such other place as Payee may from time to time designate in writing, the principal sum of eleven million dollars ($11,000,000) together with all accrued interest on such outstanding principal, in accordance with the terms and provisions of this Promissory Note (the "Note").

1.  Interest Payment.  Interest on the outstanding principal balance of this Note shall accrue beginning thirty (30) days after the Preliminary Approval Date at the rate of three percent (3%) per annum.  The interest shall be payable on the date eight (8) months from the first day following the Effective Date or if such date is not a Business Day, the next Business Day (such payment date, the "Maturity Date").

2.  Principal Repayment.  The outstanding principal balance of this Note, together with all charges provided for herein, shall be due and payable in full on the Maturity Date.

3.  Payments.  All payments hereunder shall be applied as follows: (i) first to any amount due to Payee pursuant to Section 15 of this Note, (ii) then to the interest accrued and unpaid under this Note, and (iii) thereafter, to any principal owing under this Note.

4.  Default Interest.  Upon the occurrence of an Event of Default and while that Event of Default is continuing, interest will accrue at a rate of three percent (3%) per annum (and not to exceed a total interest rate of three percent (3%) per annum because of operation of this or any other Section of this Note) on any unpaid amount due under this Note.  This Section shall not be construed as an agreement or privilege to extend the date upon which payment in full is due hereunder, nor a waiver of any other right or remedy available to Payee hereunder.

5.  Prepayment.  Subject to Section 3 above, Maker shall have the right to prepay, in part or in full, without penalty or additional charge, this Note (together with all accrued interest to the date of prepayment) at any time or times.

6.  Security Interest.

(a)  Security Interest Grant.  Maker hereby pledges to the Payee and grants to the Payee a security interest and continuing lien on all of Maker's right, title and interest in, to and under all personal property of Maker constituting Collateral, whether now owned or existing or hereafter acquired or arising and wherever located.  Maker shall execute and cause to be filed all

1

UCC financing statements and other documents required to give Payee a perfected first priority lien in the Collateral.

(b) <u>Security for Obligations</u>. The Collateral secures and is collateral security for the prompt and complete payment or performance in full when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (including the payment of amounts that would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code, 11 U.S.C. §362(a) (and any successor provision thereof)), of the Maker's obligations under this Note.

(c) <u>Release of Security Interest</u>. On the date on which all of the obligations of the Maker hereunder are paid in full (the "<u>Release Date</u>"), the Payee's security interest and lien on the Collateral shall automatically terminate and be released without any further action by any party (the "<u>Release</u>"). The Payee agrees to promptly execute and deliver such documents, instruments (including UCC financing statements) and agreements, each in form and substance reasonably satisfactory to the Maker, and take such other actions as the Maker reasonably requests to evidence the Release. In addition, the Payee hereby authorizes the Maker from and after the Release Date to file all UCC termination statements as are necessary or advisable to effectuate, or reflect of public record, the Release.

7.  <u>Assets of the Holding Company</u>.

(a) On the date hereof, the assets of the Holding Company shall have a value not less than eighteen million dollars ($18,000,000) calculated as the sum of (i) the number of shares of Asahi Tec Corporation included in the Shares multiplied by the trading price on the Tokyo Stock Exchange of such shares of Asahi Tec Corporation as of the close of trading on the Business Day immediately preceding the Preliminary Approval Date, which amount shall not exceed six million dollars ($6,000,000); (ii) the number of shares of Springs Global Participacoes included in the Shares multiplied by the trading price on the Bolsa de Valores, Mercadorias & Futuros de São Paulo of such shares of Springs Global Participacoes as of the close of trading on the Business Day immediately preceding the Preliminary Approval Date; (iii) the number of shares of TriMas Corporation included in the Shares multiplied by the trading price of such shares of TriMas Corporation on the Nasdaq as of the close of trading on the Business Day immediately preceding the Preliminary Approval Date; and (iv) one and a half times (1.5) times the value of: (a) any cash held by the Holding Company and (b) the face amount of any letters of credit then held by the Holding Company (or issued for the benefit of the Payee or the Holding Company to support the Maker's obligations hereunder). On the date hereof, at least twenty-five percent (25%) of the value of the Shares shall be comprised of shares of Trimas Corporation.

(b) The Maker shall cause the Holding Company to maintain holdings in the Shares such that on the last Business Day of each month while this Note is outstanding, the value of the Shares equals or exceeds the Minimum Value.

(c) The Maker may, from time to time and at any time, transfer or cause to be transferred cash, letters of credit and/or securities to or from the Holding Company to the Maker

2

or to any other person provided that after giving effect to such transfer, the Minimum Value is maintained as measured on the last Business Day of each month.

8. Events of Default. Each of the following shall constitute an event of default hereunder (each an "Event of Default"):

(a) the Maker's failure to make any required payment of principal or interest under this Note, or any other amount due and payable under this Note on or before the date on which such payment is due under this Note;

(b) the Maker's failure to perform its obligations pursuant to paragraph 7(b) or 12(d), and the continuation of such failure for a period of twenty-five (25) days after Payee gives the Maker written notice of such failure to perform;

(c) the Maker's insolvency, general assignment for the benefit of creditors, or the commencement by or against the Maker of any case, proceeding, or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution, or composition of the Maker's debts under any law relating to bankruptcy, insolvency, or reorganization, or relief of debtors, or seeking appointment of a receiver, trustee, custodian, or other similar official for the Maker or for all or any substantial part of the Maker's assets which, in the case of involuntary proceedings, has not been withdrawn or dismissed with 60 days after the filing thereof; and

(d) the Holding Company ceases to be a wholly-owned subsidiary of the Maker.

9. Acceleration. Upon the occurrence of an Event of Default pursuant to Section 8(c), the outstanding obligations under this Note owed by the Maker to Payee shall become and be immediately due and payable without any declaration or other act on the part of the Payee. Upon the occurrence and continuance of an Event of Default pursuant to Section 8 (other than Section 8(c)), the Payee may take either or both of the following actions at the same or different time: (a) declare the outstanding obligations under this Note owed by the Maker to Payee to be immediately due and payable and (b) exercise, subject to applicable law, any other rights and remedies, including remedies pursuant to Section 10.

10. Remedies.

(a) General. If any Event of Default shall have occurred and be continuing, Payee may avail itself of any legal or equitable rights which Payee may have at law or in equity or under this Note, including, but not limited to, the right to accelerate the indebtedness due under this Note as described in Section 9. The remedies of Payee as provided herein shall be distinct and cumulative, and may be pursued singly, successively or together, at the sole discretion of Payee, and may be exercised as often as occasion therefor shall arise. Failure to exercise any of the foregoing options upon the occurrence of an Event of Default shall not constitute a waiver of the right to exercise the same or any other option at any subsequent time in respect to the same or any other Event of Default, and no single or partial exercise of any right or remedy shall preclude other or further exercise of the same or any other right or remedy. Payee shall have no duty to exercise any or all of the rights and remedies herein provided or contemplated. The acceptance by Payee of any payment hereunder that is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of

3

the right to exercise any of the foregoing rights or remedies at that time, or nullify any prior exercise of any such rights or remedies, without the express written consent of Payee.

(b) <u>Assets of Holding Company Upon Default</u>.  Upon the occurrence and continuance of an Event of Default, the Payee shall have the right to take possession of and title to the Collateral and to sell, or to cause the Holding Company to sell, the Shares at then-prevailing market prices (A) on the Tokyo Stock Exchange (or any successor exchange), in the case of shares of Asahi Tec Corporation, (B) on the Bolsa de Valores, Mercadorias & Futuros de São Paulo (or any successor exchange), in the case of shares of Springs Global Participacoes, and (C) on Nasdaq (or any successor exchange), in the case of shares of TriMas Corporation, as applicable.  The proceeds of the sale of the Shares and any cash or letters of credit held by the Holding Company shall be used to satisfy the Maker's obligations under this Note as specified in Section 3.  If the sum total of the proceeds of the sale of the Shares, any cash received from the Holding Company by the Payee and any payments under Letters of Credit is greater than the sum of (i) any amount due to Payee pursuant to Section 15 of this Note, (ii) the interest accrued and unpaid under this Note, and (iii) any principal owing under this Note, the Payee shall deliver the difference to the Maker and shall take all necessary action to redeliver the Collateral to the Maker and to release and terminate all liens and security interests in favor of Payee.  If the sum total of the proceeds of the sale of the Shares, any cash received from the Holding Company by the Payee and any payments under Letters of Credit is less than (a "<u>Shortfall</u>") the sum of (i) any amount due to Payee pursuant to Section 15 of this Note, (ii) the interest accrued and unpaid under this Note, and (iii) any principal owing under this Note, the Maker shall execute a confession of judgment for such difference.  Notwithstanding anything to the contrary contained herein, in no event shall the Payee sell or cause the sale of more Shares than reasonably necessary to repay all of the Maker's then-outstanding obligations under this Note.

(c) <u>Collateral</u>.  If any Event of Default shall have occurred and be continuing, and if a Shortfall occurs and is continuing, the Payee may exercise in respect of the Collateral, in addition to all other rights and remedies provided for herein or otherwise available to it at law or in equity, all the rights and remedies of a secured party on default under the UCC (whether or not the UCC applies to the affected Collateral) to collect, enforce or satisfy any secured obligations then owing, whether by acceleration or otherwise.  The Payee shall have no obligation to marshal any of the Collateral.

11.    <u>Representations and Warranties</u>.  The Maker hereby represents and warrants on the date hereof that:

(a) the Maker is the sole owner of the Holding Company;

(b) the Maker owns the Collateral purported to be owned by it or otherwise has the rights it purports to have in each item of Collateral and, as to all Collateral whether now existing or hereafter acquired, will continue to own or have such rights in each item of the Collateral, in each case free and clear of any and all liens, rights or claims of all other persons, other than liens, rights or claims arising under this Note;

4

(c) the Maker has indicated on Schedule A (as such schedule may be amended or supplemented from time to time) (X) the type of organization of the Maker, (Y) the jurisdiction of organization of the Maker and (Z) the jurisdiction where its principal office is located;

(d) the full legal name of the Maker is as indicated on Schedule A and it does not do business under any other name (including any trade-name or fictitious business name) except for those names set forth on Schedule A (as such schedule may be amended or supplemented from time to time);

(e) upon the filing of all UCC financing statements naming the Maker as "debtor" and the Payee as "secured party" and describing the Collateral in the filing offices set forth opposite the Maker's name on Schedule A hereof (as such schedule may be amended or supplemented from time to time) and other filings delivered by the Maker, the security interests pledged and granted to the Payee hereunder constitute valid and perfected first priority liens on all of the Collateral and have been recorded in the records of the Holding Company; and

(f) the Maker is not subject to regulation under any law or to any restriction under its organizational documents or under any contract to which the Maker is a party, breach of which would have a material adverse effect on the Maker, that limits the Maker's ability to incur indebtedness under this Note.

12.    Covenants. The Maker hereby covenants and agrees that so long as any obligation under this Note is outstanding:

(a) except for the security interest created by this Note, it shall not create or suffer to exist any other lien upon or with respect to any of the Collateral;

(b) except for this Note and any letters of credit issued for the benefit of the Payee or the Holding Company to support the Maker's obligations hereunder, the Holding Company shall incur no material liabilities;

(c) the Maker shall not change its name, identity, corporate structure, principal executive office or jurisdiction of organization or establish any trade names unless it shall have (a) notified the Payee in writing at least fourteen (14) days prior to any such change or establishment, identifying such new proposed name, identity, corporate structure, principal executive office, jurisdiction of organization or trade name and providing such other information in connection therewith as the Payee may reasonably request and (b) taken all actions necessary or advisable to maintain the continuous validity, perfection and the same or better priority of the Payee's security interest in the Collateral intended to be granted and agreed to hereby;

(d) on the last Business Day of each month while this Note is outstanding, the Maker shall provide to the Payee a certificate that as of the date of said certificate the Collateral is owned by the Maker and a statement that the Collateral is free and clear of any and all liens, rights or claims of all other persons, other than liens, rights or claims arising under this Note, that the value of the Shares equals or exceeds the Minimum Value, and disclosing the number of shares of, respectively, Asahi Tec Corporation, Springs Global Participacoes, and Trimas Corporation constituting the shares; and

5

(e) it shall comply in all material respects with all applicable laws (including applicable securities laws) in connection with its obligations hereunder.

    13.   <u>Definitions</u>.

(a) "<u>Business Day</u>" shall mean any day other than a Saturday, Sunday or other day on which commercial banks in New York, New York are authorized or required by law to close.

(b) "<u>Collateral</u>" shall mean all of the Maker's right, title and interest in, to and under all equity interests in the Holding Company.

(c) "<u>Holding Company</u>" shall mean HIP Investment Holdings I, LLC, a Delaware limited liability company.

(d) "<u>Minimum Value</u>" shall mean (A) one and a half (1.5) times the principal then outstanding under this Note (B) minus one and a half (1.5) times the sum of (i) the value of any cash then held by the Holding Company and (ii) the face amount of any letters of credit then held by the Holding Company (or issued for the benefit of the Payee or the Holding Company to support the Maker's obligations hereunder) ("<u>Letters of Credit</u>"). For purposes of calculating the Minimum Value, (A) not more than six million dollars ($6,000,000) of shares of Asahi Tec Corporation shall be included in the calculation of the value of the Shares; (B) at least twenty-five percent (25%) of the value of the Shares shall be comprised of shares of Trimas Corporation; and (C) the applicable exchange rates to be used shall be based on prevailing exchange rates on the last Business Day of the applicable month (or, if such exchange rates are not available for such last Business Day, the exchange rates on the nearest preceding Business Day), as reasonably determined by the Maker in good faith.

(e) "<u>Preliminary Approval Date</u>" shall mean the date on which the United States District Court for the Eastern District of Michigan enters the Orders for Notice and a Hearing.

(f) "<u>Shares</u>" shall mean the shares in Asahi Tec Corporation (TSE:5606), Springs Global Participacoes (BOVESPA: SGPS3) and/or TriMas Corporation (NASDAQ: TRS) owned by the Holding Company that are either: (i) free of shareholder transfer restrictions; or (ii) with respect to shares of Trimas Corporation, the subject of a Form S-3 filing with the Securities and Exchange Commission that, upon becoming effective, will make such shares free of shareholder transfer restrictions.

(g) "<u>Stipulation and Agreement of Settlement</u>" shall mean the Stipulation and Agreement of Settlement dated February 10, 2010 concerning <u>MainStay High Yield Corporate Bond Fund v. Heartland Industrial Partners, L.P., et al</u>, No. 2:07-cv-10542 (E.D. Mich) and <u>Egleston v. Heartland Industrial Partners, L.P., et al.</u>, No. 2:06-cv-13555.

(h) "<u>UCC</u>" shall mean the Uniform Commercial Code as in effect from time to time in the State of New York.

7

222

5

39

9

22

223

With copy to:  Skadden, Arps, Slate, Meagher & Flom LLP
4 Times Square
New York, New York  10036-6522
Facsimile No.: (212) 735-2000
Attn: Jonathan J. Lerner, Esq.

If to Payee:      [ ]

With copy to:    [ ]

Notices shall be effective when received; provided, however, that if any notice sent by courier or by certified or registered mail is returned as undeliverable, such notice shall be deemed effective when mailed or given to such courier.

(b) Any of the foregoing persons may change the address to which notices are to be delivered to it hereunder by giving written notice to the others as provided in this Section.

19. <u>Severability</u>.  In the event that any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

[Signature Page Follows]

8

IN WITNESS WHEREOF, Maker has executed this Note on this [ ] day of March, 2010.


MAKER:
Heartland Industrial Partners, L.P.
by: Heartland Industrial Associates, L.L.C.


_____
Name:
Title:

PAYEE:
[Escrow Agent]


_____
Name:
Title:

[SIGNATURE PAGE – SECURED NOTE]

<u>Schedule A</u>

Heartland Industrial Partners, L.P.
Type of Organization:  limited partnership
Jurisdiction of Organization:  Delaware
Jurisdiction of principal executive office: Connecticut
Other names doing business under: None